UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHNNY RAY WOLFENBARGER,<br><br>Defendant. | Case No. 16-CR-00519-LHK-1<br><br>**ORDER SUSTAINING OBJECTION TO MAGISTRATE JUDGE'S JULY 2, 2018 ORDER**<br><br>Re: Dkt. Nos. 111, 112, 120, 129 |

Before the Court is the government's objection to the Magistrate Judge's July 2, 2018 Order Granting in Part Defendant's Second Motion to Compel Production of Evidence Under Federal Rule of Criminal Procedure 16 (a)(1)(E) ("July 2, 2018 Order"). ECF No. 111.[1] Specifically, the government objects to Ruling 3 of the July 2, 2018 Order. For the reasons below, the Court SUSTAINS the objection and REMANDS for further proceedings.[2]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

---

[1] The Court GRANTS Defendant's August 28, 2018 Motion for Leave to File Sur-Reply, ECF No. 120, and considers the Defendant's Sur-Reply for purposes of this Order.
[2] The Clerk ordered that Defendant file its opposition to the instant objection, which was filed on July 16, 2018, on August 3, 2018, and that the government file its reply on August 20, 2018. ECF No. 113. The Court held a hearing on September 5, 2018. ECF No. 126. Accordingly, Defendant's request that the Court follow Civil Local Rule 72-2, ECF No. 112, is GRANTED. In light of the instant Order, Defendant's September 28, 2018 Motion to Submit Supplemental Briefing and in the alternative, Motion to Remand for Development of the Record, ECF No. 129, is DENIED AS MOOT.

1
Case No. 16-CR-00519-LHK-1
ORDER SUSTAINING OBJECTION TO MAGISTRATE JUDGE'S JULY 2, 2018 ORDER

houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. Amend. IV. A wrongful search or seizure by a private party does not violate the Fourth Amendment unless the private party acts as an "instrument or agent" of the state in effecting a search or seizure. *United States v. Walther*, 652 F.2d 788 (9th Cir. 1981). For a citizen to be an "instrument of the state," the government's involvement must be "either directly as a participant or indirectly as an encourager of the private citizen's actions." 652 F.2d at 791. "The requisite degree of governmental participation involves some degree of knowledge and acquiescence in the search." *Id.* at 792.

In *Walther*, the Ninth Circuit affirmed a district court's finding that an airline employee was an instrument of the state when he opened a suspicious Speed Pak that contained cocaine. *Id.* at 793. The airline employee had been paid by the DEA for reporting suspicious travelers on at least eleven occasions; had opened about ten suspicious "Speed Paks" and frequently found illegal drugs; had never been paid for opening a Speed Pak; had no reason to expect that he would not be paid if he discovered a significant amount of drugs; and the DEA did not discourage his opening of the Speed Paks. *Id.* The Ninth Circuit found that the DEA "had knowledge of a particular pattern of search activity dealing with a specific category of cargo, and had acquiesced in such activity." *Id.* However, the Ninth Circuit noted the narrowness of its holding by stating: "We merely hold that the government cannot knowingly acquiesce in and encourage directly or indirectly a private citizen to engage in activity which it is prohibited from pursuing where that citizen has no motivation other than the expectation of reward for his or her efforts." *Id.*

In the instant case, the Defendant, Mr. Johnny Ray Wolfenbarger, has been indicted with one count of attempted production of child pornography, in violation of 18 U.S.C. §2251(c) and (e); one count of attempted coercion and enticement of minors, in violation of 18 U.S.C. § 2422(b); and one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). ECF No. 1. Defendant seeks to conduct discovery on the *Walther* factors. Specifically, Defendant seeks discovery on the interrelationships between each of the entities involved in the Philippines webcam investigation that led to his prosecution, including Xoom, Yahoo, the National Center for

2

Missing and Exploited Children ("NCMEC"), the Federal Bureau of Investigation ("FBI"), and the Department of Homeland Security ("DHS") to answer the question of "whether employees of Xoom, Yahoo, and the NCMEC acted as law enforcement agents [ ] during their roles in this process." ECF No. 85 at 9–10.

