UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHNNY RAY WOLFENBARGER,<br><br>Defendant. | Case No. 16-CR-00519-LHK-1<br><br>**ORDER DENYING DEFENDANT'S FOURTH MOTION TO COMPEL**<br><br>Re: Dkt. No. 186 |

A federal grand jury indicted Defendant Johnny Ray Wolfenbarger ("Defendant") on one count of attempted production of child pornography, in violation of 18 U.S.C. § 2251(c) and (e); one count of attempted coercion and enticement of minors, in violation of 18 U.S.C. § 2422(b); and one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). ECF No. 1. Before the Court is Defendant's fourth motion to compel the government's production of certain documents under Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1969), and California Rule of Professional Conduct 3.8(d). ECF No. 186. Having considered the parties' submissions, the relevant case law, and the record in this case, the Court DENIES Defendant's fourth motion to compel production.

## I. BACKGROUND

The government has made the following representations regarding the investigation that led to Defendant's indictment. ECF No. 117-10, Declaration of Special Agent Kelly Clark ("Clark Decl."). Xoom, an online payments service, filed a CyberTipline report on September 17, 2014, to the National Center for Missing and Exploited Children ("NCMEC") regarding a money transfer from the United States to the Philippines sent using Xoom's services. *Id.* at ¶ 2. The recipient in the Philippines had a Yahoo account with a profile picture depicting a young girl committing a lewd act. *Id.* On September 19, 2014, Xoom alerted Yahoo that a number of Yahoo accounts were engaged in the sale of child exploitation material. *Id.* Yahoo's E-Crimes Investigation Team ("ECIT") observed that approximately 115 Yahoo accounts operating from the Philippines appeared to be selling images, video, and live-streamed child abuse via Yahoo Mail and Yahoo Messenger. *Id.* ECIT reported their findings, including information on 382 Seller accounts located in the Philippines and 550 Buyer accounts located in the United States and elsewhere, to NCMEC's CyberTipline. *Id.* at ¶ 3.

NCMEC is statutorily required to maintain the CyberTipline so that Internet service providers ("ISPs") like Yahoo may report known child pornography violations to NCMEC. 18 U.S.C. § 2258A(c). Yahoo and other ISPs bear a corresponding obligation to report to NCMEC "any facts or circumstances" indicating an apparent or imminent violation of certain child pornography statutes. *Id.* at § 2258A(a). NCMEC must then forward these reports to federal law enforcement agencies. *Id.* at § 2258A(c).

Between October 2014 and March 2016, the FBI received approximately 288 CyberTipline reports associated with the Yahoo accounts. Clark Decl. ¶ 3. The FBI opened the Operation Swift Traveler investigation upon receipt of the first of these reports. *Id.* The FBI obtained about 100 federal search warrants for Yahoo accounts. *Id.* at ¶ 5. The FBI then prepared lead packages, with each package typically containing information collected on one target. *Id.* at ¶ 6. However, sometimes multiple lead packages were prepared for the same target to distribute supplemental information received on that target. *Id.* Receiving field offices were expected to review the lead

2

package and determine whether to open a case and proceed with further investigation. *Id.* Between 2014 and 2016, a total of 195 lead packages were prepared and sent to FBI field offices and Legal Attaches located in foreign countries. *Id.* Based on those lead packages, the FBI opened approximately 70 full investigations. ECF No. 94 at 2. The government represented in June 2018 that the FBI had declined to bring indictments in some of those 70 investigations, and that some of the 70 investigations remained ongoing. *Id.* Additional leads were disseminated to Europol and the FBI's International Violent Crimes Against Children Task Force. Clark Decl. ¶ 6.

On November 30, 2015, NCMEC received a CyberTipline report from Yahoo stating that child pornography was contained in the email account jrwolfen02@yahoo.com. *Id.* at ¶ 7. The report further stated that Yahoo's ECIT determined this account was related to activity involving a Philippines webcam. *Id.* On March 11, 2016 and July 13, 2016, the FBI sent lead packages to the San Francisco field office in connection with Defendant. *Id.* The second lead package included information related to Defendant that was found within the results of search warrants for 11 different Seller Accounts associated with the OST case. *Id.* The second lead package consists of 81 pages plus a thumb drive containing 16.5 gigabytes of data comprised of 2,506 files in 1,237 folders. *Id.* at ¶ 9.

On May 9, 2016, the government obtained a search warrant for the email account jrwolfen02@yahoo.com from United States Magistrate Judge Nathanael Cousins, based on an affidavit submitted by FBI Special Agent Ann Trombetta. ECF No. 28-1.

**B. Procedural Background**

On December 15, 2016, a federal grand jury indicted Defendant on one count of attempted production of child pornography, in violation of 18 U.S.C. § 2251(c) and (e); one count of attempted coercion and enticement of minors, in violation of 18 U.S.C. § 2422(b); and one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). ECF No. 1.

**1. First Motion to Compel**

On December 6, 2017, Defendant filed his first motion to compel production of evidence under Federal Rule of Criminal Procedure 16 and *Brady*. ECF No. 28. Defendant sought to

Case No. 16-CR-00519-LHK-1
ORDER DENYING DEFENDANT'S FOURTH MOTION TO COMPEL

compel the government's production of any "reports, notes, memoranda, emails, drafts, correspondence, or other documents pertaining to the development of the probable cause for the search warrant" in this case. *Id.* at 4. Specifically, Defendant requested the following:

> [A] list of all cases investigated or filed in this district from 1998 to 2016 in which the U.S. Attorney's Office and/or the FBI submitted a search warrant affidavit in reliance on a search of an email account conducted by Yahoo!, the results of which had been submitted to NCMEC or directly to law enforcement, including any specific information providing actual or constructive knowledge to the government or the FBI regarding the manner in which Yahoo! conducted the search.

