STEVEN G. KALAR
Federal Public Defender
Northern District of California
SEVERA KEITH
Assistant Federal Public Defender
55 South Market Street, Suite 820
San Jose, CA 95113
Telephone:    (408) 291-7753
Facsimile:     (408) 291-7399
Email:            Severa_Keith@fd.org

Counsel for Defendant Wolfenbarger

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHNNY WOLFENBARGER,<br><br>Defendant. | **Case No.:** CR 16-519 LHK<br><br>**DEFENDANT'S REQUEST FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; [PROPOSED] MOTION FOR RECONSIDERATION**<br><br>**Court:**           Honorable Lucy H. Koh |

**REQUEST FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**

In a written order issued on August 29, 2019, this Court denied Mr. Wolfenbarger's motions to suppress evidence. *United States v. Wolfenbarger*, No. CR 16-519 LHK, Dkt. 207. In a written order issued on July 11, 2019, this Court denied Mr. Wolfenbarger's fourth motion to compel discovery. Dkt. 198. On May 7, 2019, the Court deemed denied Mr. Wolfenbarger's objections to the magistrate's denial of his third motion to compel discovery. Dkt. 181.

///

1    Pursuant to this Court's inherent authority, and under the applicable Civil and Criminal
2 Local Rules, Mr. Wolfenbarger respectfully requests leave of Court to move for
3 reconsideration of specific aspects of the Court's rulings.  His points and authorities in support
4 of his proposed motion for reconsideration are submitted herewith.

5    District courts generally have inherent authority in criminal cases to reconsider their
6 prior rulings outside the sentencing context.  *See, e.g., United States v. Aguirre*, 214 F.3d 1122,
7 1124 (9th Cir. 2000).  In the interest of judicial economy, it is preferable for the district court to
8 reconsider its own rulings when the court's determination may obviate the need for an appeal,
9 as in cases where the issue is purely one of law.  This motion is brought pursuant to Rules 2
10 and 57 of the Federal Rules of Criminal Procedure, and pursuant to the provisions of the Local
11 Rules of the Northern District of California pertaining to motions for reconsideration. *See* Civ.
12 L.R. 7-9(a); Crim. L.R. 2-1.

13    Civil Local Rule 7-9 allows a party to request leave to file a motion for reconsideration
14 before a judgment has been entered on any of three grounds: (1) a material difference in fact or
15 law exists from that which was presented to the court, which, in the exercise of reasonable
16 diligence, the moving party did not know at the time of the order for which reconsideration is
17 sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by
18 the court to consider material facts or dispositive legal arguments. Civ. L.R. 7-9(b)(1)-(3). The
19 moving party may not reargue any written or oral argument previously asserted to the court.
20 Civ. L.R. 7–9(c).

21    All three grounds exist here, as outlined in his points and authorities.  Those grounds
22 are the following:

23    First, reconsideration is warranted with respect to the Court's reliance on Yahoo's
24 Terms of Service, because the Court did not address *United States v. Warshak*, 631 F.3d 266,
25 286-88 (6th Cir. 2010), and *Carpenter v. United States*, 138 S. Ct. 2206 (2018).  Mr.
26 Wolfenbarger is informed that the Electronic Frontier Foundation, ACLU, and ACLU of
27 Northern California are separately requesting leave to submit an amicus brief on the Terms of
28

Service issue, and the defense requests that the Court consider their brief in ruling on the request for reconsideration.

Second, reconsideration is warranted because Yahoo trespassed into Mr. Wolfenbarger's private email, and the Court did not address the holding of *United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016), on this issue.

Third, reconsideration is warranted based on new material facts, because the Court denied discovery of field agent Communications based in part on erroneous facts regarding the number of MCCU agents working actively on OST cases.

Fourth, reconsideration is warranted based on new material facts, because there is no factual support for Mr. Zadig's claim that a German individual was involved in arranging the murder of children.

Fifth, reconsideration is warranted because the Court failed to address key caselaw, testimony, and evidence regarding Mr. Zadig's law enforcement motive, and Agent Yesenksy's reliance on Mr. Zadig for law enforcement functions

Finally, reconsideration is warranted because the Court failed to determine whether the search implicated the Fourth Amendment under the analysis set forth in *Skinner v. Railway Labor Exec.*, 489 U.S. 602, 614-15 (1989), for permissive regulatory schemes.

