STEVEN G. KALAR
Federal Public Defender
Northern District of California
SEVERA KEITH
GRAHAM ARCHER
Assistant Federal Public Defender
8th Floor - Suite 820
55 South Market Street
San Jose, CA 95113
Telephone:    (408) 291-7753
Facsimile:    (408) 291-7399


Counsel for Defendant Wolfenbarger

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 16–519 LHK |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE** |
| v. | |
| JOHN  WOLFENBARGER, | **Court:**         Courtroom 8, 4th  Floor |
| Defendant. | **Hearing Date:**   February 5, 2020 |
| | **Hearing Time:**   9:15 a.m. |

## <u>OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #1</u>

The government states that it intends to introduce statements of Mr. Wolfenbarger that were made on August 2, 206, August 31, 2016, and "made or adopted by Wolfenbarger in emails, online chats, and other documents signed by Wolfenbarger."   Gov. Mtn. in Lim. at 2.

The government argues that Mr. Wolfenbarger's statements in response to law enforcement questioning on August 2, 2016, and August 31, 2016 should be admitted as voluntary statements.  *Id.* at 203.  It is the government's burden to demonstrate the voluntariness and admissibility of out-of-court statements.

Mr. Wolfenbarger respectfully moves the Court to make a pretrial determination of the

admissibility and voluntariness of these statements pursuant to 18 U.S.C. § 3501. Should the Court determine that the statements were voluntary, the Court "shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." 18 U.S.C. § 3501(a). Factors with respect to voluntariness that the Court may consider include whether the defendant was advised of the charges, whether he was advised of his right not to make any statement and that any statement could be used against him, whether he was advised of his right to counsel, and whether he had the assistance of counsel. 18 U.S.C. § 3501(b).

Here, Mr. Wolfenbarger was questioned on August 2, 2016, when he returned to the U.S. after an international flight from the Philippines. He was diverted to secondary inspection and was questioned in a separate room. The government has previously introduced a signed FD-395 advice of rights form into evidence. Gov. Opp. to Mtn. to Suppr., Dkt. 60, Exh. B. During the lengthy interrogation, Mr. Wolfenbarger was confronted with evidence taken from his Yahoo account. For example, Special Agent Marceau accused Mr. Wolfenbarger of trading child pornography videos online, and asked whether the jrwolfen02@yahoo.com email account belonged to him. *Id.* at 9. Mr. Wolfenbarger did not have counsel during this interrogation. Mr. Wolfenbarger respectfully submits that because he was diverted to a separate room at secondary inspection, where he was confronted with evidence of guilt, and because he did not have counsel, the Court should find that the government has failed to demonstrate that his participation in the interview, and the statements he made, were voluntary for purposes of § 3501, notwithstanding his signature on the FD-395. Mr. Wolfenbarger also respectfully submits that the August 31, 2016, statement was tainted fruit of the August 2 statement. Should the Court resolve these preliminary issues of admissibility in the government's favor, the jury will determine how evidence on the issue of voluntariness bears on the weight they give to the confession. 18 U.S.C. § 3501(a).

With respect to other out-of-court statements, Mr. Wolfenbarger strongly objects to the government's motion to admit statements made or adopted in unspecified "emails, online chats, and other documents" due to its lack of specificity.  The discovery in this case is voluminous. Within that discovery are numerous statements that could be characterized as made or adopted by Mr.

1   Wolfenbarger.  The government must be required to identify the particulars of statements that it seeks

2   to introduce at trial, including the specific date on which the statement occurred, and the specific

3   statement that the government seeks to admit.

4         The defense is entitled to notice regarding the specific statements so that it can adequately

5   investigate the allegations and prepare for trial, and so that it can determine whether there are

6   evidentiary objections to the admissibility of the statements, for example on voluntariness grounds,

7   relevance grounds, or on grounds that the statements are more prejudicial than probative.

