DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MARISSA HARRIS (NYBN 4763025)
JEFFREY D. NEDROW (CABN 161299)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    Email: jeff.nedrow@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOHNNY RAY WOLFENBARGER, <br><br> Defendant. | CASE NO. CR 16-519 LHK <br><br> GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION RE: ADMISSIBILITY OF DEFENDANT'S CHAT MESSAGES <br> (ECF No. 245) |

## I. INTRODUCTION

Defendant Johnny Ray Wolfenbarger (Wolfenbarger) is charged in a superseding indictment with attempted production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e); attempted coercion and enticement, in violation of 18 U.S.C. § 2422(b); and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). ECF No. 268. Trial in this case is set for May 19, 2020.

As a part of its evidence in this case, the government seeks to admit chat transcripts (identified in the government's exhibit list as Exhibits 3-12) which were found during a search of Wolfenbarger's Yahoo account pursuant to a lawfully issued search warrant. The government can prove that Wolfenbarger directly participated in the chats. As such, the chats contain statements of a party-

opponent, and are highly relevant to Wolfenbarger's knowing attempts to cause the production of live-streamed child pornography and coercion and enticement of children and adults for the purpose of producing live-streamed child pornography, as well as his receipt of child pornography. Furthermore, the statements made by the other participants in the chats and e-mails—the individuals paid or persuaded by Wolfenbarger to produce child pornography at Wolfenbarger's direction—are admissible under several legal theories and should be admitted either as co-conspirator statements, as argued in the government's *Motion in Limine* 2, or as non-hearsay statements which provide necessary context for Wolfenbarger's responses. At bottom, the government does not need to offer the statements of Wolfenbarger's co-conspirators for the truth of the matters asserted therein. These statements, whether or not they are true, establish Wolfenbarger's guilty state of mind—that is, his intention to cause the creation of live-streamed child pornography and his corresponding actions to bring his intentions to fruition. That is the criminal conduct targeted by the attempt charges in the superseding indictment and punishable under the statutes charged. The government respectfully requests a finding of admissibility as to these items.

## II.  FACTS

In September 2014, Xoom.com, an online international money transfer service, notified Yahoo that a number of Yahoo accounts were engaged in the sale of child exploitation materials.[1] The Yahoo Electronic Crimes Investigative Team (ECIT) subsequently launched an internal investigation into the corresponding term of service violations associated with the purchase and sale of child pornography on Yahoo's platforms, and reported their findings to the National Center for Missing and Exploited Children (NCMEC). Specifically, the ECIT investigation found that several Yahoo electronic accounts, operating from the Philippines, were selling images and videos which contained child pornography. These accounts were also involved in live-streaming sexual abuse of children.

In November of 2015, Yahoo filed a CyberTipline Report identifying Wolfenbarger's Yahoo account, jrwolfen02@yahoo.com, as an account involved in receiving images of child pornography.

---

[1] The government relies on the search warrant affidavit of Ann Trombetta in support of the search of Wolfenbarger's Yahoo account for this portion of its factual summary. That affidavit may be found in the Court file at ECF No. 28-1.