To support Defendant's theory under the *Walther* test, Defendant requested the following materials in item 2 of his April 3, 2018 discovery letter and later moved to compel production of those materials:

> 2. Additional information regarding the investigation that led to Mr. Wolfenbarger's arrest, including, but not limited to, documents and communications pertaining to the prosecutions in *U.S. v. Wolfenbarger*, No. CR 16-519 LHK (N.D. Cal.); *U.S. v. Peeler*, No. CR 15-4229 DHH (D. Mass.); *U.S. v. Touset*, No. CR 15-45 MHC (N.D. Georgia); *U.S. v. Amo*s, No. CR 16-46 PPS (N.D. Indiana), and *U.S. v. Davison*, No. CR 16-50074 JLV (D.S.D.), as follows:
>
> (A) The docket sheet, or any document(s) showing the case number or investigation number, for all investigations and prosecutions in the United States resulting from the Philippines webcam investigation involving Xoom, Yahoo, the FBI, the Department of Homeland Security, the Department of Justice, or another federal or state law enforcement agency between 2013 and 2018, including but not limited to the numerous investigations known to the defense. If the investigation or prosecution in a particular case is not public knowledge and the government believes there is a need for continued confidentiality, the government may redact any information it believes is confidential while disclosing sufficient information to identify the existence of the case, and shall provide the grounds for redaction.
>
> (B) All reports and documents generated between 2013 and 2018 by the FBI, the Department of Homeland Security, the Department of Justice, and/or any other involved agency, pertaining to the Philippines webcam investigation involving Xoom and Yahoo!.
>
> (C) All communications between 2013 and 2018 by and/or between the FBI, the

3

Department of Homeland Security, the Department of Justice, and/or any other involved agency, pertaining to the Philippines webcam investigation involving Xoom and Yahoo!.

(D) All reports and/or notes regarding meetings occurring between 2013 and 2018 involving the FBI, the Department of Homeland Security, the Department of Justice, and/or any other involved agency, pertaining to the Philippines webcam investigation involving Xoom and Yahoo!.

(E) All communications between 2013 and 2018 between Xoom and/or Yahoo! and the FBI, the Department of Homeland Security, the Department of Justice, and/or any other agency involved in the Philippines webcam investigation, regarding the Philippines webcam investigation.

(F) All documents produced by Xoom or Yahoo! to the FBI, the Department of Homeland Security, the Department of Justice, or any other agency involved in the Philippines webcam investigation, between 2013 to 2018, regarding the Philippines webcam investigation.

(G) All reports and/or notes regarding meetings involving Xoom and/or Yahoo! and the FBI, the Department of Homeland Security, the Department of Justice, and any other agency involved in the Philippines webcam investigation, between 2013 and 2018, regarding the Philippines webcam investigation.

ECF No. 85 at 7–8.

Ruling 3 of the Magistrate Judge's July 2, 2018 Order compelled the government to produce documents in response to item 2 of Defendant's April 3, 2018 discovery letter with limitations. Specifically, the July 2, 2018 Order held as follows:

> First, the government must search all Operation Swift Traveler files, investigations, notes, communications, and prosecutions for responsive information. Second, the responsive time period is September 2014 through September 2016. Third, if an investigation or prosecution in a particular case is not public and the government asserts that there is a need for continued confidentiality, then the government may redact the

confidential information while disclosing sufficient information to identify the existence of the case or investigation. The government must provide the specific grounds for any redaction. Fourth, the information provided is subject to protective order, to protect privacy interests, especially the names of persons investigated but not charged with a crime. The parties must confer and propose a protective order (if one is needed) by July 20. Fifth, the parties must confer about the format of this production. The government asserts this production will be burdensome. All counsel must cooperate to ease the burden. Finally, the information requested in item 2 must be produced by July 27.

ECF No. 109 at 5–6.