*Id.* At the hearing on Defendant's first motion to compel, Defendant orally amended the period from 1998 to 2016 (effectively 19 years) to 2010 to 2016 (effectively 7 years). ECF No. 189 at 1 n.1. Defendant contended that the requested information was relevant to Defendant's potential motion to suppress evidence on the basis that Yahoo was acting as a government agent for Fourth Amendment purposes. ECF No. 28 at 8–10 (citing *United States v. Walther*, 652 F.2d 788 (9th Cir. 1981), which sets forth the Ninth Circuit's test for when a private entity acts as a government agent under the Fourth Amendment). On December 20, 2017, the government filed an opposition to Defendant's first motion to compel. ECF No. 29.

On December 21, 2017, the Court referred Defendant's first motion to compel to Magistrate Judge Nathanael Cousins, the discovery judge in this case. ECF No. 30. On January 3, 2018, Judge Cousins held a hearing on Defendant's first motion to compel. ECF No. 33. On January 12, 2018, Judge Cousins denied without prejudice Defendant's first motion to compel because Defendant had not established that the files from all Operation Swift Traveler investigations other than that of Defendant were material under either Rule 16 or *Brady*, and because Defendant's request was speculative: "In particular, the request for review of prosecution files from 2010 to 2016 is a speculative fishing expedition." ECF No. 43 at 5. Judge Cousins also observed that in response to Defendant's other discovery requests, the government had produced the NCMEC CyperTipline Report related to Defendant. *Id.* at 5–6.

**2. First Motion to Suppress**

On February 28, 2018, Defendant filed his first motion to suppress. ECF No. 49.

Defendant moved to suppress Defendant's August 2016 statements to an FBI special agent. *Id.* at 3. On March 21, 2018, the government filed an opposition to Defendant's first motion to suppress. ECF No. 60. On April 4, 2018, Defendant filed a reply. ECF No. 71. In the afternoon of April 17, 2018, less than 24 hours before the April 18, 2018 morning evidentiary hearing on Defendant's first motion to suppress, Defendant withdrew the motion. ECF No. 73.

### 3. Second Motion to Compel

On April 3, 2018, Defendant sent the government a discovery letter and requested the following materials in Item 2 of the letter:

> Additional information regarding the investigation that led to Mr. Wolfenbarger's arrest, including, but not limited to, documents and communications pertaining to the prosecutions in *U.S. v. Wolfenbarger*, No. CR 16-519 LHK (N.D. Cal.); *U.S. v. Peeler*, No. CR 15-4229 DHH (D. Mass.); *U.S. v. Touset*, No. CR 15-45 MHC (N.D. Georgia); *U.S. v. Amos*, No. CR 16-46 PPS (N.D. Indiana), and *U.S. v. Davison*, No. CR 16-50074 JLV (D.S.D.), as follows:

> (A) The docket sheet, or any document(s) showing the case number or investigation number, for all investigations and prosecutions in the United States resulting from the Philippines webcam investigation involving Xoom, Yahoo, the FBI, the Department of Homeland Security, the Department of Justice, or another federal or state law enforcement agency between 2013 and 2018, including but not limited to the numerous investigations known to the defense. If the investigation or prosecution in a particular case is not public knowledge and the government believes there is a need for continued confidentiality, the government may redact any information it believes is confidential while disclosing sufficient information to identify the existence of the case, and shall provide the grounds for redaction.

> (B) All reports and documents generated between 2013 and 2018 by the FBI, the Department of Homeland Security, the Department of Justice, and/or any other involved agency, pertaining to the Philippines webcam investigation involving Xoom and Yahoo!.

> (C) All communications between 2013 and 2018 by and/or between the FBI, the Department of Homeland Security, the Department of Justice, and/or any other involved agency, pertaining to the Philippines webcam investigation involving Xoom and Yahoo!.

> (D) All reports and/or notes regarding meetings occurring between 2013 and 2018 involving the FBI, the Department of Homeland Security, the Department of Justice, and/or any other involved agency, pertaining to the Philippines webcam investigation involving Xoom and Yahoo!.

5

(E) All communications between 2013 and 2018 between Xoom and/or Yahoo! and the FBI, the Department of Homeland Security, the Department of Justice, and/or any other agency involved in the Philippines webcam investigation, regarding the Philippines webcam investigation.

(F) All documents produced by Xoom or Yahoo! to the FBI, the Department of Homeland Security, the Department of Justice, or any other agency involved in the Philippines webcam investigation, between 2013 to 2018, regarding the Philippines webcam investigation.

(G) All reports and/or notes regarding meetings involving Xoom and/or Yahoo! and the FBI, the Department of Homeland Security, the Department of Justice, and any other agency involved in the Philippines webcam investigation, between 2013 and 2018, regarding the Philippines webcam investigation.

ECF No. 85 at 7–8 (citing ECF No. 85-1, Ex. C).

In response, the government provided Defendant with documents including "a Customs and Border Patrol report regarding Mr. Wolfenbarger's diversion to secondary inspection and interrogation at the airport" and "additional TECS reports, as well as FBI reports detailing agency interactions between the FBI and Yahoo regarding the Philippines web cam investigation." ECF No. 85 at 4. The government also produced reports "describing the initiation of Operation Swift Traveler and Yahoo!'s identification of Wolfenbarger as a purchaser of child pornography." ECF No. 87 at 3. However, the government objected to Defendant's request for the materials identified in Item 2. *Id.*

On May 25, 2018, Defendant filed his second motion to compel, and requested production of the Item 2 documents. ECF No. 85. On June 6, 2018, the government filed an opposition, ECF No. 87, and on June 11, 2018, Defendant filed a reply. ECF No. 88.