Accordingly, Mr. Wolfenbarger respectfully requests that the Court grant leave and consider his proposed motion for reconsideration.

Date:   November 1, 2019

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/s

SEVERA KEITH
Assistant Federal Public Defender

STEVEN G. KALAR
Federal Public Defender
Northern District of California
SEVERA KEITH
Assistant Federal Public Defender
8th Floor - Suite 820
55 South Market Street
San Jose, CA 95113
Telephone: (408) 291-7753
Facsimile: (408) 291-7399
Email: Severa_Keith@fd.org

Counsel for Defendant Wolfenbarger

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | **Case No.:** CR 16–519 LHK |
|---|---|
| Plaintiff, | **[PROPOSED] MOTION FOR RECONSIDERATION** |
| v. | |
| JOHNNY WOLFENBARGER, | **Court:** Courtroom 8, 4th Floor |
| Defendant. | |

# TABLE OF CONTENTS

POINTS AND AUTHORITIES ................................................................................................. 1

I. Reconsideration is Warranted With Respect to the Court's Reliance on Yahoo's Terms of Service, Because the Court Did Not Address *Warshak* or *Carpenter* ....................... 1, 2

II. Reconsideration is Warranted Because Yahoo Trespassed into Mr. Wolfenbarger's Private Email, and the Court did Not Address *Ackerman's* Holding on this Issue .......... 2

III. Reconsideration is Warranted Because the Court Denied Discovery of Field Agent Communications Based on Erroneous Facts..................................................................... 3

IV. Reconsideration is Warranted Because There is No Factual Support for Mr. Zadig's Claim that a German Individual was Involved in Arranging the Murder of Children ..... 4

V. Reconsideration is Warranted Because the Court Failed to Address Key Caselaw, Testimony, and Evidence Regarding Mr. Zadig's Law Enforcement Motive and Agent Yesenksy's Reliance on Mr. Zadig for Law Enforcement Functions............................... 5

VI. Reconsideration is Warranted Because the Court Failed to Determine Whether The Search Implicated the Fourth Amendment Under *Skinner* ........................................... 8, 9

CONCLUSION ........................................................................................................................... 9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Carpenter v. United States*,
    138 S. Ct. 2206 ............................................................................................................. 1, 2

*Skinner v. Railway Labor Exec.*,
    489 U.S. 602 (1989) ..................................................................................................... 8, 9

*United States v. Ackerman*,
    831 F.3d 1292 (10th Cir. 2016) ................................................................................... 3, 9

*United States v. Cleaveland*,
    38 F.3d 1092 ................................................................................................................ 5, 8

*United States v. Jones*,
    565 U.S. 400 (2012) ......................................................................................................... 3

*United States v. Reed,*
    15 F.3d 928 .................................................................................................................. 5, 8

*United States v. Walther*,
    652 F.2d 788 (9th Cir. 1981) ........................................................................................ 5, 8

*United States v. Warshak*,
    631 F.3d 266 (6th Cir. 2010) ............................................................................................ 1

*United States v. Wilson*,
    2017 WL 2733879 (S.D. Cal. 2017) ................................................................................. 2

[PROPOSED] MOTION FOR RECONSIDERATION
*WOLFENBARGER*, CR 16–519 LHK

ii

**POINTS AND AUTHORITIES**

**I.    Reconsideration is Warranted With Respect to the Court's Reliance on Yahoo's Terms of Service, Because the Court Did Not Address *Warshak* or *Carpenter***

Reconsideration is warranted under Civ. L.R. 7-9(b)(3) regarding the Court's determination that no "search" of Mr. Wolfenbarger's account had taken place for purposes of the Fourth Amendment in light of Yahoo's Terms of Service, because the Court did not address Mr. Wolfenbarger's dispositive arguments that he had a reasonable expectation of privacy in light of *United States v. Warshak*, 631 F.3d 266, 286-88 (6th Cir. 2010), and *Carpenter v. United States*, 138 S. Ct. 2206 (2018). *Compare* Def. Reply, Dkt. 194, at 2-5 *with* Order, Dkt. 207, at 17-20.