8         The government argues that Mr. Wolfenbarger should not be permitted to introduce his own

9   out-of-court statements.  Gov. Mtn. in Lim. at 2-3.

10        The government has not demonstrated that all out-of-court statements of the defendant are

11   inadmissible on all grounds.  The rules of evidence specify when out-of-court statements are and are

12   not hearsay (Fed. R. Evid. 801(c)-(d)) and also set forth exceptions to the hearsay rule.  Fed. R. Evid.

13   803, 804, 807.  These rules cannot be applied in the abstract when the Court has not been given any

14   description of the alleged statements at issue.  Mr. Wolfenbarger cannot properly respond when the

15   government has not identified the specific statements.  The simple fact that a statement was made

16   out-of-court is not sufficient in and of itself for it to be deemed hearsay (Fed. R. Evid. 801(c)), much

17   less "inadmissible" hearsay.  (Fed. R. Evid. 803, 804, 806, 807).  For example, many of the

18   statements of the defendant may not constitute hearsay if they are not admitted for the truth of the

19   matter asserted (Fed. R. Evid. 801(c)) or are related to the defendant's a state of mind (803(3)).

20   Indeed, at trial, statements may fall under any number of exceptions to the hearsay rule listed in

21   Federal Rule of Evidence 803.  The government's blanket assertion that as a legal matter any

22   allegedly self-serving out of court statements made by the defendant are inadmissible hearsay is

23   simply wrong.

24         Further, under the rule of completeness, "When a writing or recorded statement or part thereof

25   is introduced by a party, an adverse party may require the introduction at that time of any other part

26   or any other writing or recorded statement which ought in fairness to be considered

27   contemporaneously with it."  Fed. R. Evid. 106.  The two underpinnings of the rule are: (1) that

28   context is often required so that a statement is not misleading; and (2) that subsequent introduction of

1  the context at a later time during trial may not adequately repair the harm done.  *See* Fed. R. Evid.

2  106 advisory committee's note.

3      To the extent that the government seeks to introduce portions of any written or recorded

4  statement, Mr. Wolfenbarger must be permitted to invoke the rule of completeness.  *See, e.g., Beech*

5  *Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988) (interpreting Rule 106 and noting that "when one

6  party has made use of a portion of a document, such that misunderstanding or distortion can be

7  averted only through presentation of another portion, the material required for completeness is ipso

8  facto relevant").

9      **OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #2**

10      The government requests permission to introduce unspecified text-only chats and emails, which

11  the government will argue took place between Mr. Wolfenbarger and unidentified individuals in the

12  Philippines.  In its Motion in Limine #2, the government contends that the third parties involved in

13  these chats and emails were co-conspirators, so that their portions of the communications should be

14  admissible under Federal Rule of Evidence 801(d)(2)(E).  The government also argues that Mr.

15  Wolfenbarger has no right under the Confrontation Clause to cross-examine these individuals, if the

16  statements are determined admissible under Rule 801(d)(2)(E).

17      The government does not acknowledge the novel factual context in this case.  In particular, the

18  government does not address the fact that the declarants are identified solely by their email addresses,

19  and their true identities appear to be unknown.  The government has not identified any case in which

20  statements of unknown third parties in internet chats or emails were introduced into evidence in a

21  criminal trial for the truth of the matter asserted.

22      The Court should reject the government's arguments, and conclude that the out-of-court

23  statements of these unidentified declarants are inadmissible hearsay, for which no exception exists.

24  A primary interest secured by the Sixth Amendment right of confrontation is the right of cross-

25  examination, which is the "principal means by which the believability of a witness and the truth of

26  his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  Mr. Wolfenbarger specifically

27  asserts his right to confront these witnesses under the Sixth Amendment.  Many of the out-of-court

28  statements raise serious concerns regarding the motives and intent of the third-party declarants.  Mr.

Wolfenbarger is entitled to challenge their motives and intent through proper cross-examination before the jury.