1  Yahoo provided to the FBI images of child pornography which were attached to a December 2, 2013
2  email in Wolfenbarger's account.  The reviewing FBI agent described the images found in
3  Wolfenbarger's e-mail account as including photos of young girls lifting their skirts, exposing their
4  genitalia, and simulating masturbation, with the words "young girls" written on a wall and visible
5  behind them in the images.  ECF No. 28-1.  Yahoo also provided NCMEC with subscriber and IP login
6  information for Wolfenbarger's account.  The subscriber information listed John Wolfenbarger as the
7  subscriber, and a check of public databases revealed that Wolfenbarger had resided in Morgan Hill.
8     FBI Special Agents Ann Trombetta and Chris Marceau received the referral from Yahoo and
9  NCMEC, and conducted further investigation.  Based on the information provided, the FBI requested
10 and received approval for a search warrant for Wolfenbarger's Yahoo account. Agents reviewed data
11 provided by Yahoo pursuant to the search warrant which related to the e-mail account
12 jrwolfen02@yahoo.com.  Agents located approximately 150 images and video files depicting child
13 pornography in the account.  The images depicting child pornography were sent to Wolfenbarger from
14 various e-mail addresses, including arlenecada17@yahoo.com, shamil_wise@yahoo.com,
15 iloveujohnwolfen@yahoo.com.ph, and sexy.angel12@yahoo.com.
16     In addition to the video files and images recovered from Wolfenbarger's Yahoo account, agents
17 located transcripts of chats messages between Wolfenbarger from jrwolfen02@yahoo.com and several
18 other Yahoo users.  The chats involved discussions where Wolfenbarger agreed to pay other individuals
19 in exchange for a live exhibition of sex acts involving children.
20     In one chat, on December 28, 2013, Wolfenbarger, under the user name "jrwolfen02," negotiated
21 with user "gjamescool" to see oral sex performed on two children, ages 10 and 11.  (A copy of this chat
22 thread is attached as Exhibit 1).  Wolfenbarger agreed to pay 2000 Philippine Pesos (roughly $41.00 in
23 today's USD) to watch the children perform the sex act.  User "gjamescool" asked Wolfenbarger to send
24 the money to "Marivic Cordero," and Western Union records confirm that he did so.  In a later
25 communication in the same chat thread, on December 29, 2013, "gjamescool" asked user "jrwolfen02"
26 whether he wanted the same show as before.  Western Union records showed a money transfer to
27 "Marivic Cordero" on the same day.  Wolfenbarger's email also contains a payment confirmation
28 receipt for 2000 PHP picked up by "Marivic Cordero" on December 29, 2013.

In another chat, on December 20, 2013, Wolfenbarger, under the user name "jrwolfen02," negotiated with user "lyka.isza" to watch a webcam session featuring two children whom he refers to as his "daughter" and "niece," and which involved the children inserting toys into their vaginas. (A copy of this chat thread is attached as Exhibit 2). User "lyka.isza" identified herself as Ma Patricia Nagasura and repeatedly requested and received money from Wolfenbarger for these exhibitions. Exhibit 2.

On December 25, 2013, Wolfenbarger, under the user name "jrwolfen02," engaged in another chat with "lyka.isza" in which he again inquired about his "family" with lyka.isza and then turned the conversation to sexual acts involving children. (A copy of this chat thread is attached as Exhibit 3). Among other things, Wolfenbarger engaged in an active chat dialogue in which he made numerous sexually explicit references, referencing the child victim as his "daughter," and making statements implying past or future physical contact with the victim, i.e., "I miss your little pussy my daughter," "I hope you soon you will have my real cock," "I want to see your pussies with the toy in," among numerous other sexually explicit references, including a "surprise" cash reward to the girl "who can take it in her pussy all the way." *See* Exhibit 3, pp. 1-4, WT# 47-50.

In addition to the three chats attached as exhibits, the government intends to offer in evidence transcripts of additional chats with users, including "kierstine24" (who identifies herself as Jessica Fausto), "reyrhianne" (who identifies as John Kenneth Rey), "aprilpreggy" (who identifies herself as Lucia Dolfo), and "lovelyvirgin14" (who identifies herself as a 16 year old minor female with a 13 year old sister and 8 year old brother) that also feature Wolfenbarger requesting and offering to pay for webcam sessions involving child sex acts. The chats are similar to the above-referenced chats in tone and subject matter.

On August 2, 2016, Agent Marceau interviewed Wolfenbarger as he disembarked from a flight from the Philippines at San Francisco International Airport.[2] Wolfenbarger had been living in the Philippines for approximately two years, between 2014 and 2016. ECF No. 49-1 (Wolfenbarger declaration). Wolfenbarger freely and voluntarily waived his Miranda rights, and provided a written

---

[2] The government relies on the affidavit of Chris Marceau, and its attached recording, as factual support for much of this factual summary. That affidavit and recording may be found in the record at ECF No. 60-2.

waiver of those rights to Agent Marceau. In recorded statements provided to Agent Marceau, Wolfenbarger verified that his email address was jrwolfen02@yahoo.com. Among other things, he stated that he had developed an interest in child pornography after subscribing to multiple adult pornography webcam services in the Philippines. He stated that he paid women to see certain sex acts involving children performed live, which he viewed through Yahoo Messenger and Yahoo Chat services. Wolfenbarger estimated that the children he watched were between three and twelve years old. Wolfenbarger stated that he would typically request that the children masturbate, perform oral sex on each other or an adult, or request adults to use sex toys on the children. He specifically mentioned purchasing these child sex shows from individuals named "Ma" and "Jessica."