Federal Rule of Criminal Procedure 16(a)(1)(E) states that the government must permit the defendant to inspect and copy documents if the documents are within the government's control and are "material to preparing the defense." In the instant case, Defendant is entitled to obtain discovery related to his *Walther* theory. Thus, the issue here is the scope of that discovery. The Court addresses the relevant law followed by the facts of the instant case.

The Court finds that the most pertinent law on this issue is the Ninth Circuit's 2016 decision in *United States v. Soto-Zuniga*, 827 F.3d 992 (9th Cir. 2016). In *Soto-Zuniga*, the Ninth Circuit held that the district court abused its discretion in denying discovery of statistics regarding the number and types of arrests and vehicle searches at the San Clemente checkpoint. *Id.* at 998. Such statistics would have shed light on whether the government used the checkpoint as a pretext to search for controlled substances and not to control immigration and thus could have revealed an unconstitutional seizure and led to the suppression of evidence. *Id.* at 998-1002. The Ninth Circuit held that the district court's reliance on only the testimony of a Border Patrol Agent at an evidentiary hearing and several news articles, including a few detailing the interdiction of narcotics, was an insufficient basis upon which to find the San Clemente checkpoint constitutional and deny the motion to suppress. *Id.* at 1000. The Ninth Circuit held that the district court's consideration of only the government's version of the evidence was inconsistent with the adversarial system of justice. *Id.* In *Soto-Zuniga*, the Ninth Circuit held that defense counsel

should have been allowed "reasonable discovery," *Id.* at 1002, which in that case consisted of statistics on checkpoint arrests and searches.

The discovery of the investigatory or prosecution files of, or communications regarding, individual arrests or searches at the checkpoint was not at issue in *Soto-Zuniga*, and the Ninth Circuit did not order such discovery. The Ninth Circuit case that addresses discovery of individual investigations or prosecutions is *United States v. Chon*, 210 F.3d 990 (9th Cir. 2000). In *Chon*, the Ninth Circuit affirmed the denial of a motion to compel discovery seeking information related to any activities of the Naval Criminal Investigative Service ("NCIS") and its predecessor agency that targeted civilians. *Id.* at 992-993. The defendants in *Chon* argued that NCIS violated the Posse Comitatus Act ("PCA") and Department of Defense policy that prohibit military personnel from participating in civilian law enforcement activities when the NCIS conducted witness interviews, photographic lineups for identification, and searches as well as recovered stolen property and obtained confessions. *Id.* The defendants requested discovery of materials implicating widespread and repeated violations of the (PCA) in Hawaii and the United States, information reflecting warnings against violating the PCA, and materials of all Organized Crime Drug Enforcement Task Force activities targeting civilians. *Id.* at 994. The Ninth Circuit affirmed the district court's determination that the request was a "far reaching fishing expedition." *Id.* at 992. The Ninth Circuit, relying on the United States Supreme Court's decision in *United States v. Armstrong*, 134 L.Ed.2d 687 (1996), held that under then Federal Rule of Criminal Procedure 16(a)(1)(C), now 16(a)(1)(E), defendants are entitled to the discovery of only those materials that are relevant to the defendant's response to the government's case in chief and not relevant to challenging the prosecution's conduct of the case.[3] *Id.* at 995.

Although *Chon* was not a selective prosecution case, the Ninth Circuit's subsequent decision in *Soto-Zuniga* limited the holding of *Armstrong* to "the narrow issue of discovery in

---

[3] Moreover, the Ninth Circuit found that "the NCIS agents' activities were permissible because there was an independent military purpose for their investigation—the protection of military equipment." *Id.* at 994.