On July 2, 2018, Judge Cousins granted in part and denied in part Defendant's second motion to compel. ECF No. 109. Judge Cousins granted in whole Defendant's request for the documents in Item 2, subject to some limitations. Specifically, Judge Cousins held as follows:

First, the government must search all Operation Swift Traveler files, investigations, notes, communications, and prosecutions for responsive information. Second, the responsive time period is September 2014 through September 2016. Third, if an investigation or prosecution in a particular case is not public and the government asserts that there is a need for continued confidentiality, then the government may

redact the confidential information while disclosing sufficient information to identify the existence of the case or investigation. The government must provide the specific grounds for any redaction. Fourth, the information provided is subject to protective order, to protect privacy interests, especially the names of persons investigated but not charged with a crime. The parties must confer and propose a protective order (if one is needed) by July 20. Fifth, the parties must confer about the format of this production. The government asserts this production will be burdensome. All counsel must cooperate to ease the burden. Finally, the information requested in item 2 must be produced by July 27.

ECF No. 109 at 5–6.

On July 16, 2018, pursuant to Federal Rule of Criminal Procedure 59(a), the government filed an objection to the portion of Judge Cousins' July 2, 2018 order requiring the government to produce materials from all Operation Swift Traveler investigations. ECF No. 111. The government contended that Defendant had not made an adequate showing of materiality and argued that the request in Item 2 was a "pure fishing expedition." *Id.* at 4–5. The government also contended that the order was overbroad and "unduly burdensome" because to comply with the order, "the government would have to locate and produce, wholesale, hundreds of investigative lead files, internal case files, prosecution files, grand jury investigation files, and all legal process sought and obtained" from those other investigations—including investigations that were ongoing and those that had not resulted in an indictment of the investigative target. *Id.* at 6.

Nonetheless, the government produced other materials to Defendant, including "communications between the FBI's Major Case Coordination Unit (MCCU) and Yahoo representatives," with redactions of "[a]ll information regarding investigative targets other than Mr. Wolfenbarger." ECF No. 117, Ex. G.

On August 3, 2018, Defendant filed an opposition to the government's objection, ECF No. 114, and on August 20, 2018, the government filed a reply. ECF No. 117. On August 28, 2018, Defendant filed a motion for leave to file a sur-reply, ECF No. 120, to which the government objected on August 29, 2018. ECF No. 121.

The government represents that while conducting research for the objection briefing, the government learned of *United States v. Rosenow*, 17-CR-3430 WQH (S.D. Cal.), another child pornography prosecution arising from Operation Swift Traveler. ECF No. 189 at 2. The

7

1   government filed with its reply in support of its objection a declaration from Sean Zadig, the head

2   of Yahoo's ECIT, that had been submitted in *Rosenow*. *Id.*; *see* ECF No. 117, Ex. H.

3       The government also filed with its reply the declaration of FBI Special Agent Kelly Clark,

4   a MCCU agent involved with Operation Swift Traveler. Clark's declaration described typical

5   email communications between Yahoo's Sean Zadig and Special Agent Jeff Yesensky, who was

6   the FBI agent in charge of Operation Swift Traveler between 2014 and 2016: "Typical email

7   communications between SA Yesensky and Yahoo normally involved arranging time for a phone

8   call, requesting or following-up on legal process or documentation, liaison introductions, or

9   notifying Yahoo of press reporting on OST cases." Clark Decl. ¶ 8. The government represents

10  that after receiving the FBI declaration describing those email communications between Zadig and

11  Yesensky, the government requested those email communications "so that it could review them

12  and determine whether they should be disclosed." ECF No. 189 at 3.

13      On September 4, 2018, Defendant filed a "status memorandum" stating that on August 30,

14  2018, Defendant had received documents from the defense counsel in *Rosenow*, including "email

15  communications between Sean Zadig and FBI Agent Yesensky." ECF No. 123.

16      In *Rosenow*, the defendant filed a motion to suppress evidence on the basis that "Yahoo

17  personnel acted as government agents." *United States v. Rosenow*, 2018 WL 6064949, at *6 (S.D.

18  Cal. Nov. 20, 2018). However, after an evidentiary hearing, the district court in *Rosenow* denied

19  the defendant's motion to suppress and concluded that Yahoo had not acted as a government agent

20  under the Fourth Amendment. *Id.* at *7–10.

21      On September 4, 2018, the government filed a response to Defendant's status

22  memorandum, and stated that the government had requested copies of additional email

23  communications between Zadig and Special Agent Yesensky. ECF No. 125. On September 14,

24  2018, the government produced those email communications to Defendant, with redactions. ECF

25  No. 143, Ex. K.

26      On September 5, 2018, the Court held a hearing on the government's objection to Judge

27  Cousins' July 2, 2018 order. ECF No. 126.

28

Case No. 16-CR-00519-LHK-1
ORDER DENYING DEFENDANT'S FOURTH MOTION TO COMPEL

On September 28, 2018, Defendant filed a motion to submit supplemental briefing regarding documents publicly filed on the *Rosenow* docket, including transcripts from an evidentiary hearing in *Rosenow*. ECF No. 129. On October 1, 2018, the government filed an opposition to Defendant's motion to submit supplemental briefing. ECF No. 130.