The Court concluded that Mr. Wolfenbarger lacked a reasonable expectation of privacy in his private email account because he "agree[d] to Yahoo's TOS [Terms of Service]" when he created his account, and thereby "acknowledged that Yahoo could search content in his Yahoo account for violations of Yahoo's TOS, such as illegal content or content that would harm minors." Order at 18-20.

Mr. Wolfenbarger is informed that the Electronic Frontier Foundation, ACLU, and ACLU of Northern California are separately requesting leave to submit an amicus brief on the TOS issue, and the defense requests that the Court consider their brief in ruling on the request for reconsideration.

In *Warshak*, the Sixth Circuit found that the defendant maintained a reasonable expectation of privacy in the contents of his email notwithstanding TOS that gave the ISP "the *ability*," and "the *right*," to access the contents of his email. *Warshak*, 631 F.3d at 287 (emphasis in original). The court noted that while "a subscriber agreement might, in some cases, be sweeping enough to defeat a reasonable expectation of privacy," the court expressed doubt that such would be the case "in most situations," especially where the agreement itself outlined "certain limited circumstances" where the ISP would access user emails. *Id.* at 286-87. Similar to the Terms of Service here, the ISP in question reserved an arguably broad right to access user's accounts where "necessary to protect the service." *Id.* The court analogized to the hotel guest context where a renter maintains an expectation of privacy despite "routine entry" of the room by hotel staff. *Id.* Here, Yahoo's TOS, as in *Warshak*, notify users that Yahoo *may* conduct checks for specified reasons, and have the right and ability to do

[PROPOSED] MOTION FOR RECONSIDERATION
*WOLFENBARGER*, CR 16–519 LHK

1

so, much like when hotel staff enter guests' rooms.

The two cases relied on by the Court are readily distinguishable. In relation to *United States v. Wilson*, 2017 WL 2733879 (S.D. Cal. 2017), *appeal pending*, No. 18-50440, both Google and Facebook have filed an amicus brief in the Ninth Circuit stating that the search should be upheld under the private search doctrine because it involved hash matching, and arguing that the Ninth Circuit "need not and should not adopt the district court's conclusion that Wilson lacked a reasonable expectation of privacy in the files he uploaded to his Gmail account." Brief for *Amici Curiae* Google and Facebook, No. 18-50440, Dkt. 34, at 18. As Google and Facebook explained there, "[a] user's reasonable expectation of privacy in email is not defeated by a provider's ability to access its content or by a service provider's Terms of Service, . . . irrespective of whether the service provider has terminated that user's account or whether the user violated the terms governing his relationship with the service provider." *Id*. (citing cases).

The Dropbox case relied on by the Court, *United States v. Viramontes*, 16-CR-508-EMC, ECF No. 62 at 12-13 (N.D. Cal. 2017), is also readily distinguishable because it did not involve a private email account, but instead involved images that were "publicly accessible." This Court's holding, by contrast, would be the first in the nation to find no reasonable expectation of privacy in an active, private email account.

Additionally, the Supreme Court in *Carpenter* upheld the reasonableness of one's right to privacy in cell site location information even though such information is "voluntarily" disclosed to a wireless carrier. *Carpenter*, 138 S.Ct. at 2217. Despite the existence of a contract acknowledging the carriers' authority to track location information, carrying a cellphone cannot be considered an affirmative voluntary act that waives Fourth Amendment rights. *Id*. at 2220. Here, as in *Carpenter*, warrantless access to all sent and received emails, if permitted under the third-party doctrine, could "provide[] an intimate window into a person's life" over an extended period. *Id*. at 2217.