Moreover, without identification of the account holders themselves, the government cannot authenticate critical information such as their gender, location, and access to minors. There is no indication that the government has located, interviewed, or investigated these account holders. Indeed, numerous courts have concluded that the out-of-court statements made by unidentified declarants on the internet, when offered for the truth of the matters asserted, are inadmissible under Rule 802, and this Court should reach the same conclusion. *See, e.g., X17, Inc. v. Lavandeira*, 2007 WL 790061 (C.D. Cal. Mar. 8, 2007) (third-party blogs crediting defendant as source of purportedly infringing photos found to be inadmissible hearsay evidence); *Blue Bell Creameries, L.P. v. Denali Co., LLC*, 2008 WL 2965655 at *5 & n.4 (S.D. Tex. July 31, 2008) (declining to admit blog entries as evidence of actual consumer confusion in a trademark infringement case stating that they "lack[ed] sufficient indicia of reliability" and "[n]othing is known about the persons who made the entries, about whether they are related in any way to either party or whether they are describing true events and impressions").

Mr. Wolfenbarger has separately moved in limine to exclude any such communications under Federal Rules of Evidence 401, 403, 404, and the Fifth and Sixth Amendments to the Constitution. Def. Mtn. in Limine #9, Dkt. 234. Additionally, the government has not identified any specific third party statements which it seeks to introduce on this basis. Because the government has not identified any specific declarant or any specific statement that it seeks to introduce, the government's motion is premature, and should be denied on that basis. At the point when the government identifies the specific third party statements at issue and lays a proper foundation regarding the identity of the declarant, the Court will be required to conduct a thorough analysis under Fed. R. Evid. 401, 403, 404, 801(d)(2)(E), and the Fifth and Sixth Amendments, to determine whether they are admissible.

With respect to Rule 801(d)(2)(E), the statements are not admissible as co-conspirator statements because the government has failed to lay the proper foundation. Under Rule 801(d)(2)(E), a statement "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E). The government must show "a meeting of the minds as to a

common scheme or plan." *United States v. Lorenzo*, 995 F.2d 1448, 1459 (9th Cir. 1993).

"Statements made before a conspiracy was actually formed fall outside the realm of Rule

801(d)(2)(E)." 5 Weinstein's Federal Evidence § 801.34 (2019).  In addition, "a co-conspirator's out-

of-court statement, standing alone, is insufficient to establish that the defendant had knowledge of

and participated in a particular conspiracy." *United States v. Silverman*, 861 F.2d 571, 577 (9th Cir.

1988); 5 Weinstein's Federal Evidence § 801.34 (2019).

The Court's 801(d)(2)(E) analysis must be performed statement-by-statement.  Here, without

identification of the specific statement and declarant at issue, the Court cannot determine:  (1)

whether there was an agreement between the defendant and the declarant, (2) whether the statement

was made after the agreement was formed, (3) whether the statement furthered the agreement, and (4)

whether there is independent evidence with respect to each of the above, as to each statement.  For

example, communications that did not result in a "purchase" or "show," but instead reflect

unsuccessful negotiations or communications on other topics, would not be admissible.

While the Court may consider the statements themselves when determining their admissibility,

the government must also provide independent proof to satisfy each of the requirements of the rule,

which the government has failed to do.  The government provides a summary of "independent

evidence" that it contends will justify admission of unspecified statements by these unknown

declarants.  Gov. Mtn. in Lim. at 4.  However, the government's general argument is insufficient to

show that the declarant of each statement was knowingly participating in a conspiracy, and that the

statement was made in furtherance of it.  *Compare United States v. Liera*, 585 F.3d 1237, 1246 n.12

(9th Cir. 2009) (holding that statements were not admissible because government failed to present

"sufficient independent evidence to establish that Le Chen's mother was involved in a conspiracy").

With the exception of the email identified in Count Three, the government's evidence is not specific

to any particular statement or any particular declarant.