### III. ARGUMENT

**A. The Chat Transcripts from Wolfenbarger's E-mail Account Should be Admitted As Statements of a Party-Opponent and Relevant, Non-Hearsay Evidence of Wolfenbarger's Knowing and Intentional Involvement in Sexual Exploitation of Children**

Wolfenbarger objects to the government's stated intention to offer the chat transcripts into evidence. Wolfenbarger claims that the chats include inadmissible hearsay, and should be not be admitted on that ground. ECF No. 245 at 4. Wolfenbarger's argument is without merit.

**1. Wolfenbarger's statements in the chats are admissions of a party-opponent**

Wolfenbarger's own statements are plainly not hearsay. Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(c). However, Federal Rule of Evidence 801(d) defines various types of out-of-court statements that are not hearsay, including an opposing party's statement "made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). That is exactly the case here with respect to Wolfenbarger's statements in the chats.[3]

To be authenticated as a statement by the defendant, there must be "evidence sufficient to

---

[3] The defendant has separately raised a challenge to the voluntariness of Wolfenbarger's statements to the case agent. The government will respond to that challenge separately, however Wolfenbarger makes no claim that his various statements in these chats are anything but voluntary communications with online child pornography traffickers, so the government does not address herein the voluntariness issue in this supplemental brief regarding the admissibility of the chats.

support a finding that the item is what the proponent claims it to be." Fed. R. Evid. 901(a); *see also United States v. Harrington,* 923 F.2d 1371, 1374 (9th Cir.1991). "The government need only make a prima facie showing of authenticity, as '[t]he rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.' " *United States v. Black,* 767 F.2d 1334, 1342 (9th Cir.1985) (quoting 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 901(a) [01], at 901–16 to –17 (1983)).

Here, there is overwhelming, undisputed evidence establishing a connection between Wolfenbarger and the "jrwolfen02" chats. The chat information was retrieved from an e-mail account where Wolfenbarger was the sole subscriber. Yahoo account records confirm that Johnny Ray Wolfenbarger, at a Morgan Hill address associated with Wolfenbarger, was the person who subscribed to the jrwolfen02@yahoo.com account. Wolfenbarger admitted that the "jrwolfen02" e-mail account belonged to him in his statements to Agent Marceau. Wolfenbarger also acknowledged discussing his e-mail account with Agent Marceau in a sworn declaration he filed with the Court, and signing a form authorizing Agent Marceau to recover and access his e-mail account. ECF No. 49-1. Additionally, the subject matter of the chats focuses on sex acts by children, an interest of the defendant's which is reflected in the child pornography found in Wolfenbarger's e-mail account.

In *United States v. Tank,* 200 F.3d 627, 630-31, (9th Cir. 2000), the Ninth Circuit considered the question of admissibility of chat logs in a child exploitation case involving similar facts. In a case which was reversed in part on other grounds, the Ninth Circuit found that the District Court (the Hon. Ret. Judge James Ware) did not abuse his discretion by admitting chat room log printouts, even though a third person had deleted the nonsexual conversations and other extraneous material from the hard drive, because the third person explained how he created the logs, the logs appeared to be an accurate representation of the chat room conversations, the government established a connection between the chat room conversations and defendant through the use of his screen name, and the printouts were relevant to prove the conspiracy and defendant's participation in the conspiracy. *United States v. Tank*, 200 F.3d at 630-631.

The evidence in this case is stronger and clearer than considered by the Ninth Circuit in *Tank*. The government can establish that the chats, found in Wolfenbarger's password-protected Yahoo e-mail

account for which he was listed as the subscriber, with a username (jrwolfen02) virtually identical to his actual name (Johnny Ray Wolfenbarger), and which he admitted using, are what they purport to be, that is, statements of Wolfenbarger, a party-opponent.  Wolfenbarger's statements in the chats are relevant to a material issue at trial, namely, Wolfenbarger's knowledge and intent in attempting to produce child pornography and coerce minors, and also his knowledge and intent in receiving child pornography.  Wolfenbarger's chat statements should be deemed admissible pursuant to Fed. R. Evid. 801(d)(2)(A).