6

Case No. 16-CR-00519-LHK-1
ORDER SUSTAINING OBJECTION TO MAGISTRATE JUDGE'S JULY 2, 2018 ORDER

selective prosecution cases." *Soto-Zuniga*, 837 F.3d at 1001. Thus, this Court recognizes that the applicability of the holding in *Chon* to the instant case is in doubt because *Chon*'s holding rested on *Armstrong*, and the instant case is not a selective prosecution case. Nonetheless, the Ninth Circuit's description of the *Chon* discovery in the Ninth Circuit's *Soto-Zuniga* opinion is worth noting: "The materials sought were expansive, 'implicating wide-spread and repeated violations of the PCA in the State of Hawaii and within the United States.'" *Id.* at 1001 (quoting *Chon*). Such discovery "had no relevance to whether NCIS violated the PCA in defendants' particular case." *Id.*

Unlike *Chon*, in the instant case some discovery related to a pattern of activity is needed as was the case in *Soto-Zuniga*. In *Soto-Zuniga*, the defendants had to demonstrate that the government used the San Clemente checkpoint as a pretext to search for controlled substances and not to control immigration in order to argue that the search at issue was pretextual. *Id.* at 999-1000. In the instant case, Defendant will have to show that the FBI had knowledge of and encouraged Xoom, Yahoo, or NCMEC's pattern of search activity dealing with child pornography and had acquiesced in such activity in order to deem such entities agents of the state. *Walther*, 652 F.2d at 793. Thus, discovery of the activities and communications of these entities with the FBI is warranted. However, the question here is the scope of such discovery.

The government makes the following representations in the Declaration of FBI Special Agent Kelly Clark about the investigation that led to Defendant's prosecution and thus the scope of the discovery compelled by the Magistrate Judge's July 2, 2018 Order. Declaration of Special Agent Kelly Clark ("Clark Decl."), ECF No. 117-10. Xoom filed a CyberTipline report on September 17, 2014, to NCMEC regarding a money transfer sent using their services from the United States to the Philippines. *Id.* at ¶ 2. The recipient, located in the Philippines, had a Yahoo account with a profile picture depicting a young girl committing a lewd act. *Id.* On September 19, 2014, Yahoo was alerted by Xoom that a number of Yahoo accounts were engaged in the sale of

child exploitation material. *Id.* Yahoo's E-Crimes Investigation Team ("ECIT")[4] observed that approximately 115 Yahoo accounts operating from the Philippines appeared to be selling images, video, and live-streamed child abuse via Yahoo Mail and Yahoo Messenger. *Id.* ECIT reported their findings, including 382 Seller accounts located in the Philippines and 550 Buyer accounts located in the United States and elsewhere, to the NCMEC CyberTipline. *Id.* at ¶ 3.

During the period from October 2014 through March 2016, the FBI received approximately 288 CyberTipline reports associated with these accounts. *Id.* The FBI opened the Operation Swift Traveler ("OST") case upon receipt of the first of these reports. *Id.* The FBI obtained about 100 federal search warrants for Yahoo accounts. *Id.* at ¶ 5. The FBI then prepared lead packages, with each package typically containing information collected on one target. *Id.* at ¶ 6. However, sometimes multiple lead packages were prepared for the same target to distribute additional information received on that target. *Id.* Receiving field offices were expected to review the lead package and determine whether to open a case and proceed with further investigation. *Id.* Between 2014 and 2016, a total of 195 lead packages were prepared and sent to FBI field offices and Legal Attaches located in foreign countries. *Id.* Additional leads were disseminated to Europol and the FBI's International Violent Crimes Against Children Task Force. *Id.*

On November 30, 2015, NCMEC received a CyberTipline report from Yahoo stating that child pornography was contained in the email account jrwolfen02@yahoo.com. *Id.* at ¶ 7. It further stated that Yahoo's ECIT determined this account was related to activity involving a Philippines Webcam. *Id.* On March 11, 2016 and July 13, 2016, the FBI sent lead packages to the San Francisco Field Office in connection with the Defendant, Mr. Wolfenbarger. *Id.* The second lead package included information related to the defendant that was found within the results of