On October 10, 2018, the Court sustained the government's objection to Judge Cousins' July 2, 2018 order. ECF No. 132.[1] The Court discussed the *Walther* standard applicable to Defendant's anticipated motion to suppress and noted that "some discovery related to a pattern of activity is needed" for Defendant to contend that Yahoo, Xoom, and/or NCMEC acted as government agents. *Id.* at 2, 7. However, the Court held that Defendant's request for discovery of *all* Operation Swift Traveler investigations involving targets other than Defendant was overbroad because to respond, the government would have to "contact the field offices and Legal Attaches that received the 195 leads to determine whether a case was opened, request the case files and all comments and notes, and search for email and other communications outside the case files after identifying all relevant custodians." *Id.* at 9. Such discovery was "akin to the speculative fishing expedition that Defendant sought in his first motion to compel and that the Magistrate Judge rejected" as immaterial. *Id.* at 10. Accordingly, the Court sustained the government's objection and remanded to Judge Cousins "for further proceedings to determine the proper scope of discovery." *Id.*

### 4. Third Motion to Compel

Upon remand, Judge Cousins held three discovery status hearings with the parties. ECF Nos. 137, 138, 140. On November 30, 2018, Defendant filed his third motion to compel. ECF No. 143. Defendant had requested the following documents from the government:

(a) Major Crimes Coordination Unit ("MCCU") reports and communications referencing Yahoo!, Xoom, and NCMEC in relation to OST;

(b) Twelve "serial" reports pertaining to OST, as identified by FBI Agent Yesensky

---

[1] The Court also granted Defendant's motion to file a sur-reply and denied as moot Defendant's motion for supplemental briefing. ECF No. 132 at 1 n.2

in Bates 1091 and Bates 1097; and

(c) E-mail communications (and reports documenting those communications), between field agents handling the OST cases and Yahoo!, Xoom and NCMEC.

*Id.* at 2. In response, the government provided "additional documents held by MCCU regarding Mr. Zadig, Yahoo, and OST" and produced relevant emails from "the thirteen most active agents within MCCU in relation to OST." *Id.* The government also stated that it would produce additional communications between NCMEC and MCCU. *Id.* Defendant stated that "the government has not agreed to contact field agents who received leads related to OST, or to identify and produce their relevant communications and reports," and thus asked Judge Cousins to compel the government's production of such materials. *Id.*

On December 14, 2018, the government filed an opposition to Defendant's third motion to compel, ECF No. 147, and on December 20, 2018, Defendant filed his reply. ECF No. 151.

On April 8, 2019, Judge Cousins denied Defendant's third motion to compel. ECF No. 175. Judge Cousins observed that the "central question" presented by the motion to compel was whether email communications between FBI field agents and Yahoo, Xoom, or NCMEC are material under Rule 16. *Id.* at 1. Judge Cousins explained that in this Court's October 10, 2018 order, this Court "determined that production of at least *some* discovery related to a pattern of activity by Xoom, Yahoo, and NCMEC with the FBI is needed, but that a search of *all* Operation Swift Traveler files, investigations, notes, communications, and prosecutions for responsive information would be too broad." *Id.* at 2 (emphases in original). Thus, Judge Cousins sought "to draw a line of *reasonable* discovery between *some* and *all*." *Id.* (emphases in original).

Judge Cousins held that the government's production of relevant emails between the thirteen most active MCCU agents and Yahoo satisfied the government's Rule 16 obligation to "use 'affirmative due diligence' to gather exculpatory material from known and plausible sources." *Id.* at 3–4 (citing *United States v. Cerna*, 633 F. Supp. 2d 1053, 1061 (N.D. Cal. 2009)). The government had "spoken to persons most knowledgeable about the relationships between the FBI, NCMEC, Xoom, and Yahoo as part of the Swift Traveler investigations, and produced relevant communications gathered from known and plausible sources of information." *Id.* at 4.

Thus, Judge Cousins denied Defendant's third motion to compel.

On April 22, 2019, pursuant to Federal Rule of Criminal Procedure 59(a), Defendant filed an objection to Judge Cousins' April 8, 2019 order. ECF No. 180. Defendant contended that Defendant asked the government to review files in "70 known cases" of Operation Swift Traveler investigations conducted by FBI field offices, which Defendant argued was not overly broad. *Id.* at 2. Defendant also objected to the government's "secret process" of identifying the 13 most active MCCU agents and contended that Zadig's communications with field agents were material under Rule 16. *Id.* at 4. On May 7, 2019, pursuant to Civil Local Rule 72-2, this Court deemed denied Defendant's objection. ECF No. 181.

### 5. Fourth Motion to Compel

On May 22, 2019, the Court held a status conference and set a briefing schedule on Defendant's anticipated motion to suppress evidence pursuant to *Walther*. ECF No. 182. The Court scheduled evidentiary hearings on the motion for July 12, 2019 and July 26, 2019. *Id.*

On June 12, 2019, Defendant filed his second and third motions to suppress, including a motion to suppress evidence pursuant to *Walther*, ECF No. 183, and a motion to suppress evidence pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). ECF No. 184. Defendant also filed the instant fourth motion to compel production. ECF No. 186 ("Mot.").

On June 26, 2019, the government filed oppositions to Defendant's motions to suppress, ECF Nos. 188, 190, and an opposition to Defendant's fourth motion to compel. ECF No. 189 ("Opp.").

On July 3, 2019, NCMEC filed an amicus brief in support of the government's opposition to Defendant's fourth motion to compel. ECF No. 192 ("NCMEC Amicus").

On July 3, 2019, Defendant filed replies in support of his motions to suppress, ECF Nos. 194, 195, and in support of his fourth motion to compel. ECF No. 193 ("Reply").