## II. Reconsideration is Warranted Because Yahoo Trespassed into Mr. Wolfenbarger's Private Email, and the Court did Not Address *Ackerman's* Holding on this Issue

Reconsideration is warranted under Civ. L.R. 7-9(b)(3) regarding the Court's conclusion that there was no trespass into Mr. Wolfenbarger's private email account for purposes of the Fourth

Amendment, because the Court did not address Mr. Wolfenbarger's dispositive argument on this issue. Def. Reply, Dkt. 194, at 5. The Court framed the issue as "'involving merely the transmission of electronic signals.'" Order at 18 (quoting *United States v. Jones*, 565 U.S. 400, 411 (2012)). To the contrary, as then-Judge Gorsuch concluded in *Ackerman*, trespass theory is indeed applicable to an ISP's search of a private email account, because "the warrantless opening and examination of (presumptively) private correspondence . . . seems pretty clearly to qualify as exactly the type of trespass to chattels that the framers sought to prevent when they adopted the Fourth Amendment." *United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016).

### III. Reconsideration is Warranted Because the Court Denied Discovery of Field Agent Communications Based on Erroneous Facts

Mr. Wolfenbarger requests reconsideration of the Court's order denying Mr. Wolfenbarger's fourth motion to compel discovery, as well as the Court's order deeming denied his objections to the magistrate's discovery order. Dkts. 181, 189. Reconsideration is warranted under Civ. L.R. 7-9(b)(1) and (2), due to a material difference in facts which came to light at the evidentiary hearing.

In his motion and objections, Mr. Wolfenbarger sought disclosure of relevant communications between Mr. Zadig and field agents handling the 70 OST cases referred out from MCCU. The court denied production of those communications on grounds that the government had produced discovery of communications involving the "thirteen most active" MCCU agents working on OST cases. Order, Dkt. 198, at 17 ("the government in the instant case has also produced communications between Sean Zadig (the head of Yahoo's E-Crimes Investigation Team) and the *thirteen* most active agents in the FBI's MCCU, which initiated Operation Swift Traveler") (emphasis in original). The Court did not address Mr. Wolfenbarger's argument that disclosure should not be limited to MCCU agents. Def. Obj., Dkt. 180, at 4-5.

The government's claim that it produced adequate discovery because it contacted the thirteen most active agents at MCCU has been undermined by the testimony of Agent Yesensky. As the Court summarized his testimony when it denied Mr. Wolfenbarger's motions to suppress, Agent Yesensky testified that he "was the sole agent assigned to OST for the duration of the FBI's investigation into Philippines webcam pornography, and received only 'piecemeal' assistance from

other agents," at most, "from two other law enforcement agents from time to time." Order, Dkt. 207, at 32-33. The court relied on that testimony in endorsing Agent Yesenksy's testimony regarding why he did not focus on Mr. Wolfenbarger earlier in the process. Order at 33-34.

Mr. Wolfenbarger raised this facial conflict with the government in a letter requesting clarification, and the government has indicated that Agent Yesenksy's testimony was correct, and its own description of "thirteen most active" agents reflects "a high level of redundancy." *See* Exh. A, Discovery Letters. Accordingly, the defense requests that the Court reconsider whether the government properly limited its discovery inquiries to MCCU agents, given that Agent Yesenksy was only helped on a piecemeal basis, from time to time, by one to two other agents and not thirteen agents. Alternatively, if there were thirteen most active agents at MCCU working on OST cases, the Court should reconsider its ruling that Agent Yesensky appropriately prioritized his investigative tasks based on limited resources. *Compare* Order, Dkt. 198, at 17, *with* Order, Dkt. 207, at 32-34.

**IV.   Reconsideration is Warranted Because There is No Factual Support for Mr. Zadig's Claim that a German Individual was Involved in Arranging the Murder of Children**

Reconsideration of the Court's suppression order is warranted under Civ. L.R. 7-9(b)(1) and (2), based on material new facts. In the Court's order, both on page 34, and under a heading entitled "Yahoo's Attempts to Prevent Actual Sexual Abuse or the Murder of Children," the Court relied solely on Mr. Zadig's testimony to conclude that Mr. Zadig's team investigated a German Yahoo user associated with Deutsch Bank, residing in Singapore, who was operating a "snuff" service involving the murder of children. Order at 34, 37-38 (citing RT 348).

Counsel for Mr. Wolfenbarger has searched publicly available records, and has identified the German individual as Michael Frank Hartung, who was convicted in Singapore on July 12, 2019, of sex trafficking offenses. *See* Exh. B, Discovery Letters and Articles. In published reports regarding Mr. Hartung, there is no mention of murder of children, or of a "snuff" service being run by this individual. *See id.*, Articles. Accordingly, the defense contacted government counsel and requested that pursuant to *Brady* and *Giglio*, the government contact Mr. Zadig and provide any documentation regarding the truth or falsity of his "snuff" claims regarding this individual. *Id.*, Letter dated 9/13/19.