While the Court can consider the statements themselves as some evidence of these foundational

requirements, out-of-court statements are presumptively unreliable and should not be admitted unless

corroborated by "fairly incriminating evidence."  *See United States v. Silverman*, 861 F.2d 571 (9th

Cir. 1988) ("Although . . . FED. R. EVID. 104(a) permits a trial judge to consider the co-

conspirator's out-of-court statement in assessing the statement's admissibility, Rule 104(a) does not diminish the inherent unreliability of such a statement. . . . Evidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently corroborative of the co-conspirator's statement to constitute proof, by a preponderance of the evidence, that the defendant knew of and participated in the conspiracy").

Moreover,

> "mere conversations between co-conspirators" or "merely narrative declarations" are not admissible as statements in furtherance of a conspiracy.  Instead, the statements must "further the common objectives of the conspiracy," or "set in motion transactions that [are] an integral part of the [conspiracy]."  In short, they must assist the conspirators in achieving their objectives.

*United States v. Layton*, 720 F.2d 548, 556 (9th Cir. 1983) (quoting *United States v. Fielding*, 645 F.2d 719, 726 (9th Cir. 1981); *United States v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979); *see also United States v. Bowman*, 215 F.3d 951, 961 (9th Cir. 2000) (narrations of past events are inadmissible if statement was not made in furtherance of conspiracy).

Finally, close associations are not enough to establish a conspiracy. *United States v. Castaneda*, 9 F. 3d 761 (9th Cir. 1993).  Nor is "the existence of and opportunity to join the conspiracy, or simple knowledge, approval of, or acquiescence in the objective or purpose of the conspiracy, without an intention and agreement to accomplish a specific illegal objective." *United States v. Melchor-Lopez*, 627 F.2d, 886, 890 (9th Cir. 1980).

## OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #3

The government seeks to admit "a limited selection of child pornography images and videos received and distributed by Wolfenbarger."  Gov. Mtn. in Lim. at 5.  The defense is not aware of any such material beyond the specific material associated with Count Three.  To the extent that any such material exists beyond that charged in Count Three, the Court should exclude it.  *Compare United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir. 2008) (each of the clips [shown to the jury] was derived from files charged in the indictment").  Additionally, the material should be excluded because the defense has not received sufficient notice that would allow the defense to examine the material and be prepared to meet it at trial, the probative value of such evidence is substantially outweighed by its unfair prejudicial effect under Rule 403.

1   With respect to the material that is associated with Count Three, the defense respectfully

2   submits that uncensored versions of the material would be more prejudicial than probative.  The

3   defense is prepared to stipulate that the material meets the relevant definition of "child pornography."

4   His willingness to stipulate should be factored into the 403 analysis.  *United States v. Merino-*

5   *Balderrama*, 146 F.3d 758, 762 (9th Cir. 1998). Additionally, the government has not explained why

6   introduction of multiple uncensored images would not be cumulative, particularly given the highly

7   inflammatory nature of the images.

8   Finally, to the extent that a specific uncensored image or video is offered to show the

9   defendant's knowledge, and if the Court otherwise determines that admission of uncensored images

10   is warranted, the government should be required to lay a foundation that Mr. Wolfenbarger actually

11   opened and viewed that image or video.  *Ganoe*, 538 F.3d at 1124 ("[F]or every image shown to the

12   jury there was forensic evidence that the files had actually been opened and viewed after

13   downloading.").

14   **OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #4**

15   The government argues that a July 3-4, 2013, chat which occurred outside the indictment

16   period should be admitted to show Mr. Wolfenbarger's alleged prior sexual interest in children, and

17   his access to live streamed abuse.  Gov. Mtn. in Lim at 6-7.  Mr. Wolfenbarger has moved to exclude

18   all chats outside the charged timeframe under Federal Rules of Evidence 401, 403, 404(b), and the

19   Fifth and Sixth Amendments.  The statements made by out-of-court declarants in this chat are

20   inadmissible hearsay, not subject to any exception, as previously argued.