### 2. The statements of the other chat participants are admissible and not hearsay

Wolfenbarger argues that the inclusion of the other side of the conversations, from other participants in the chats, is inadmissible hearsay.  Wolfenbarger is wrong.  First, as the government has already argued in its *Motion*s *in Limine*, they are statements of Wolfenbarger's co-conspirators in the creation of livestreamed child pornography.  *See* ECF No. 233 at 3-4.  Second, even if the Court does not admit the other party statements as co-conspirator statements, they are still admissible as relevant non-hearsay statements that: (1) provide context for Wolfenbarger's admissions; (2) provide evidence of Wolfenbarger's knowledge and intent to commit the child exploitation crimes with which he is charged; (3) demonstrate the effect of these statements on Wolfenbarger as the listener; and (4) provide circumstantial evidence linking Wolfenbarger to the child pornography in his e-mail account.

First, the statements of "gjamescool," "lyka.isza" and the other unknown parties to the chat conversations with Wolfenbarger are not hearsay because they are not being offered for the truth of the matter asserted, but to provide essential and necessary context for understanding Wolfenbarger's admissions.  Federal courts have repeatedly considered, and deemed admissible, the statements of other parties in chat conversations with facts remarkably similar to this case.  *See United States v. Manning*, 738 F.3d 937, 943-944 (8th Cir. 2014) (holding that statements of unknown parties in chats with defendant in child pornography case were not hearsay because they were not offered for their truth, but rather to provide context for defendant's responses); *United States v. Cooke*, 675 F.3d 1153, 1156 (8th Cir. 2012) (holding that unknown person's statement in sexually explicit e-mail in was not hearsay because not offered for truth, but to provide context for defendant's response; *U.S. v. Burt*, 495 F.3d 733, 738-739 (7th Cir. 2007) (holding that online chat conversations were admissible because not offered for their truth but to provide context for defendant's admissions).

The rationale of *Manning, Cooke,* and *Burt* applies with equal force in this case. The statements of "gjamescool," "lyka.isza" "kierstine24" and the other unknown parties to the chat conversations with Wolfenbarger are not being offered for their truth, but to provide context for the factfinder's evaluation of Wolfenbarger's culpable admissions in response—admissions which explicitly reference Wolfenbarger's preferences as to ages of children involved in the sexual abuse, the particular sex acts he wanted to see, his interest in paying for such acts, and his interest in actually committing the sex acts with the children in person. Many of Wolfenbarger's culpable admissions are effectively meaningless without the context provided by the statements of his chat partners.

Second, the statements of the other parties constitute relevant evidence of Wolfenbarger's intent and knowledge in his efforts to attempt to produce child pornography, and attempt to coerce and children into sex, even if the statements are not being considered for the truth of the matter asserted. While it is true that Wolfenbarger himself admitted that he believed the children involved in the sexual abuse he requested were between 3 and 12 years old, the actual ages of the victims ultimately does not matter for purposes of the charged conduct, because the statements of "gjamescool" (Marivic Cordero), "lyka.isza" (Ma Patricia Nagasura), and "kierstine24" (Jessica Fausto) are not being offered by the government to prove the age and identity of the children. The government need not offer specific evidence regarding the identity or exact age of the children referenced in the chats and involved in the abuse because Wolfenbarger is charged with Attempted Production of Child Pornography and Attempted Coercion and Enticement, not the completed offenses. *See, e.g.,* Ninth Circuit Model Jury Instruction 8.192A; *United States v. Jayavarman*, 871 F.3d 1050, 1058 (9th Cir. 2017) (defendant may be properly convicted of an attempt to violate § 2251 if the defendant believes the victim is a minor, even if she is actually an adult); *United States v. Lee*, 603 F.3d 904, 915, 918 (11 Cir. 2010) (defendant convicted of attempted production of child pornography and attempted coercion and enticement for soliciting a postal inspector posing as a mother offering fictitious children for sex). Rather, the statements of the other individuals are being offered here as relevant evidence under Fed. R. Evid. 401 and 402 to show that Wolfenbarger knowingly and intentionally encouraged, requested, negotiated, and paid for the exhibition of sexual conduct involving children who were described and advertised to him as minors. The statements of the other individuals should be admitted under this theory.