---

[4] Yahoo's November 2016 Terms of Service ("TOS"), in effect since March 16, 2012, states that users agree to be bound by the TOS, ECF 117-9 at § 1; that users agree not to use Yahoo Services to upload, post, email or transmit content that is unlawful, vulgar, obscene or harms minors in any way, *Id.* at § 6; and that Yahoo may access and disclose user's account information to comply with the law and legal process and to enforce the TOS, *Id.* Sean Zadig declares on behalf of Yahoo that Yahoo has a strong business interest in enforcing its TOS to avoid alienating other users. ECF No. 117-8 at ¶ 3. "Ridding our products and services of child abuse images is critically important to protecting our users, our product, our brand, and our business interests." *Id.*

8
Case No. 16-CR-00519-LHK-1
ORDER SUSTAINING OBJECTION TO MAGISTRATE JUDGE'S JULY 2, 2018 ORDER

search warrants for 11 different Seller Accounts associated with the OST case. *Id.* The second lead package consists of 81 pages plus a thumb drive containing 16.5 Gigabytes of data comprised of 2,506 files in 1,237 folders. *Id.* at ¶ 9.

Thus, the government contends that the Magistrate Judge's July 2, 2018 Order requires the FBI to review all case files associated with the 288 CyberTipline reports, the result of 100 or more search warrants executed on Seller Accounts, results of search warrants conducted in all spin-off cases executed by FBI field offices, results from grand jury subpoenas on associated financial accounts in all spin-off cases, 505 return results from approximately 421 administrative subpoenas in the main OST case, subpoenas issued in all spin-off cases, and documentation of interviews of witnesses, targets, and victims. *Id.* at ¶ 9. Because FBI field offices that receive lead packages in the OST case are not required to report back to the FBI hub investigation regarding whether the field office opened a case, whether investigations are ongoing, and whether any prosecutions resulted from the investigations, *Id.* at ¶ 10-11, the FBI must contact the field offices and Legal Attaches that received the 195 leads to determine whether a case was opened, request the case files and all comments and notes, and search for email and other communications outside the case files after identifying all relevant custodians. *Id.*

Turing to the issue of the propriety of the scope of this discovery, the Court finds that this discovery is similar to the discovery Defendant sought in his first motion to compel, which the Magistrate Judge denied. ECF No. 43. In his first motion to compel, Defendant requested the government's production of any "reports, notes, memoranda, emails, drafts, correspondence, or other documents pertaining to the development of the probable cause for the search warrant" in this case. ECF No. 28 at 4. Specifically, Defendant requested multiple categories of information, including: "[A] list of all cases investigated or filed in this district from 1998 to 2016 [later amended to 2010 to 2016] in which the U.S. Attorney's Office and/or the FBI submitted a search warrant affidavit in reliance on a search of an email account conducted by Yahoo!, the results of which had been submitted to NCMEC or directly to law enforcement, including any specific information providing actual or constructive knowledge to the government or the FBI regarding

9
Case No. 16-CR-00519-LHK-1
ORDER SUSTAINING OBJECTION TO MAGISTRATE JUDGE'S JULY 2, 2018 ORDER

the manner in which Yahoo! conducted the search." *Id.* The Magistrate Judge found that Defendant's first motion to compel did not "establish that the requested information is material Mr. Wolfenbarger's defense. In particular, the request for review of prosecution files from 2010 to 2016 is a speculative fishing expedition." ECF No. 43 at 5.

This Court finds that the discovery compelled by the Magistrate Judge's July 2, 2018 Order is akin to the speculative fishing expedition that Defendant sought in his first motion to compel and that the Magistrate Judge rejected. Federal Rule of Criminal Procedure 59(a) states that a district judge must set aside any magistrate judge order that is contrary to law or clearly erroneous. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Mercado-Moreno*, 869 F.3d 942, 959 (9th Cir. 2017). That standard has been met here. The Court finds that the Magistrate Judge's July 2, 2018 Order's is clearly erroneous and remands for further proceedings to determine the proper scope of discovery.

**IT IS SO ORDERED.**

Dated: October 10, 2018

_Lucy H. Koh_
LUCY H. KOH
United States District Judge