## II. LEGAL STANDARD

### A. Federal Rule of Criminal Procedure 16

Federal Rule of Criminal Procedure 16 states that the government must permit the

defendant to inspect and copy documents if the documents are "within the government's possession, custody, or control" and are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Establishing materiality requires a defendant to provide "facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995). However, "[n]either a general description of the information sought nor conclusory allegations of materiality suffice." *Id.*

### B. *Brady* Standard

Under *Brady* and its progeny, the prosecution has a duty to disclose evidence favorable to an accused, and the failure to disclose such evidence violates due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*, 373 U.S. at 87). "The three elements of a *Brady* violation are: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008) (citation, alteration, and internal quotation marks omitted). "Evidence is material if there is a reasonable probably that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Jackson v. Brown*, 513 F.3d 1057, 1071 (9th Cir. 2008) (citation and internal quotation marks omitted).

### III. DISCUSSION

Defendant's fourth motion to compel production seeks even more expansive discovery than Defendant's third motion to compel, which Judge Cousins denied. This Court denied Defendant's objection to Judge Cousins' denial. Defendants' third motion to compel sought email communications between Yahoo, Xoom, and NCMEC and special agents handling the 70 investigations opened in FBI field offices from the 195 Operation Swift Traveler lead packages. ECF No. 180 at 2. On the other hand, Defendant's fourth motion to compel seeks production of the following materials:

Case No. 16-CR-00519-LHK-1
ORDER DENYING DEFENDANT'S FOURTH MOTION TO COMPEL

United States District Court
Northern District of California

1.  Communications between Yahoo's investigatory team and the FBI that pertain
    to the Philippine Webcam Investigations/Operation Swift Traveler; and
2.  Communications between Yahoo's investigatory team and NCMEC that pertain
    to the Philippine Webcam Investigations/Operation Swift Traveler

Mot. at 2. Thus, Defendant does not limit his request to the 70 investigations opened in FBI field

offices. Defendant instead requests all communications "that pertain to the Philippine Webcam

Investigations/Operation Swift Traveler." This would require reviewing any communications

between the FBI and Yahoo and between NCMEC and Yahoo regarding 382 Yahoo seller

accounts located in the Philippines and 550 Yahoo buyer accounts located in the United States and

elsewhere engaged in the sale of images, video, and live-streamed child abuse; approximately 288

CyperTipline Reports associated with these Yahoo accounts that the FBI received between

October 2014 and March 2016; 100 federal search warrants that the FBI obtained for the Yahoo

accounts; 195 lead packages that the FBI sent to FBI field offices and Legal Attaches located in

foreign countries; and the 70 investigations opened in FBI field offices based on the lead

packages. The FBI has declined to bring indictments in some of the 70 investigations, and some

of the 70 investigations are ongoing.

Defendant contends that Federal Rule of Criminal Procedure 16 and *Brady* warrant

production. *Id.* In a new argument, Defendant also contends that the Court should grant

Defendant's motion under California Rule of Professional Conduct 3.8(d). *Id.* Below, the Court

first explains why Defendant's Rule 16 and *Brady* arguments continue to lack merit, and then

rejects Defendant's attempt to rely on the California Rules of Professional Conduct.

### A. Rule 16 Does Not Require Production

Under Federal Rule of Criminal Procedure 16, the government is required to provide

discovery to a defendant where two elements are met: (1) the information sought is within the

government's "possession, custody, or control"; and (2) the information is material to the case.

*Santiago*, 46 F.3d at 893. In the Ninth Circuit, information is within the government's possession

if the prosecution "has knowledge of and access to the documents" sought. *Id.* To justify

production under Rule 16, a defendant must make a "threshold factual showing of materiality."

*United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1995). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." *Id.*; *see also Santiago*, 46 F.3d at 895 (holding that a defendant must show "case-specific facts which would demonstrate the materiality of the information sought"). Here, the Court need not decide whether the government has "knowledge of and access to" both NCMEC's and the FBI's communications with Yahoo because Defendant has not shown that the information requested is material.

### 1. Defendant's Discovery Request is Vastly Overbroad

The Ninth Circuit has instructed that under Rule 16, where "the government has shown that complying with the request would be unduly burdensome, it is incumbent on the district court to consider the government interests asserted in light of the materiality shown." *Mandel*, 914 F.2d at 1219. The Fourth Circuit has also held that Rule 16 does not authorize "a shotgun fishing expedition for evidence." *United States v. Anderson*, 481 F.2d 685, 694 (4th Cir. 1973); *see also United States v. Salyer*, 271 F.R.D. 148, 158 (E.D. Cal. 2010) (denying Rule 16 motion where the defendant "simply desire[d] to look through a potentially massive amount of documents in different categories on the chance that something good might turn up for him in that production"). Accordingly, the Ninth Circuit has never permitted extensive discovery into all communications between a private entity and the FBI and between a private entity and a non-profit entity that pertain to a five-year investigation involving hundreds of private email accounts, CyperTipline reports, search warrants, FBI lead packages, and investigations regarding targets other than the defendant, as Defendant requests in this case. Defendant's request is particularly expansive because the FBI has declined to prosecute some of these targets and the FBI's investigation of some of these targets is ongoing. Defendant cites no case law for his proposition that such burdensome discovery is material under Rule 16.

In fact, the Ninth Circuit rejected a similarly broad request in *United States v. Chon*, 210 F.3d 990 (9th Cir. 2000). In *Chon*, the defendants filed a discovery motion "seeking information related to any activities of the NCIS [Naval Criminal Investigative Service] and its predecessor agency, the Naval Investigative Service (NIS), that targeted civilians." *Id.* at 992. The defendants

Case No. 16-CR-00519-LHK-1
ORDER DENYING DEFENDANT'S FOURTH MOTION TO COMPEL

sought the discovery to support their theory that NCIS impermissibly participated in civilian law enforcement activities. *Id.* at 993. Specifically, defendants sought "all materials pertinent to NCIS activities targeting civilians" and "materials of all Organized Crime Drug Enforcement Task Force activities targeting civilians," among other information. *Id.* at 994. The district court denied the motion as a "far reaching fishing expedition," a decision the Ninth Circuit upheld because the request was "considerably broader" than any materials relevant to the charges against the defendants. *Id.* at 994–95.