In response, the government has asserted that such documents should be sought through

subpoena to Yahoo, or through communications with the government of Singapore. *Id*., Letters dated 9/20/29, 10/31/19. In the government's most recent responding letter, the government has not disputed that there is no factual basis for Mr. Zadig's testimony regarding a "snuff" service involving the murder of children. *Id.*, Letter dated 10/31/19. Accordingly, the Court's factual finding on this issue should be reconsidered.

### V. Reconsideration is Warranted Because the Court Failed to Address Key Caselaw, Testimony, and Evidence Regarding Mr. Zadig's Law Enforcement Motive and Agent Yesenksy's Reliance on Mr. Zadig for Law Enforcement Functions

Reconsideration is warranted in light of the Court's failure to consider material facts and dispositive legal arguments regarding Mr. Zadig's law enforcement motive, and regarding Agent Yesenksy's reliance on Mr. Zadig for law enforcement functions. Civ. L.R. 7-9(b)(3).

The extensive evidence of motive and reliance are sufficient to satisfy *United States v. Walther*, 652 F.2d 788 (9th Cir. 1981), *United States v. Reed*, 15 F.3d 928 (9th Cir. 1993), and *United States v. Cleaveland*, 38 F.3d 1092 (9th Cir. 1994), regardless of Yahoo's intertwined business interest. First, the Court relied heavily on Yahoo's desire to prohibit child pornography on its platform for its own business purposes, but the Ninth Circuit has expressly held that a business's motivation to deter illegal activity on its premises is not a legitimate independent purpose. *Reed*, 15 F.3d at 932 (hotel's "substantial interest in seeing that its premises are not used for illegal activity" did not constitute a legitimate independent purpose) (quotation marks omitted). Mr. Zadig's testimony in *U.S. v. Rosenow* demonstrates that Yahoo's interest is the same as the hotel's in *Reed*: "[t]he goal or the interest is to clean up the platforms and make them less hospitable to this type of abuse." Exh. O at 94.

Second, the Court stated that ISPs are not motivated by the potential of government reward, and stated that Mr. Wolfenbarger submitted no evidence on this issue with respect to Yahoo. Order at 30-31. However, under *Reed*, this is irrelevant, because no showing of payment or reward is required. *Reed*, 15 F.3d at 932 n.4. Additionally, the Court failed to address Mr. Wolfenbarger's evidence that Mr. Zadig himself is strongly motivated by the promise of law enforcement awards and recognition. Exh. UU at 3 (photographs of Mr. Zadig's extensive collection of law enforcement awards and over 50 "challenge coins," which are exchanged by law enforcement agents during visits,

including an award from the South Florida Internet Crimes Against Children ("ICAC") Task Force for his role in the convictions of two individuals following Cybertips submitted in 2013, while he was at Google[1]).

Third, the Court addressed certain emails by Mr. Zadig, Order at 34-41, but did not address additional emails that demonstrate Mr. Zadig's plain law enforcement motivation, including (1) the congratulatory email he sent within Yahoo describing Mr. Wolfenbarger's indictment as a "successful outcome" and a "win" for his team, "which will help guide us through the year and focus our efforts," Exh. C, YAH00733[2]; (2) his attempts to refer military targets to the Department of Defense for prosecution, Exh. RR at 1684; (3) his efforts to give joint presentations with Agent Yesensky at law enforcement conferences regarding Operation Swift Traveler, Exh. RR at 1652, 1739[3]; (4) his recommendation of an online tool that would assist agents in developing probable cause in their affidavits in support of search warrants, Exh. RR, Bates 1699; (4) his communications with the Australian Federal Police officer, during which he sought to feedback so that he could modify Yahoo's internal search and reporting protocols to better serve law enforcement. Exh. RR 1628, 1703-09. Several of these emails do not fall within any of the four categories of emails that the Court described. Order at 34.