21   The government has not specifically identified any other chats that it seeks to introduce.

22   Accordingly, on the present record, the Court cannot determine that the chat is "inextricably

23   intertwined" with the other evidence as "important and necessary background information," which

24   the government argues would obviate the need for a 404(b) analysis.  Gov. Mtn. in Lim. at 7.

25   Additionally, on its face, the discussion of purchasing a webcam show appears cumulative of other

26   evidence the government will introduce.

27   The government also hopes to introduce a portion of the chat as evidence that Mr.

28   Wolfenbarger purportedly "fantasizes about teaching [an 8-year-old female relative] to have sex with

him." Gov. Mtn. in Lim. at 6. This portion of the chat is highly inflammatory, and far more prejudicial than probative, and should be excluded under Rule 403 and 404(b).

On this record, the Court should conclude that the entire chat constitutes impermissible character evidence because the government has failed to identify a permissible basis to introduce the evidence under 404(b). Character evidence is inadmissible under Federal Rule of Evidence 404(a) if its intended use is "to show propensity or proclivity." *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). "Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion." *Id.* at 944 (quoting Fed. R. Crim. P. 404, Advisory Committee Notes (1972 Amendments). However, specific evidence of other crimes, wrongs, or acts may be admissible if it is offered to prove a purpose other than propensity, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

"Because evidence of other crimes, wrongs, or acts carries with it the inherent potential to see the defendant simply as a bad person and then to convict because of who he is rather than what he did, a trial court must take appropriate care to see that this does not happen." *Curtin*, 489 F.3d at 957; *see also United States v. Hill*, 953 F.2d 452, 457 (9th Cir. 1991) (noting that limitations in 404(b) are "designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment") (internal citation and quotation marks omitted).

The government argues that the chat is admissible under 404(b) because it demonstrates sexual interest in children, and "demonstrates his motive, opportunity, knowledge, intent, plan, and absence of mistake regarding the creation and collection of images depicting children engaged in sexually explicit conduct." Gov. Mtn. in Lim at 8. "Sexual interest in children," however, is precisely the type of evidence that would lead the jury to conclude that "the defendant is simply a bad person." *Curtin*, 489 F.3d at 957. Moreover, the defense respectfully submits that the government's broad assertion of numerous purported bases ("motive, opportunity, knowledge, intent, plan, and absence of mistake") fails to meet the government's burden to demonstrate precisely how "a fact of consequence may be inferred from the other acts evidence." *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994)

1    (government "must articulate precisely the evidential hypothesis by which a fact of consequence may

2    be inferred from the other acts evidence") (internal citation and quotation marks omitted).

3        Even if that threshold requirement is met, the Court must then determine whether the identified

4    purpose is "material" in the case. *Id.*  If the court finds that the identified purpose is material, the

5    court must then determine "'whether the probative value of the evidence is substantially outweighed

6    by the danger of unfair prejudice under Rule 403.'" *Id.* (citation and quotation marks omitted); *see*

7    *also United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995) (setting out four-part

8    materiality analysis requiring government to prove: "(1) the evidence tends to prove a material point;

9    (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the

10   defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act

11   is similar to the offense charged") (internal citation and quotation marks omitted). On this record, the

12   government has failed to demonstrate materiality, or that the chat is not more prejudicial than

13   probative.

14       **OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #5**

15       The government gives notice that it will seek to admit certain money transfers provided by

16   Western Union, and certain records contained within the jrwolfen02 account provided by Yahoo, as

17   certified business records.  The government has not specifically identified any records that it seeks to

18   admit as business records.  Accordingly, the defense reserves further objections on hearsay,

19   relevance, or other grounds, to any specific records the government would seek to introduce.