Third, the government is offering the statements to demonstrate a pattern of Wolfenbarger communicating with the other participants on the topic of child sexual abuse, and to demonstrate the effect on him as a listener. The Ninth Circuit has long held that out-of-court statements introduced to show the effect on the listener are not hearsay. *See United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991) ("We find that the statement properly was treated as non-hearsay because it was not introduced for the truth of the matter asserted. The statement was introduced ... to show the effect on the listener[.]"); *see also United States v. Connelly*, 395 Fed.Appx. 407, 408 (9th Cir. 2010).

The relevance of the effect on Wolfenbarger in this case is his ongoing interest in pursuing child sexual abuse as he continues to have conversations on the topic with the other participants. Counts One and Two charge attempt crimes. It is the government's burden to show Wolfenbarger's pattern of conduct in moving towards completion of the act of producing child pornography, as opposed to abandonment. The chat evidence refutes any claim by Wolfenbarger of a lack of intent, or that he made a mistake, or that he sought to abandon his efforts to witness live-streamed child sex abuse, because he continues to pursue the opportunity for exhibitions of live sexual abuse of children through engagement with several different Yahoo users, and the chats demonstrate his awareness of that objective.

In addition, the use of the words "family," "daughter," and "niece" by both Wolfenbarger and other chat participants in referring to the abuse victims, establishes comfort and intimacy with the conduct between the parties that is relevant to the government's proof of knowledge and intent. *See* Exhibit 3. Wolfenbarger's use of the terms "daughter" and "niece" is significant—not because it is true (the apparent child victims were not actually Wolfenbarger's daughters or nieces) but because it establishes his attempts to normalize his conduct by creating an intimate and filial relationship with the victim and their relatives or caretakers. In effect, these fake terms of endearment and kinship are a type of sexual grooming meant to make the victim more receptive to the abuse. The government should be permitted to introduce evidence that Wolfenbarger repeatedly used such tactics and was comfortable discussing and facilitating the sexual abuse of very young girls by appealing to real or imagined family relationships with them, where Wolfenbarger acted as a "father" or "uncle" figure by providing gifts and rewards in exchange for images of his "daughter" or "niece" engaging in oral sex, masturbating, or being penetrated, vaginally and anally, with sex toys.

Finally, the chats are admissible for the distinct non-hearsay purpose of providing circumstantial evidence (i.e., a non-hearsay purpose) associating Wolfenbarger with the child pornography found in his e-mail account, as alleged in Count Three of the Indictment. In *United States v. Koch,* 625 F.3d 470 (8th Cir. 2010), the Eighth Circuit affirmed a district court's decision to admit evidence of documents found on a computer and flash drive that contained information identifying the defendant. *Id.* at 479–80. The Eighth Circuit held that it was within a trial court's discretion to admit the documents as circumstantial evidence associating the defendant with the computer and flash drive (both of which contained illegal images). *Id.* at 480. Here, as in *Koch,* the chat transcripts found in Wolfenbarger's e-mail account, which clearly focus on the sexual abuse of children, constitute circumstantial evidence connecting Wolfenbarger to the child pornography found in his e-mail account.

In sum, the government can sufficiently establish that Wolfenbarger participated in the contested chats. His statements are not hearsay. The statements of the other chat participants are similarly not hearsay because they are either statements of Wolfenbarger's co-conspirators, admissible under Rule 801(d)(2)(E), or alternatively contextual evidence necessary to understand Wolfenbarger's culpable admissions in response to the statements. Under the latter rationale, the government would not be offering the statements of the other chat participants for the truth of the matters asserted, but rather to show Wolfenbarger's intent, state of mind, and the effects on Wolfenbarger as a listener. The chats are also admissible as circumstantial evidence for the non-hearsay purpose of linking Wolfenbarger with the child pornography found in his e-mail account. Accordingly, the chats should be deemed admissible.

### III. CONCLUSION

For the foregoing reasons, the chat exhibits (Exhibits 3-12) should be deemed admissible.

DATED: March 2, 2020                              Respectfully Submitted,

                                                  DAVID L. ANDERSON
                                                  United States Attorney


                                                   */s/*
                                                  MARISSA HARRIS
                                                  JEFFREY D. NEDROW
                                                  Assistant United States Attorneys