Defendant's request in the instant case is analogous to the request in *Chon*, as Defendant requests *all* of the FBI's communications with Yahoo and *all* of NCMEC's communications with Yahoo that pertain to the Philippine Webcam Investigations/Operation Swift Traveler in the five years since the FBI opened Operation Swift Traveler. As in *Chon*, Defendant's request is a far reaching fishing expedition.

Defendant's request would also impose a substantial burden on the government. Defendant requests that the Court order the government to obtain, review, and produce all of the communications between the FBI and Yahoo and between NCMEC and Yahoo regarding 382 Yahoo seller accounts located in the Philippines and 550 Yahoo buyer accounts located in the United States and elsewhere engaged in the sale of images, video, and live-streamed child abuse; approximately 288 CyperTipline Reports associated with these Yahoo accounts that the FBI received between October 2014 and March 2016; 100 federal search warrants that the FBI obtained for the Yahoo accounts; 195 lead packages that the FBI sent to FBI field offices and Legal Attaches located in foreign countries; and the 70 investigations opened in FBI field offices based on the lead packages. Because the FBI's Major Case Coordination Unit ("MCCU") does not track active or ongoing investigations in field offices, the FBI would need to search the entire open and closed case files of all 56 FBI field offices to first identify individual Operation Swift Traveler investigations and the special agents involved. Clark Decl. ¶ 11. Then, the government would need to search lead packages from those investigations for relevant information, when a single lead package in Defendant's case alone consists of 81 pages plus a thumb drive containing

15

16.5 gigabytes of data comprised of 2,506 files in 1,237 folders. *Id.* ¶ 9; ECF No. 132 at 8–9.

In addition, the information Defendant requests implicates important privacy interests, as the FBI declined to indict targets in some of the 70 investigations opened in FBI field offices, and some of the 70 investigations are ongoing. Thus, even with the names of targets redacted, the communications Defendant seeks could reveal the identities of individuals who were never charged with child pornography crimes. Courts have held that investigatory targets have significant privacy interests. *See Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434, 439 (1st Cir. 2006) (explaining that "investigatory targets" have "significant privacy interests" in protecting their names from disclosure). Presumably, that privacy interest is heightened when the FBI declines to prosecute the target and in cases involving child pornography.

Moreover, discovery from ongoing investigations could undermine those investigations, even though Defendant has not met his burden to show materiality. *See Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000) (explaining that the *Brady* standard "does not require a prosecutor to turn over files reflecting leads and ongoing investigations where no exonerating or impeaching evidence has turned up").

Although Defendant cites no case authority to support his expansive discovery request, one case that Defendant cites for a different proposition, *United States v. Rosenschein*, 2019 WL 2298810 (D.N.M. May 30, 2019), only demonstrates how Defendant's request is overbroad. In *Rosenchein*, another child pornography prosecution, the defendant sought discovery to support a motion to suppress on the basis that Microsoft acted as a government agent for Fourth Amendment purposes. *Id.* at *9. The *Rosenschein* court primarily addressed whether Rule 16 applied to NCMEC, *id.* at *5–7, but also discussed the proper scope of discovery to support a motion to suppress on a private-entity-as-government-agent theory.

The *Rosenschein* defendant sought several categories of discovery, including materials concerning the CyperTipline Reports in his case: "All reports, coming from any source or entity whatsoever, or being delivered to any source or entity, concerning the two reports of child pornography in this case." *Id.* at *2. The *Rosenschein* court held that this information regarding

Case No. 16-CR-00519-LHK-1
ORDER DENYING DEFENDANT'S FOURTH MOTION TO COMPEL

the defendant's case was material to the defendant's motion to suppress. In the instant case, the government has produced that and more. Specifically, in addition to the CyperTipline Report on Defendant, documents on the initiation of Operation Swift Traveler, and FBI reports on interactions between Yahoo and the FBI, ECF No. 85 at 4, the government in the instant case has also produced communications between Sean Zadig (the head of Yahoo's E-Crimes Investigation Team) and the *thirteen* most active agents in the FBI's MCCU, which initiated Operation Swift Traveler. ECF No. 147, Exs. K & L.

In *Rosenschein*, the defendant also sought broad categories of other communications between NCMEC and Microsoft: "All correspondence that NCMEC sent to or received from Microsoft.com concerning Microsoft's PhotoDNA program addressing the financing or technical development of the PhotoDNA software or any associated API, or NCMEC's specific needs or software requirements to run the program or any associated API." 2019 WL 2298810, at *2. As in *Chon*, the *Rosenschein* court held that the request for "all correspondence" was "so broadly written (and entirely lacking in temporal limitations) that it appears to be more of a fishing expedition than a request for material information," and thus denied the defendant's motion to compel production of that evidence. *Id.* at *10. Defendant's request for all communications between Yahoo and the FBI and between Yahoo and NCMEC "that pertain to the Philippine Webcam Investigations/Operation Swift Traveler" is similarly overbroad and unsupported by any factual showing of materiality.