Fourth, it is not correct that the FBI did not share non-public details with Mr. Zadig. Order at 35. When Mr. Zadig emailed Agent Trombetta regarding Mr. Wolfenbarger, she initially responded that the case was still being worked because he was in the Philippines. Exh. D at YAH00908. It is a non-public detail that the FBI is monitoring a suspect's travels, and has not yet arrested that suspect because he is known to the FBI to be in a foreign country.

Fifth, it is not correct that Mr. Zadig only provided the FBI with information through

---

[1] The defendants' names appear on the award, and the defense was able to obtain case information online. https://www.justice.gov/usao-sdfl/pr/babysitter-sentenced-60-years-federal-prison-producing-child-pornography-depicting-his (visited Nov. 28, 2018).

[2] The Court credited Mr. Zadig's testimony that he sought mugshots because they are "sobering." Order at 36. This claim is not credible given his use of a smiley face " :) ". Exh. SS at 2097 ("Any chance you might have a mugshot available? :)").

[3] Agent Yesenksy acknowledged their discussion of a possible joint presentation in Dallas. RT 92-93; Exh. RR at 1739 (Yesensky: "I would love to do it.").

[PROPOSED] MOTION FOR RECONSIDERATION
*WOLFENBARGER*, CR 16–519 LHK

1  submissions to NCMEC and legal process.  Order at 25, 38.  For example:  (1) Mr. Zadig himself
2  testified that he had substantive discussions with field agents regarding OST targets, after they had
3  received leads on the targets from MCCU.  Exh. OO at 19.  (The Court denied Mr. Wolfenbarger's
4  motion to compel production of these communications.)  (2) At the outset of the investigation, law
5  enforcement contacted Yahoo regarding certain Yahoo users who were listed in the supplemental
6  reports, for whom no Cybertip had been submitted.  Exh. RR at 2040.  Yahoo's legal counsel stated
7  that they would "walk through this" by phone.  *Id.*  (3) Agent Yesenksy frequently spoke by
8  telephone with Mr. Zadig to obtain additional information regarding his targets, methods, and
9  investigative conclusions, beyond that set forth in his supplemental reports.  *E.g.*, Exh. Z; Exh. BB;
10 Exh. CC at 1559; Exh. EE at 1593.  (4) Mr. Zadig alerted Agent Yesenksy to upcoming travels of
11 Yahoo users, outside the NCMEC reporting process.  *E.g.*, RR at 1645.

12        Sixth, the Court stated that the government did not know that Yahoo was going to search Mr.
13 Wolfenbarger's account.  Order at 32.  To the contrary, Agent Yesenksy was informed by Mr. Zadig
14 on July 23, 2015, that ECIT was searching the accounts of "overlap[p]ing" buyers from the
15 December report.  RR at 1649.  The Court also stated that Agent Yesenksy was not "simply waiting"
16 for ECIT to search the buyer accounts, because Agent Yesenksy's initial review of returns on seller
17 accounts took one year due to the fact that he "was assisted at most by two other agents from time to
18 time."  Order at 32-34.  As discussed above, if this characterization of MCCU staffing on OST cases
19 is accurate, then the Court should reconsider its order denying discovery of field agent
20 communications, wherein the Court relied heavily on the government's representation that it
21 requested and produced communications after contacting thirteen active agents at MCCU working on
22 OST cases.  Order, Dkt. 198, at 17.  Moreover, even assuming that Agent Yesenksy prioritized
23 reviewing returns for seller accounts, this would not preclude him from simultaneously waiting for
24 ECIT to search additional target accounts, particularly given his awareness after the December report
25 that ECIT was, in fact, searching the accounts of "overlapping" buyers.

26        Relatedly, the Court found no evidence that "the government encouraged Yahoo to conduct a
27 third investigation," and cited Mr. Zadig's claim regarding "proactive scanning" as the basis for the
28 "third investigation."  Order at 34.  In fact, Mr. Zadig testified in *U.S. v. Rosenow* that the "third

1   investigation" was triggered by a heads-up from law enforcement that they had arrested the Texas
2   target, at which time law enforcement advised Mr. Zadig that "they had no intention of investigating
3   further past that subject, so that was how we began []our third investigation." Exh. OO at RT 90.  At
4   a minimum, that heads-up was tacit encouragement from law enforcement that because law
5   enforcement was not continuing their investigation at that time, ECIT could begin examining the
6   contacts of the Texas suspect and searching their emails, which Mr. Zadig then began to do.