20       The government has not cited authority justifying the admission of internet chats or Western

21   Union money transfer records as business records.  To the extent that the records offered by the

22   government as business records contain out-of-court statements, the admissibility of those statements

23   must be separately determined.  *See Doe v. Reddy*, 2004 WL 5512966, *4 (N.D. Cal. 2004) (Alsup,

24   J.) ("Not every remark in a Rule 803(4) or (6) document sails into evidence. There may still be the

25   'hearsay within hearsay' problem.").  Hearsay embedded within business records is still inadmissible

26   hearsay when the third-party statement itself was not generated by the record's custodian (or does not

27   fall under any other hearsay exception).

28       The statements of out-of-court declarants contained within these records are not the business

records of a party, as the content of the statements themselves originate from outside of any party, and there is no way to verify that the statements are true, which is the purpose for which they would be offered into evidence. "When the source of the information in the business record is an outsider, the only way to save the record from the jaws of the hearsay exclusion is to establish that the business recipient took precautions to guarantee the accuracy of the information." *Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 2011 WL 862729, *4 n.7 (D. Md. Mar. 9, 2011) (granting motion to exclude website visitor survey collecting consumer responses, which were "hearsay within hearsay") (citation and quotation marks omitted).  With respect to the chats and emails obtained from Yahoo, there are no precautions in this case that Yahoo could or would have taken to guarantee the accuracy of statements by the third party declarants.

Specific portions of the Western Union records should also be considered inadmissible hearsay on this record.  Information on Western Union forms that is supplied by a Western Union employee may be admissible under the business records exception, but information that is supplied by third parties may not.  *United States v. McIntyre*, 997 F.2d 687 (10th Cir.1993) (holding that information provided by third party may be admissible if the business entity has adequate verification or other assurance of accuracy of the information provided by the outside person).

Under Rule 902(11), the proponent of a business record must give the adverse party written notice of intent to offer the record, and must make both the record and certification available for inspection, so that the adverse party has a fair opportunity to challenge them. Fed. R. Evid. R. 902(11).   To the extent that the Court may admit any particular record as a business record, Mr. Wolfenbarger respectfully requests that the Court defer ruling on any specific document until the government has identified the specific records that it intends to offer into evidence from Western Union and Yahoo, and Mr. Wolfenbarger has had an opportunity to evaluate them.

### <u>OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #6</u>

The government argues that the defense should be precluded from "relitigat[ing] legal issues" with respect to the warrantless searches of his Yahoo accounts, and from "challenging Yahoo's practices in identifying and reporting instances of child sexual exploitation."  Gov. Mtn. in Lim. at 9-10.

1      The government's overbroad request should be denied.  The government has not yet produced

2    its witness list, or any summary of their proposed testimony, but evidence regarding the investigation

3    leading to Mr. Wolfenbarger's indictment will certainly be introduced by the government during its

4    case-in-chief.  Mr. Wolfenbarger is entitled to cross-examine government witnesses regarding

5    relevant facts pertaining to this investigation, regardless of whether they relate to legal issues that the

6    Court previously resolved.  Additionally, the defense is entitled to question government witness

7    regarding the investigation where such questioning may be relevant to impeachment, potential bias,

8    or other grounds of proper cross-examination.

9       The defense respectfully submits that the government's concerns can be addressed upon timely

10   objections to any allegedly improper statements, argument, questions and/or conduct, by appropriate

11   admonitions, or other sanction deemed appropriate by the Court.

12   **OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #7**

13      The government moves to preclude any reference by the defense to Mr. Wolfenbarger's

14   potential sentence during all phases of the trial. Gov. Mtn. in Lim. at 11-12.  The government's

15   motion goes much farther than the law permits. The government seeks to preclude the defense from

16   referencing Mr. Wolfenbarger's "liberty," or stating that the jury's decision will have "serious

17   consequences for a long time to come." *Id*. The government has no authority for this proposition.