A case in which the Ninth Circuit permitted Rule 16 discovery is easily distinguishable from *Chon* and the instant case. In *Soto-Zuniga*, a defendant arrested at an immigration checkpoint sought pretrial discovery of "statistics regarding the number and types of arrests and vehicle searches at the San Clemente checkpoint." 837 F.3d at 996. The defendant requested the statistics for a potential motion to suppress evidence on the basis that the checkpoint was unconstitutional. *Id.* at 1001. The Ninth Circuit held that discovery of the checkpoint's arrest statistics was material to the *Soto-Zuniga* defendant's motion to suppress, as they would enable the defendant to assess the constitutionality of the checkpoint. *Id.* at 1001–02. However, the

United States District Court
Northern District of California

defendant in *Soto-Zuniga* did not request, and the Ninth Circuit did not order, broad discovery into a private entity's communications with law enforcement and a private entity's communications with a non-profit entity for each individual checkpoint arrest and each individual vehicle search. In the instant case, the extensive discovery that Defendant has continually sought in his four motions to compel is simply not justified by precedent. Nor has Defendant made any showing of materiality, as the Court now explains.

### 2. Defendant's Requested Discovery is Not Material

Next, the Court discusses the standard relevant to Defendant's motion to suppress, as that standard demonstrates the immateriality of Defendant's discovery request. A wrongful search or seizure by a private party does not violate the Fourth Amendment unless the private party acts as an "instrument or agent" of the state in effecting a search or seizure. *Walther*, 652 F.2d 788.

In *Walther*, an airline employee acted as a paid DEA informant. *Id.* at 790. Over four years, the DEA paid the employee for at least eleven reports of "suspicious individuals fitting the 'drug profile'" at the ticket counter. *Id.* The employee had also opened approximately ten packages called SpeedPaks to search for illegal drugs. *Id.* According to a DEA agent, the DEA would have paid the employee "had he ever discovered a significant amount of drugs" in a SpeedPak. *Id.* After the employee opened one SpeedPak and discovered a white power, the employee reported the discovery to the DEA, which later arrested the defendant in *Walther*. *Id.* The defendant moved to suppress the evidence seized in the SpeedPak. *Id.* at 791. The district court found that the airline employee was acting as an "instrument or agent" of the DEA and suppressed the evidence. *Id.* When searching the SpeedPak, the employee "was not carrying out a business purpose of his employer, his sole reason being his suspicion that the case contained illegal drugs" and the employee "probably opened the case with the expectation that he would be compensated by the DEA if he were to discover a significant quantity of illegal drugs." *Id.*

On appeal, the Ninth Circuit upheld the suppression because the airline employee had the "requisite mental state of an 'instrument or agent.'" *Id.* at 792. Specifically, the employee did not open the SpeedPak out of "legitimate business considerations," but rather only because he

Case No. 16-CR-00519-LHK-1
ORDER DENYING DEFENDANT'S FOURTH MOTION TO COMPEL

suspected it contained illegal drugs and that the DEA might pay him for the discovery. *Id.* In addition, the DEA had specifically encouraged the airline employee to engage in the type of search because the DEA had previously paid the employee for drug-related information and had never discouraged him from opening SpeedPaks. *Id.* at 793. Thus, that DEA conduct indicated the government's acquiescence in the employee's search. *Id.* However, the Ninth Circuit emphasized the "narrowness of our holding," and that its opinion did not "diminish the duty of any private citizen to report possible criminal activity." *Id.*

In this case, Defendant's motion to suppress posits that Yahoo acted as a government agent. Defendant contends that all of Yahoo's communications with the FBI and all of Yahoo's communications with NCMEC regarding Operation Swift Traveler over five years are material to Yahoo's motivations in the instant case. Mot. at 2. However, Defendant's conclusory allegations of materiality are insufficient to require production, especially when Defendant seeks to force the government to search for communications involving hundreds of private email accounts, CyperTipline reports, search warrants, FBI lead packages, and investigations regarding targets other than Defendant. Defendant's request is particularly expansive because the FBI has declined to prosecute some of these targets and the FBI's investigation of some of these targets is ongoing. *See Santiago*, 46 F.3d at 894–95 (holding that information sought was not material under Rule 16 where the defendant made only "conclusory allegations" and could "not cite any fact" to show materiality).

The two communications Defendant cites in his motion also make no threshold showing of materiality. First, Defendant cites an email exchange between Yahoo's Sean Zadig and FBI Special Agent Yesensky, the FBI's Major Case Coordination Unit special agent formerly in charge of Operation Swift Traveler, in which Zadig sent Special Agent Yesensky a link to a DOJ press release on a sentencing in an Operation Swift Traveler case. ECF No. 143-3, Ex. RR. Zadig wrote: "Just saw it today – I've been in contact with the TFO who handled the case on the ground in Florida. Incredible sentence, and forfeiture of the home to boot. Great work to everyone!" *Id.*, Bates 1621. From that email, Defendant claims that Zadig's unspecified "contacts" with federal

field agents[2] are material to Defendant's *Walther* motion. The instant case remains a far cry from *Walther*, in which the DEA regularly paid an informant for drug information for four years, the informant had no independent business reason to open the SpeedPak, and the informant expected a probable monetary reward for any drugs found in the SpeedPak. 652 F.2d at 792.

Second, in one email communication between Zadig and an FBI special agent, Zadig responded to the special agent's inquiry about a form response the special agent received from Yahoo after the special agent attempted to execute a warrant on Yahoo. ECF No. 143-4, Ex. SS. The mundane communication reveals little about Yahoo's motivations, and thus makes no threshold showing that any other communications between Yahoo and the FBI—or between Yahoo and NCMEC, for that matter—contain information relevant to Yahoo's motivations. *See Mandel*, 914 F.2d at 1219 (holding that a defendant's "conclusory allegations" are insufficient to make a threshold showing of materiality).