7   Finally, the Court stated that Agent Yesenksy occasionally reached out to Mr. Zadig to clarify
8   information around Yahoo's processes, Order at 7, but did not address extensive evidence that Agent
9   Yesenky actually relied on Mr. Zadig to perform essential law enforcement functions of identifying
10  targets and developing probable cause for those targets.  *E.g.,* Dkt. 119, Exh. Z; Exh. BB (discussing
11  observations made by ECIT regarding the targets' use of email and video; and an error regarding one
12  user); Exh. RR, Bates 1813 (requesting electronic copy of ECIT's report so that FBI could "copy and
13  paste"); Exh. DD at 1561-92 (Yesenksy's report repeating Zadig's report almost verbatim); RT 27
14  (Testimony of Yesensky:  "I copied that content into my report"); Dkt. 119, Exh. EE, Bates 1593
15  (Zadig explaining to Yesenksy why he concluded that certain sellers were from Philippines;
16  describing methods used by sellers to send child pornography to buyers; stating that Yahoo only filed
17  CyberTip reports for seller accounts that had a profile image that appeared to depict child abuse).

18  All of these facts must be considered in totality under *Walther*, *Reed*, and *Cleaveland*.

### VI. Reconsideration is Warranted Because the Court Failed to Determine Whether the Search Implicated the Fourth Amendment Under *Skinner*

Reconsideration is warranted in light of the Court's failure to address the Supreme Court's analysis of permissive regulatory schemes set forth in *Skinner v. Railway Labor Exec.*, 489 U.S. 602, 614-15 (1989), which sets forth a test for suppression under the Fourth Amendment. Civ. L.R. 7-9(b)(3).  Here, that test is plainly met, as Mr. Wolfenbarger argued.  Def. Mtn. at 2-6; 20-21; Reply at 9-10, 13.  Under *Skinner*, the focus is on the government's "encouragement, endorsement, and participation," *Skinner*, 489 U.S. at 615-16, and whatever independent purpose Yahoo may have had is not relevant.

As the *Skinner* Court explained, "[t]he fact that the Government has not compelled a private

party to perform a search does not, by itself, establish that the search is a private one. *Id*. at 615.  For the reasons outlined in Mr. Wolfenbarger's motion, Mtn. at 2-6, 7-18, the Court should conclude that as in *Skinner*, "specific features of the regulations combine" to demonstrate "that the Government did more than adopt a passive position toward the underlying private conduct." *Id*.   In *Skinner*, the regulatory scheme implicated the Fourth Amendment in part because the government "removed all legal barriers" to the drug testing of railroad employees. *Id*. at 615.  Here, there are no legal barriers to the search of private accounts by ISPs, and as in *Skinner*, the government has "removed all legal barriers" to the sharing of the fruits of those searches with the government.   Additionally, as in *Skinner*, the government "has made plain not only its strong preference for [the search activity], but also its desire to share the fruits of such intrusions." *Id*. at 615.  Indeed, under the regulations, an ISP that fails to report known child pornography images may be subject to both civil and criminal penalties.  *See United States v. Ackerman*, 831 F.3d 1292, 1296-97 (10th Cir. 2016). Accordingly, *Skinner* is satisfied by the nature of the regulatory scheme requiring reporting of illicit images known to the ISP; NCMEC's status as a governmental entity (an issue the Court did not resolve); NCMEC's public-private partnerships; and NCMEC's written guidance and ongoing communications to ISPs regarding their obligations to ensure that their platforms are not utilized for illicit conduct, and regarding their reporting responsibilities.  *See, e.g*., Def. Mtn. at 2-6; *e.g*., Def. Exh. I, J, K, L, MM, UU, ZZ, CCC, DDD, EEE, HHH.

**CONCLUSION**

For the foregoing reasons, the defense respectfully requests that the Court reconsider its prior orders.

Dated:     November 1, 2019                    Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

       /S
SEVERA KEITH
Assistant Federal Public Defender