18   Several cases cited by the government do not actually address the issue now before the Court. In

19   *Rogers*, the issue was whether the district court properly responded to a note from the jury asking

20   whether it could return a verdict of guilty with a recommendation for extreme mercy. *See Rogers v.*

21   *United States*, 422 U.S. 35, 39 (1975) (holding that Rule 43 error was not harmless where district

22   court responded to jury's note outside the defendant's presence and without affording him an

23   opportunity to respond). In *Frank*, the issue was whether the district court must instruct the jury on

24   the consequences of a not-guilty-by-reason-of-insanity verdict. *United States v. Frank*, 956 F.2d 872,

25   882 (9th Cir. 1992). Finally, in *Reed*, the issue was whether the instruction not to consider

26   punishment conflicted with the instruction to view with caution the testimony of a government

27   witness who had entered a plea bargain. *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984).

28   Therefore, assuming these cases have some bearing on the issue before the Court in this case, the

1    passages cited by the government are dicta.

2           At a minimum, Mr. Wolfenbarger must be permitted to exercise his constitutional right to

3    present a defense, which includes distinguishing between the standards for a criminal case and a civil

4    case. *Chambers v. Mississippi*, 410 U.S. 284 (1973). That requires a discussion of the differing

5    burdens of proof and presumptions of innocence. It also requires a reasonable explanation of the

6    rationale for that distinction - namely, the significant liberty interest at stake in any criminal

7    proceeding - to prevent the jury from the temptation to regard the distinction as an arbitrary and

8    potentially amorphous or elastic one.

9           Moreover, the government's ban on defense references to anything to have to do with

10   punishment sweeps too broadly. The government's proposed request would, for example, preclude

11   the defense from arguing that the jury should take its decision seriously because it will have serious

12   consequences for Mr. Wolfenbarger. This prohibition would leave no room to respond to an improper

13   argument by the government about the seriousness of the charged offense. *See United States v.*

14   *Hinton*, 31 F.3d 817, 825 (9th Cir. 1994) (rejecting challenge, on plain-error review, to government

15   argument about seriousness of charged offense and defendant's future dangerousness).

16          If the court is inclined to preclude references to punishment at trial, its bar should encompass

17   the government as well as the defense. *See Evalt v. United States*, 359 F.2d 534, 546 (9th Cir. 1966)

18   (reversing conviction where government but not defendant was allowed to argue effect of not-guilty-

19   by-reason-of-insanity verdict). "The court should [impose] upon the prosecutor the same restriction

20   as to the effect of a verdict of not guilty as it impose[s] upon the defense." *Id*. The government should

21   not be permitted to argue or imply that Mr. Wolfenbarger is a danger to society, for example, or that

22   the jury needs to ensure that he is punished for breaking the law. *See Evalt*, 359 F.2d at 546

23   (government may not invite jury to convict defendant, for society's protection, even though it might

24   have believed defendant not guilty by reason of insanity). If the government does in fact raise the

25   issue at trial, Mr. Wolfenbarger is entitled to respond and/or have the jury instructed to minimize any

26   misrepresentations. *Shannon v. United States*, 512 U.S. 573, 587-88 (1994).

27          **OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #8**

28          The government contends that Mr. Wolfenbarger should be precluded from presenting evidence

on various issues that the government asserts would solely appeal to the sympathy of the jury.  Gov. Mtn. in Lim. at 12.  The defense should be permitted to introduce relevant evidence regarding Mr. Wolfenbarger's personal circumstances, including those that might be sympathetic.   The defense respectfully submits that the government's concerns can be addressed upon timely objections to any allegedly improper statements, argument, questions and/or conduct, by appropriate admonitions or other sanction deemed appropriate by the Court.

### OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #9

The government argues that the Court should require the defense to present its impeachment material to the Court, outside the presence of the jury, pertaining to official misconduct of government witnesses, before the defense can question the witness regarding the impeachment material.  Gov. Mtn. in Lim. at 12-13.  The government's proposed approach would violate Mr. Wolfenbarger's Sixth Amendment right of confrontation, and cannot be supported by the authority it cites.