Thus, because Defendant has made no threshold showing of materiality and complying with Defendant's request would be unduly burdensome for the government, the Court denies Defendant's request to conduct a speculative fishing expedition under Rule 16.

## B. *Brady* Does Not Require Production

Although Defendant makes no separate argument regarding the government's *Brady* obligations, the Ninth Circuit has explained that "*Brady* does not permit a defendant to sift through information held by the government to determine materiality." *United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60 (1987)). "To challenge the government's representation that it lacks *Brady* information, Lucas must either make a showing of materiality under Rule 16 or otherwise demonstrate that the government improperly withheld favorable evidence." *Id.* at 808. "[M]ere speculation about material in the government's files" is not sufficient to merit production. *United States v. Mincoff*, 574 F.3d 1186,

---

[2] It is unclear whether the TFO (presumably a task force officer) is an FBI agent or a state or local law enforcement officer working with the FBI on a task force because the discovery indicates that FBI agents are referred to as "Special Agent" or "SA."

Case No. 16-CR-00519-LHK-1
ORDER DENYING DEFENDANT'S FOURTH MOTION TO COMPEL

1200 (9th Cir. 2009) (internal quotation marks and citation omitted).

Defendant has made no showing of materiality under Rule 16, as set forth above, nor has Defendant demonstrated that the government withheld favorable evidence. Defendant appears to suggest that the government in the instant case withheld the evidence from the *Rosenow* case. *See* Reply at 2–3. However, once the government learned about the *Rosenow* case and the existence of meetings and email communications between Zadig and Yesensky, the government promptly requested those communications and then produced them to Defendant without a court order. *See* Opp. at 3; ECF No. 147, Exs. G & K. Moreover, to the extent Defendant claims the *Rosenow* evidence is favorable, the district court in *Rosenow* was presented with that evidence and denied the *Rosenow* defendant's motion to suppress predicated on the same theory that Yahoo acted as a government agent. *Rosenow*, 2018 WL 6064949, at \*10. Thus, *Brady* does not require production of all email communications between Yahoo and FBI field agents or between Yahoo and NCMEC.

## C. California Rule of Professional Conduct 3.8(d) Does Not Require Production

Lastly, the Court addresses Defendant's only new legal argument, which is that the government must produce all email communications between Yahoo and FBI field agents and Yahoo and NCMEC under Rule 3.8(d) of the California Rules of Professional Conduct. However, Defendant has provided no authority that Rule 3.8(d) permits the Court to order production of discovery materials at all, or that Rule 3.8(d) supersedes Judge Cousins' and the Court's prior orders denying Defendant's request for email communications between Yahoo and FBI field agents and Yahoo and NCMEC.

Rule 3.8(d), titled "Special Responsibilities of a Prosecutor," provides that a "prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows or reasonably should know tends to negate the guilt of the accused, mitigate the offense, or mitigate the sentence." Rule 3.8(d). Comment 3 to Rule 3.8(d) states:

The disclosure obligations in paragraph (d) are not limited to evidence or information

21

that is material as defined by *Brady v. Maryland* (1963) 373 U.S. 63 and its progeny. For example, these obligations include, at a minimum, the duty to disclose impeachment evidence or information that a prosecutor knows or reasonably should know casts significant doubt on the accuracy or admissibility of witness testimony on which the prosecution intends to rely. Paragraph (d) does not require disclosure of information protected from disclosure by federal or California laws and rules, as interpreted by case law or court orders.

Rule 3.8(d), cmt. 3. Rule 3.8(d) is binding on government attorneys practicing in California. *United States v. De Anda*, 2019 WL 2617090, at *1 (N.D. Cal. Jun. 26, 2019).

Defendant has not cited any court order compelling production of specific materials pursuant to Rule 3.8(d), which was formerly cited as California Rule 5-110. Nor after independent research has the Court found any such orders. In this district, courts have merely set deadlines for when the government must satisfy its Rule 3.8(d) obligations. *See, e.g.*, *de Anda*, 2019 WL 2617090, at *1 (ordering that "if the government obtains any materials covered by Rule 5-110(D) or *Brady* that have yet to be produced, the Court sets a 24-hour disclosure deadline"); *United States v. Walker*, 2018 WL 3023518, at *2 (N.D. Cal. Jun. 18, 2018) (setting similar deadlines for disclosure of materials under Rule 3.8(d) and *Brady*). But no court has ordered production of specific documents pursuant to Rule 3.8(d). *See also United States v. Talao*, 222 F.3d 1133, 1138 (9th Cir. 2000) (explaining that a different California Rule of Professional Conduct is "a rule governing attorney conduct and the duties of attorneys, and does not create a right" for a party to be free of violations of such rules).

Even if Rule 3.8(d) permits a court to order production, Defendant has failed to show that the government has not complied with its disclosure obligations. As explained above, Defendant has not shown how additional email communications between Yahoo and the FBI and between Yahoo and NCMEC are material to Defendant's motion to suppress. Defendant only speculates that the government has not complied with its obligations or that some unidentified communication from Sean Zadig to the FBI or to NCMEC—beyond the many such communications already produced—might help Defendant impeach Zadig. *See de Anda*, 2019 WL 2617090, at *1 (denying motion to set a specific deadline for government to comply with Rule 3.8(d) given the defendant's failure "to show that the government has not complied with its

Case No. 16-CR-00519-LHK-1
ORDER DENYING DEFENDANT'S FOURTH MOTION TO COMPEL

disclosure obligations"). Thus, the Court denies Defendant's request to compel production under California Rule of Professional Conduct 3.8(d).

## IV.     CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's fourth motion to compel.

**IT IS SO ORDERED.**

Dated: July 11, 2019

_Lucy H. Koh_

LUCY H. KOH
United States District Judge