 The Sixth Amendment right of cross-examination is the "principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  Trial judges retain latitude to limit cross-examination based on concerns about, among other things, "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). (quotation marks omitted).  However, constitutionally improper denial of a defendant's opportunity to impeach a witness may arise where a criminal defendant "was prohibited from engaging in otherwise appropriate cross-examination . . . and thereby to expos[ing] to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness," such that "a reasonable jury might have received a significantly different impression of [the witness]'s credibility had [defendant's] counsel been permitted to pursue his proposed line of cross-examination." *Id*. at 680 (internal quotation marks and citation omitted).

The government has not identified any authority requiring the defense to submit its potential impeachment to the Court and the government in a pretrial proceeding.  In support of its argument, the government cites an unpublished Ninth Circuit case issued in 2005.  Gov. Mtn. in Lim. at 12:26-

28.  However, unpublished Ninth Circuit cases issued prior to Jan. 1, 2007, may only be cited under limited circumstances, none of which apply here.  Ninth Circuit Rule 36(c).  Accordingly, it cannot be cited by the parties or the Court.

The government also cites Federal Rule of Evidence 103(d) to argue that inadmissible evidence should be excluded.  However, the government has made no showing that any potential impeachment of its witnesses would be "inadmissible," as required by Rule 103(d).  Indeed, in the unpublished case improperly cited by the government, the Ninth Circuit actually found that the excluded evidence was admissible, contrary to the government's claim, but found that it was properly excluded on 403 grounds.

### OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #10

The government moves to preclude any affirmative defenses.  The Court should defer ruling on this motion until closer in time to the trial.

### OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #11

The government "gives notice that it may call an expert witness to opine on whether the images of juveniles in child pornography videos the government intends to introduce at trial have been altered or manipulated."  Gov. Mtn. in Lim. at 13-14.  The government has not identified this witness, and has not "described the witness' opinions, the bases and reasons for those opinions, and the witness's qualifications."  Fed. R. Evid. 16(a)(1)(G).  Mr. Wolfenbarger requested disclosure of this information in his initial discovery letter dated January 6, 2017.  This purported expert notice is insufficient under Rule 16, and the Court should preclude any attempt by the government to introduce expert testimony.

The government also asks the Court to preclude the defense from introducing evidence not disclosed prior to trial which falls under Rule 16(b).  Gov. Mtn. in Lim. at 13-14.  The Court should deny this motion as premature.

Pursuant to Rule 16(b)(1)(A), the defense will produce any material that it intends to introduce in its case-in-chief and that is within its possession in advance of trial.  However, the scope of the defense's case-in-chief depends on the scope of the government's case-in-chief.  Until it hears from the prosecution witnesses both on direct and on cross, the defense will be uncertain what form its

evidence will take.

Without citation to authority, the government argues that "the defense's case-in-chief is its 'rebuttal' opportunity," so that the defense should be required to provide all case-in-chief evidence "well in advance of trial." *Id.* at 14. This argument misunderstands the meaning of the word "rebuttal" in this context. Unlike, for example, evidence tending to establish an affirmative defense, "rebuttal evidence is defined as evidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party" or "[t]hat tends to explain or contradict or disprove evidence offered by the adverse party." *United States v. Byers*, 649 F.3d 197, 213 (4th Cir. 1990) (citation omitted). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *United States v. Levy*, 904 F.2d 1026, 1031 (6th Cir. 1990) (internal quotation marks and citation omitted). Accordingly, evidence presented by Mr. Wolfenbarger during his case-in-chief may well be "rebuttal" evidence, because it may depend on the nature and content of the government's own case-in-chief.

## CONCLUSION

For the foregoing reasons, and for such other reasons as may appear at the hearing on these motions, Mr. Wolfenbarger respectfully requests that the Court deny the government's motions in limine where noted, and accord such other relief as this Court deems just. Mr. Wolfenbarger requests leave to file further motions as may be necessary.

Dated:      January 29, 2020

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S
SEVERA KEITH
Assistant Federal Public Defender