```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4
      UNITED STATES OF AMERICA,      )  CR-16-00519-LHK
 5                                   )
                     PLAINTIFF,      )  SAN JOSE, CALIFORNIA
 6                                   )
            VS.                      )  FEBRYARY 5, 2020
 7                                   )
      WOLFENBARGER,                  )  PAGES 1-46
 8                                   )
                     DEFENDANT       )
 9                                   )
      _____ )
10
                   TRANSCRIPT OF PROCEEDINGS
11              BEFORE THE HONORABLE LUCY H. KOH
                   UNITED STATES DISTRICT JUDGE
12
                     A P P E A R A N C E S
13

14

15      FOR THE PLAINTIFF:     BY:  MARISSA HARRIS
                                    JEFFREY NEDROW
16                             UNITED STATES ATTORNEY'S OFFICE
                               150 ALMADEN BLVD., SUITE 900
17                             SAN JOSE, CA 95113

18

19      FOR THE DEFENDANT:     BY:  SEVERA KEITH
                               FEDERAL PUBLIC DEFENDER'S OFFICE
20                             55 SOUTH MARKET STREET, SUITE 820
                               SAN JOSE, CA 95113
21

22

23      OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1           SAN JOSE, CALIFORNIA              FEBRUARY 5, 2020

2                     P R O C E E D I N G S

3           (COURT CONVENED AT 12:27 P.M.)

4               THE CLERK:  CALLING CASE 16-519.  THE UNITED STATES

5      V. JOHNNY RAY WOLFENBARGER.

6               MS. HARRIS:  GOOD MORNING, YOUR HONOR.

7           MARISSA HARRIS FOR THE UNITED STATES.

8               MR. NEDROW:  AND JEFF NEDROW FOR THE UNITED STATES AS

9      WELL, YOUR HONOR.

10          GOOD MORNING -- GOOD AFTERNOON, EXCUSE ME.

11              MS. KEITH:  GOOD AFTERNOON, YOUR HONOR.

12          SEVERA KEITH APPEARING ON BEHALF OF MR. JOHN WOLFENBARGER.

13      HE IS PRESENT IN COURT.

14              THE COURT:  GOOD MORNING.  WELCOME TO EVERYONE.

15          SO -- WELL, SO LET ME UNDERSTAND FIRST, IT SOUNDS LIKE WE

16      HAVE TWO BIG NEW ISSUES THAT DIDN'T EXIST BEFORE THE PTC.  ONE

17      IS YOU YOUR CHANGING OF COUNTS 1 AND 2.  ARE YOU PLANNING TO

18      SUPERSEDE THE INDICTMENT, OR HOW ARE YOU PLANNING TO HANDLE

19      THAT?

20              MR. NEDROW:  YES, YOUR HONOR.

21          WE RECOGNIZE THE POINTS RAISED BY THE DEFENSE, AND AS I

22      THINK WE SAID IN THE PAPERS, WE DO FEEL THE COUNTS, AS

23      CONSTITUTED, ARE LEGALLY SUFFICIENT.  AND I DON'T THINK,

24      FRANKLY, A MOTION TO DISMISS WOULD PROPERLY ALIGN WITH RESPECT

25      TO THEM.
```

1        HOWEVER, WE ARE OF COURSE INTERESTED IN GETTING THE BEST

2    POSSIBLE CHARGING LANGUAGE AND PERFECTING IT AS MUCH AS

3    POSSIBLE.  SO WE ARE PLANNING DO THAT.  WE DON'T BELIEVE THE

4    CHANGES ARE PARTICULARLY BROAD IN SCOPE, THEY'RE NOT GOING TO

5    ADD ANY NEW CHARGES, DISCOVERY REMAINS THE SAME, IT'S REALLY

6    TWEAKING LANGUAGE.  AND WE REALLY BELIEVE IT ISN'T THE KIND OF

7    CHANGE THAT WOULD REQUIRE ADJUSTING THE TRIAL DATE.

8        AND WE ARE GOING TO GET THAT DONE AS QUICKLY AS WE CAN,

9    AND I'M VERY CONFIDENT WE WILL HAVE SOMETHING FOR THE COURT AND

10   COUNSEL, CERTAINLY WITHIN THE WEEK AND PROBABLY SOONER THAN

11   THAT.

12        THE COURT:  ALL RIGHT.

13   LET ME HEAR FROM MS. KEITH.  WHAT'S YOUR RESPONSE?

14        MS. KEITH:  I WAS EXPECTING WHAT THE LANGUAGE IN

15   THEIR RESPONSE WAS AND THAT THEY WERE GOING TO SUPERSEDE.  I

16   CAN'T SAY THAT I WOULD HAVE A SOLID RESPONSE UNTIL WE KNOW WHAT

17   THE FINAL LANGUAGE IN THE INDICTMENT IS, AS TO WHETHER OR NOT

18   THERE ARE ANY MATERIAL CHANGES.

19        IF INDEED THERE ARE NOT, THEN I WOULD -- YOU KNOW, IF

20   POSSIBLE, I THINK WE COULD GO FORWARD WITH THE TRIAL DATE AS

21   SET.

22        YOU KNOW, I WILL CERTAINLY BE PREPARING AND PROCEEDING

23   WITH THAT IN MIND, BUT IT'S JUST REALLY HARD TO SAY UNTIL WE

24   SEE THE LANGUAGE OF THE INDICTMENT.

25        THE COURT:  OKAY.  THIS MIGHT BE A WEIRD QUESTION,

1    BUT IS THIS SOMETHING WHERE THE PARTIES WOULD MEET AND CONFER

2    ON LANGUAGE THAT WOULD PROVIDE SUFFICIENT NOTICE, AND YET IF

3    MS. KEITH HAS CONCERNS ABOUT IT -- I MEAN, OBVIOUSLY IF IT

4    EXPANDS WHAT YOU'VE ALREADY CHARGED, THEN I'M GOING TO KICK

5    THIS TRIAL DATE.

6         BUT IF YOU WANT TO GO FORWARD, I JUST PROPOSE, WOULD IT

7    MAKE SENSE FOR YOU ALL -- IS THAT EVEN SOMETHING THAT YOU DO?

8              MR. NEDROW:  WELL, YOUR HONOR, I APPRECIATE THE

9    INQUIRY.  WE WANT TO --

10             THE COURT:  IT'S A WEIRD ONE.  I COULD SEE IT'S A

11   WEIRD ONE.

12             MR. NEDROW:  IT'S WEIRD.

13        NO, IT'S AN INTERESTING QUESTION, AND WE ARE SENSITIVE TO

14   THE IDEA THAT SUPERSEDING CLOSE TO A TRAIL DATE CAN REALLY

15   DISRUPT THINGS.  AND I KNOW THIS CASE HAS BEEN PENDING, SO I

16   REALLY DON'T WANT THAT TO HAPPEN, AND WE ARE GOING TO BE

17   MINDFUL OF THAT.

18        IT'S SAFE TO SAY THAT THE CHANGES, FOR THE MOST PART, ARE

19   GOING TO CLOSELY TRACK THE STATUTE.  AND AGAIN, WE ARE GOING TO

20   BE VERY MINDFUL OF THE ISSUES RAISED BY THE DEFENSE, I THINK

21   THEY WERE GOOD POINTS.

22        SO IT'S NOT ANTICIPATED THERE'S GOING TO BE ANY BIG

23   SURPRISES, AND I CAN JUST SAY DEFINITIVELY, WE ARE NOT ADDING

24   COUNTS.

25             THE COURT:  IT'S GOING TO BE THE SAME COUNT, YOU ARE

1    JUST TWEAKING THE LANGUAGE IN THOSE COUNTS.

2         MR. NEDROW:  CORRECT.

3         AND AGAIN, WE MIGHT USE THE OPPORTUNITY TO NIP AND TUCK

4    THE LANGUAGE ON COUNT 3, FOR EXAMPLE, A LITTLE BIT.

5         BUT THE SAME THREE STATUTES ARE GOING TO BE CHARGED, THE

6    SAME THREE COUNTS ARE GOING TO BE CHARGED.  THERE'S GOING TO BE

7    SMALL TWEAKS.  AND I DO RECOGNIZE THE POINT THAT IT'S HARD, IN

8    A VACUUM, TO RESPOND TO IT.

9         AND I THINK AGAIN, IN PARTIALLY ADDRESSING COURT'S

10   QUESTION, AS SOON AS WE CAN, WE ARE GOING TO HAVE THE LANGUAGE

11   TO GIVE TO THE DEFENSE SO THEY'LL BE ABLE TO SEE WHAT IT IS.

12   AND WE THINK IT'S GOING TO HAPPEN PRETTY SOON.

13         THE COURT:  ALL RIGHT.

14         OBVIOUSLY, I'M NOT GOING TO REQUIRE A MEET AND CONFER

15   BECAUSE I REALIZE IT'S A SORT OF WEIRD REQUEST.  BUT IF YOU

16   CHOOSE TO DO IT, IT COULD HEAD OFF AND SAVE TIME, WOULD BE MY

17   ONLY SUGGESTION.

18         SO I THINK IT PROBABLY WOULD BE BEST THEN TO SET SOME KIND

19   OF INTERIM STATUS CONFERENCE AFTER YOU SUPERSEDED, TO SEE HOW

20   MS. KEITH WANTS TO PROCEED.

21         IF SHE SAYS LOOK, THIS DOESN'T REALLY CHANGE, YOU KNOW,

22   THE SCOPE OF THE CASE, AND I'M READY TO PROCEED, THEN WE WILL

23   KEEP THE TRIAL DATE.  IF SHE SAYS LOOK, THIS IS A GAME CHANGER,

24   I NEED MORE TIME, THEN WE WILL HAVE TO TALK ABOUT WHAT THE

25   TRIAL DATE SHOULD BE.

```
1              OKAY.  DOES THAT MAKE SENSE ON THAT SCORE?

2                   MR. NEDROW:  YES, IT DOES.  THANK YOU VERY MUCH,

3         YOUR HONOR.

4              WE ARE OPEN, IF THE COURT IS AVAILABLE AND COUNSEL, TO SET

5         THAT NEXT WEDNESDAY AS SOON AS FEBRUARY 12TH.

6                   THE COURT:  YOU WILL HAVE AN ANSWER BY THEN?

7                   MR. NEDROW:  YES.  THANK YOU, YOUR HONOR.  YES.

8                   THE COURT:  LET ME HEAR FROM MS. KEITH.

9              ARE YOU ABLE TO MEET NEXT WEEK ON THE 12TH?  WE COULD ADD

10        IT IF YOU WANTED TO HAVE A STATUS CONFERENCE, JUST TO CHECK IN.

11                  MS. KEITH:  I'M HERE ALREADY NEXT WEEK, SO THAT'S

12        FINE.

13                  THE COURT:  ALL RIGHT.  LET'S DO THAT.

14             LET'S HAVE A STATUS ON FEBRUARY THE 12TH, PLEASE, 2020 AT

15        9:15 A.M.

16             OKAY.  SO THE OTHER BIG ISSUE IS THE MOTION TO SUPPRESS.

17        I THINK THE EASIEST WAY TO HAVE THE GOVERNMENT RESPOND TO THE

18        DEFENSE MOTION, AND YOU CAN ADDRESS THIS --

19                  MS. HARRIS:  YES, YOUR HONOR.

20                  THE COURT:  AND LET ME KNOW, DO YOU THINK AN

21        EVIDENTIARY HEARING IS NECESSARY, OR IS THIS --

22                  MS. HARRIS:  SURE.

23                  THE COURT:  I MEAN, I GUESS I SHOULD JUST LET YOU

24        RESPOND IN WRITING, BECAUSE THIS WAS FILED LAST NIGHT, SO I

25        DON'T KNOW HOW MUCH TIME YOU'VE HAD TO LOOK INTO THE ISSUE OR
```

```
 1          THE QUESTION.
 2                  MS. HARRIS:  SO YOUR HONOR, THERE ARE SORT OF TWO
 3      THINGS.
 4          I CAN RESPOND TO THE POINTS MADE, ESPECIALLY ABOUT 18 USC
 5      SECTION 3501 RIGHT NOW.  AND IF THE COURT REQUIRES FURTHER
 6      BRIEFING ON THIS MATTER, I'M HAPPY TO RESPOND IN WRITING TO
 7      THAT.
 8          SO I MEAN, I CAN JUST GO THROUGH THE FACTORS, AND WE CAN
 9      MAKE A DETERMINATION AS TO WHETHER OR NOT THE COURT WOULD LIKE
10      TO HAVE ANY FURTHER BRIEFING ON THE MATTER, OR FOR THE PURPOSE
11      OF CREATING A CLEAR RECORD.
12                  THE COURT:  I WOULD LIKE A CLEAN RECORD ON THIS.
13                  MS. HARRIS:  I SEE.
14                  THE COURT:  THIS IS GOING TO BE A BIG ISSUE.
15                  MS. HARRIS:  OKAY.
16                  THE COURT:  IT'S CLEAR THAT THIS CASE IS HARD FOUGHT,
17      AND I HAVE NO REASON TO EXPECT IT WILL NOT CONTINUE TO BE HARD
18      FOUGHT.
19                  MS. HARRIS:  YES, YOUR HONOR.
20                  THE COURT:  SO IF THERE ARE THINGS THAT WE CAN DO TO
21      MAKE THE BEST POSSIBLE RECORD, I THINK IT'S BETTER.
22                  MS. HARRIS:  OKAY.
23                  THE COURT:  BUT LET ME ASK YOU JUST, I AM CURIOUS,
24      I'M ALSO MINDFUL OF HOW LONG THIS CALENDAR HAS BEEN, IF YOU CAN
25      GIVE ME, IN A NUT SHELL, WHAT IS THE RESPONSE?
```

1              MS. HARRIS:  SURE.

2          SO YOUR HONOR, AND THIS IS JUST TO THE 3501 ARGUMENTS THAT

3      ARE RAISED IN THE RENEWED DEFENSE MOTION.  THEY ARE CHALLENGING

4      NOT THE FACT THAT IT WAS A KNOWING WAIVER, BUT THE FACT THAT IT

5      WAS VOLUNTARY, WHICH IS A DIFFERENT ARGUMENT FROM THE MIRANDA

6      CHALLENGE THAT WE HAD BEFORE.

7          THE STATUTE TELLS US TO TAKE INTO CONSIDERATION FIVE

8      FACTORS, AND THIS IS IN 3501, SECTION B.  FIRST, THE STATUTE

9      TELLS US TO CONSIDER THE TIME ELAPSES BETWEEN ARREST AND

10     ARRAIGNMENT OF THE DEFENDANT MAKING THE CONFESSION IF IT WAS

11     MADE AFTER ARREST AND BEFORE ARRAIGNMENT.

12         WELL, THE GOVERNMENT'S RESPONSE TO THAT IS THAT THIS

13     INTERVIEW AT SAN FRANCISCO AIRPORT HAPPENED IN -- ON AUGUST 2ND

14     OF 2016.  THIS DEFENDANT WAS NOT CHARGED CRIMINALLY WITH ANY

15     OFFENSE, STATE OR FEDERAL, UNTIL DECEMBER OF 2016.  SO THERE

16     WAS NO ARREST.  THERE WAS NO ARRAIGNMENT AND THERE WERE NO

17     CHARGES.

18         THE SECOND FACTOR THAT THE COURT IS SUPPOSED TO CONSIDER

19     IS WHETHER SUCH DEFENDANT KNEW THE NATURE OF THE OFFENSE WITH

20     WHICH HE WAS CHARGED, OR OF WHICH HE WAS SUSPECTED, AT THE TIME

21     OF MAKING THE CONFESSION.

22         OUR RESPONSE TO THAT IS THAT, FIRST OF ALL, HE WASN'T

23     CHARGED UNTIL DECEMBER OF 2016.  AGENT MARCEAU TOLD THE

24     DEFENDANT -- CONFRONTED HIM WITH THE EVIDENCE OF CHILD

25     PORNOGRAPHY TRADING, AROUND FIVE MINUTES AND 40 SECONDS IN THE

1    RECORDED INTERVIEW ON THE 2ND OF AUGUST.

2              THE COURT:  DO YOU HAVE A TRANSCRIPT OF THAT

3    INTERVIEW?

4              MS. HARRIS:  WE WILL.

5              THE COURT:  BECAUSE I THINK THAT WOULD BE EXTREMELY

6    HELPFUL, OF BOTH OF THEM.

7              MS. HARRIS:  YES, YOUR HONOR.

8         WE ARE IN THE PROCESS OF HAVING THAT PRODUCED.  AND MY

9    UNDERSTANDING IS THAT IT SHOULD BE AVAILABLE, HOPEFULLY BY THE

10   END OF THE WEEK.

11             MR. NEDROW:  WE HAVE BEEN TOLD BY THE END OF THE

12   WEEK.  AND AS SOON AS WE HAVE IT AVAILABLE, WE WILL BE

13   INCLUDING IT IN OUR PAPERS.

14             MS. HARRIS:  WE NOTICED IT AS AN EXHIBIT, OR AS A

15   JURY AID IN OUR EXHIBIT LIST, AND WE ANTICIPATE GETTING THE

16   TRANSCRIPTS OF BOTH OF THESE RECORDINGS TO THE DEFENSE AND TO

17   THE COURT AS SOON AS POSSIBLE.

18        BUT TO MY ORIGINAL POINT, AGENT MARCEAU CONFRONTS

19   MR. WOLFENBARGER OF EVIDENCE OF HIS CHILD PORNOGRAPHY TRADING,

20   AROUND 5 MINUTES 40 SECONDS INTO THE INTERVIEW.  AND THEN

21   MR. WOLFENBARGER, ESSENTIALLY TRIES TO CLAIM THAT HE WAS BEING

22   BLACKMAILED INTO POSSESSING THE CHILD PORNOGRAPHY.

23        AND THEN AGENT MARCEAU TELLS HIM AROUND 6 MINUTES

24   40 SECONDS, THAT HE HAD FOUND THE CHILD PORNOGRAPHY IN HIS

25   E-MAIL, THAT HE READ THE CHATS AND HAD SEEN THE VIDEOS.  SO AT

1    THAT POINT, MR. WOLFENBARGER KNEW THAT HE POTENTIALLY WAS

2    CRIMINALLY LIABLE FOR THE POSSESSION AND RECEIPT OF THIS CHILD

3    PORNOGRAPHY.

4         AND AT THAT POINT, HE KEPT TALKING FOR ABOUT AN HOUR.  HE

5    WAS NOT ARRESTED AT THAT TIME, HE WAS FREE TO GO.  AND ON HIS

6    OWN VOLITION, ABOUT THREE WEEKS LATER, HE CONTACTED AGENT

7    MARCEAU AGAIN TO SCHEDULE A SECOND INTERVIEW WHICH OCCURRED ON

8    AUGUST 31ST OF 2016.  HE CONFIRMS IN THAT RECORDING, THAT HE

9    WAS THERE OF HIS OWN FREE WILL.  THOSE WORDS ACTUALLY COME OUT

10   OF HIS MOUTH.

11        HE WAS NOT IN CUSTODY AT THE TIME.  THIS INTERVIEW

12   HAPPENED IN AN OPEN AIR PARKING LOT, I BELIEVE AT A STARBUCKS,

13   AND HE DROVE HIMSELF HOME AFTER THE INTERVIEW AND WAS NOT

14   ARRESTED AT THAT TIME.

15        FURTHERMORE, AGENT MARCEAU TESTIFIED AT THE SUPPRESSION

16   HEARINGS BACK IN AUGUST OF -- OR EXCUSE ME, JULY OF LAST

17   YEAR -- THAT AT THAT INTERVIEW, HE SIGNED -- MR. WOLFENBARGER

18   SIGNED A CONSENT FORM TO ALLOW THE GOVERNMENT TO ASSUME HIS

19   ONLINE IDENTITY, WHICH INCLUDED CONSENT TO ACCESS THE

20   JRWOLFEN02 ACCOUNT.

21        SO THERE'S FURTHER EVIDENCE THAT HE VOLUNTARILY ASSISTED

22   THE GOVERNMENT'S INVESTIGATION AT THAT POINT, IN ADDITION TO

23   THE FD395 FORMS THAT HE SIGNED AT THE PRIOR INTERVIEW ON

24   AUGUST 2ND OF 2016.

25        AND THAT TAKES US TO THE THIRD FACTOR UNDER 3501, WHICH IS

1   WHETHER SUCH DEFENDANT WAS ADVISED OF OR KNEW THAT HE WAS NOT

2   REQUIRED TO MAKE ANY STATEMENT AND THAT SUCH STATEMENT COULD BE

3   USED AGAINST HIM.

4        IF THE COURT RECALLS THE GOVERNMENT'S BRIEFING IN RESPONSE

5   TO THE INITIAL MOTION TO SUPPRESS ON, I BELIEVE IT'S PAGE 3 OF

6   THAT BRIEFING, THE GOVERNMENT LAID OUT WHAT EXACTLY -- EXACTLY

7   WHAT THE FD395 FORM STATED, WHICH INCLUDED THAT

8   MR. WOLFENBARGER HAD A RIGHT TO REMAIN SILENT, DIDN'T HAVE TO

9   SPEAK TO LAW ENFORCEMENT; AND FURTHERMORE, THAT HE HAD A RIGHT

10  TO AN ATTORNEY.

11       SO ALL OF THOSE POINTS WERE LAID OUT IN WRITING AND ORALLY

12  AT THE BEGINNING OF THE INTERVIEW.  AND MR. WOLFENBARGER,

13  NONETHELESS, SIGNED THE FORM AND ALSO PARTICIPATED IN THE

14  INTERVIEW AND INDICATED THAT HE UNDERSTOOD.

15       THE FOURTH FACTOR IS WHETHER OR NOT SUCH DEFENDANT HAD

16  BEEN ADVISED, PRIOR TO QUESTIONING, OF HIS RIGHT TO THE

17  ASSISTANCE OF COUNSEL.  THAT WAS ALSO COVERED IN THE FD395

18  FORM, IT WAS A WAIVER OF HIS RIGHT TO SEEK THE ASSISTANCE OF

19  COUNSEL AT THAT INTERVIEW.

20       AND FURTHERMORE, AT THE POINT OF THE SECOND INTERVIEW,

21  ABOUT THREE WEEKS OF TIME HAD ELAPSED BETWEEN AUGUST 2ND AND

22  AUGUST 31ST.  DURING THAT INTERIM, IF MR. WOLFENBARGER HAD

23  TRULY FELT THAT HE NEEDED THE ASSISTANCE OF COUNSEL, HE COULD

24  HAVE SOUGHT IT DURING THAT TIME.  HE COULD HAVE BROUGHT COUNSEL

25  WITH HIM TO THE SECOND INTERVIEW THAT HE, HIMSELF, REQUESTED.

1     HE COULD HAVE ASKED FOR COUNSEL DURING THAT TIME.  THERE IS NO

2     INDICATION ON EITHER OF THOSE RECORDINGS THAT HE EVER REQUESTED

3     COUNSEL.

4         AND FURTHERMORE, HIS DECLARATIONS THAT HE FILED IN SUPPORT

5     OF THE PRIOR MOTION TO SUPPRESS THE STATEMENTS ARE VERY, VERY

6     UNCLEAR ON THIS POINT.

7         AND AS THE COURT, ITSELF, NOTED IN ITS VARIOUS ORDERS

8     REGARDING THOSE DECLARATIONS, THEY ARE VERY INCONSISTENT WITH

9     THE RECORDINGS, THEY ARE INCONSISTENT WITH EACH OTHER.

10         SO I DON'T THINK THAT THE FACTUAL ADMISSIONS MADE IN THOSE

11     DECLARATIONS ARE AT ALL A BASIS FOR THE COURT TO FIND THAT HE

12     HAD MADE ANY REQUEST FOR COUNSEL.

13         THE COURT:  LET ME ASK YOU, YOU KNOW -- THANK YOU FOR

14     THAT.  BUT I WOULD WANT TO HEAR A RESPONSE FOR YOU TO ADDRESS

15     THE SPECIFIC ISSUES RAISED IN THE MOTION.

16         MS. HARRIS:  YES, YOUR HONOR.

17         THE COURT:  OKAY.  BECAUSE I DIDN'T HEAR A RESPONSE

18     TO EVERYTHING RAISED HERE, AND IT WOULD BE HELPFUL.  AND ALSO

19     TO HAVE SOME CASE LAW CITATIONS AND WHAT NOT, TO HAVE A REALLY

20     SOLID RECORD ON THIS.

21         YOU KNOW, I HAVE NOT HAD THE VOLUNTARINESS OF A CONFESSION

22     CHALLENGED BEFORE, SO I DON'T EVEN KNOW, HOW DOES IT WORK?  HOW

23     DOES THE JURY HEAR RELEVANT EVIDENCE ON THE ISSUE OF

24     VOLUNTARINESS IF THE DEFENDANT DOESN'T TESTIFY?  IS THAT JUST

25     DONE THROUGH THE CROSS-EXAMINATION OF THE AGENT WHO CONDUCTED

```
 1    THE INTERVIEW?  I DON'T KNOW, HOW DOES THAT EVEN WORK?

 2        I WOULD LOVE TO GET EVEN BRIEFING ON THAT.  WHAT DOES THAT

 3    MEAN TO PERMIT THE JURY TO HEAR RELEVANT EVIDENCE ON THE ISSUE

 4    OF VOLUNTARINESS?  IS THAT JUST HAVING TO LISTEN TO THE

 5    RECORDING, WHICH I ASSUME YOU WILL HAVE THE JURY DO.

 6        MS. HARRIS:  YES, YOUR HONOR.

 7        THE COURT:  HAVE THEM LISTEN TO THE WHOLE THING.  SO

 8    IF THERE ARE ARGUMENTS ABOUT WHAT IS OR ISN'T ON THERE, THEY

 9    CAN DECIDE FOR THEMSELVES THE LEVEL OF CALMNESS OR ADVERSARIAL

10    NATURE OF THE QUESTIONING OR NOT.

11        I WOULD LIKE EVEN JUST WHEN YOU RESPOND TO THIS, WHAT DOES

12    THIS MEAN, BECAUSE I HAVEN'T SEEN THAT BEFORE.

13        MS. HARRIS:  YOUR HONOR, SO I THINK THE COURT

14    CORRECTLY POINTS OUT THAT THE JURY CAN DETERMINE WHETHER OR NOT

15    THE INTERVIEW WAS VOLUNTARY FROM THE RECORDINGS THEMSELVES,

16    FROM THE WAIVER FORMS THAT MR. WOLFENBARGER SIGNED, FROM THE

17    AGENT'S OWN TESTIMONY ABOUT THE CIRCUMSTANCES SURROUNDING THE

18    INTERVIEW.  BUT WHAT THE JURY CANNOT DO IS LIKE LOOK INTO THE

19    MIND OF THE DEFENDANT.

20        SO TO THE EXTENT THAT HE'S NOT WILLING TO GIVE ANY

21    STATEMENT INDICATING THAT HE FELT, AT THE TIME, THAT HE WAS

22    BEING COERCED, THE JURY IS NOT ALLOWED TO INFER THAT FROM FACTS

23    THAT ARE NOT IN EVIDENCE.

24        THE COURT:  LET ME HEAR IN MS. KEITH.

25        IF MR. WOLFENBARGER DOESN'T TESTIFY, WHICH HE CERTAINLY
```

1    HAS A RIGHT NOT TO TESTIFY, WHAT DO YOU MEAN BY "PERMIT THE

2    JURY TO HEAR RELEVANT EVIDENCE ON THE ISSUE OF VOLUNTARINESS."

3    THEY WILL HEAR THE FULL RECORDINGS OF THE INTERVIEWS, THEY WILL

4    SEE THE FORMS WHERE MR. WOLFENBARGER WAIVED HIS RIGHTS.  SO

5    WHAT OTHER EVIDENCE ARE YOU CONTEMPLATING, IF MR. WOLFENBARGER

6    DOESN'T TESTIFY?

7            MS. KEITH:  PRIMARILY THOSE THINGS.

8        I THINK THAT THIS WOULD BE DEVELOPED, POSSIBLY THE MORE

9    EXIGENT CIRCUMSTANCES WOULD BE DEVELOPED MORE AS WE GET CLOSER

10   TO TRIAL.

11       BUT AS AN INITIAL -- INITIALLY, JUST EXACTLY WHAT

12   YOUR HONOR HAS SAID, BASICALLY THE TESTIMONY OF AGENT MARCEAU,

13   WHO WAS THERE, THE RECORDINGS THEMSELVES THAT INDICATE, YOU

14   KNOW, THE CHARACTER OF THE QUESTIONING, THE TONE OF THE

15   QUESTIONING, THE OTHER THINGS THAT PERTAIN TO VOLUNTARINESS.

16       AND THEN, YOU KNOW, POTENTIALLY DEPENDING ON AGENT

17   MARCEAU'S RECOLLECTION, PERHAPS THERE ARE SOME DOCUMENTS

18   PERTAINING TO THE FLIGHTS HE TOOK REGARDING, LIKE THE AMOUNT OF

19   TIME OF TRAVEL.

20       I BELIEVE THINGS LIKE DOCUMENTS, FOR EXAMPLE, THINGS

21   SHOWING WHEN MR. WOLFENBARGER GOT OFF THE PLANE AND WHEN AGENT

22   MARCEAU ACTUALLY ARRIVED.  THINGS THAT RELATE TO TIMING, JUST

23   VERY CLASSIC FACTS THAT HAVE IMPACTS ON DETERMINATIONS OF

24   VOLUNTARINESS.

25            THE COURT:  OKAY.  SO THOSE SOUND LIKE THE FACTS THAT

1    WERE IN THE MOTION THAT WAS WITHDRAWN, RIGHT, THE NUMBER OF --

2    BEING IN THE NARITA AIRPORT, AND STARTING IN THE PHILIPPINES

3    AIRPORT, AND HOW LONG HE HAD BEEN FLYING AND HOW LONG HE HAD

4    SPENT IN SECONDARY INSPECTION WITH CUSTOMS, THOSE KINDS OF

5    FACTS.

6              MS. KEITH:  YES, YOUR HONOR.  I DIDN'T READ IT, BUT I

7    BELIEVE YES, I WOULD AGREE BY AND LARGE WITH THOSE STATEMENTS.

8              THE COURT:  OKAY.  AND THAT YOU ARE INTENDING TO GET

9    IN THROUGH THE AGENT'S TESTIMONY?

10             MS. KEITH:  YES, AND DOCUMENTS.

11             THE COURT:  OKAY.

12             MS. KEITH:  WHICH I BELIEVE WOULD PROBABLY COME IN

13   THROUGH THE AGENT AS WELL, ALTHOUGH I HAVEN'T THOUGHT THAT

14   THROUGH ALL THE WAY.

15             THE COURT:  OKAY.  ALL RIGHT.

16        I JUST WANT TO GET SOME SENSE, BECAUSE I CERTAINLY AM NOT

17   GOING TO HAVE ANY ARGUMENT THAT THE JURY WOULD BE MAKING A

18   VOLUNTARINESS STATEMENT DETERMINATION.

19             MS. KEITH:  OH, NO, YOUR HONOR.  NOT AT ALL.

20             MR. NEDROW:  AND YOUR HONOR, IF I MAY --

21             THE COURT:  I'M SORRY TO INTERRUPT YOU.

22        IN INSTRUCTING THE JURY ABOUT THE WEIGHT OF THE

23   CONFESSION, THAT'S JUST THE REGULAR NINTH CIRCUIT MODEL

24   INSTRUCTION ON DEFENDANT'S PRIOR STATEMENTS, CORRECT?  YOU ARE

25   NOT ASKING FOR ANY SPECIFIC SEPARATE INSTRUCTION, ARE YOU?

```
1            MS. KEITH:  NO, YOUR HONOR.

2            THE COURT:  OKAY.  ALL RIGHT.  I JUST WANT TO CLARIFY

3     BECAUSE I HADN'T SEEN THIS BEFORE.

4         OKAY.  ALL RIGHT.  THANK YOU BOTH FOR THE CLARIFICATION.

5     LET ME HEAR --

6            MS. KEITH:  YOUR HONOR, I'M SORRY.

7         REGARDING THIS PARTICULAR MOTION, I HAD ONE REQUEST THAT I

8     WANTED TO MAKE.  WE OBVIOUSLY DRAFTED THIS UP PRETTY QUICKLY

9     YESTERDAY, AND THERE WERE TWO ISSUES THAT WERE I THINK

10    UNDERDEVELOPED IN OUR PAPERS.

11        AND ONE IS REGARDING THE PROMISE OF CONFIDENTIALITY THAT

12    THESE THINGS ARE JUST BETWEEN ME AND YOU, THE STATEMENT HE

13    MAKES THAT IT'S SOMETHING LIKE THAT, AS WELL AS THE FRUITS

14    RELATED TO THE BROWN V. ILLINOIS CASE WAS THE ONE CITED, BUT

15    JUST THE ISSUE OF THE SECOND STATEMENT BEING THE FRUITS OF THE

16    FIRST.

17        AND SO I WOULD JUST LIKE TO REQUEST THE ABILITY TO LATER

18    TODAY, OR BY EARLY TOMORROW, JUST TO SUBMIT A BRIEF, BASICALLY

19    JUST SUPPLEMENTAL AUTHORITIES ON THE ISSUE.

20            THE COURT:  I'M GOING TO PUT A PAGE LIMIT ON IT,

21    BECAUSE --

22            MS. KEITH:  I UNDERSTAND, YOUR HONOR.

23            THE COURT:  YEAH.  I MEAN, YOU KNOW, WE ALREADY

24    LISTENED TO ALL THE RECORDINGS BACK IN 2018.

25            MS. KEITH:  THESE ARE --
```

1       THE COURT:  AND YOU KNOW, IT'S JUST FRUSTRATING TO

2    THEN HAVE IT WITHDRAWN AND THEN HAVE THIS.  IT'S JUST NOT HOW I

3    PREFER TO DO THINGS, IS ALL.

4       SO I DON'T WANT THIS TO BE LIKE THIS SORT OF SERIAL MOTION

5    TO SUPPRESS THAT'S COMING OUT IN DRIPS AND DRABS OVER A YEAR.

6       SO I WILL GIVE YOU AN OPPORTUNITY TO SUPPLEMENT, BUT LIKE

7    TWO PAGES, THREE PAGES?  WHAT DO YOU NEED?

8       MS. KEITH:  THREE PAGES.

9       THE COURT:  IT'S LIKE THE THIRD MOTION TO SUPPRESS IN

10   THIS CASE, AND I JUST THINK IT STARTS GETTING ABUSIVE.

11       MS. KEITH:  THREE PAGES, I THINK WE COULD DO IT.

12       THE COURT:  OKAY.

13       MS. KEITH:  I WILL AIM FOR LESS.

14       THE COURT:  OKAY.  FILE THAT TOMORROW.

15       MS. KEITH:  OKAY.

16       THE COURT:  THAT IS FEBRUARY THE 6TH, PLEASE.

17    OKAY.  NOW, I WOULD LIKE AS COMPREHENSIVE AND THOROUGH A

18   RESPONSE AS POSSIBLE.  I DON'T WANT SOMETHING THAT'S GLIB.

19       MS. HARRIS:  I UNDERSTAND.

20       THE COURT:  BECAUSE THEN THAT PUTS THE BURDEN ON ME

21    AND MY STAFF TO HAVE TO DO THE WORK, AND THAT'S NOT RIGHT

22    EITHER.

23       SO WHEN ARE YOU GOING TO GIVE ME A THOROUGH AND

24    COMPREHENSIVE OPPOSITION?

25       MS. HARRIS:  YOUR HONOR, COULD I HAVE UNTIL THE 19TH,

1    TWO WEEKS?

2             THE COURT:  I GUESS THAT'S OKAY.

3             MS. HARRIS:  AND I WILL NOTE IF THE COURT WISHES TO

4    HAVE AN EVIDENTIARY HEARING ON THIS, WE ARE IN A DIFFICULT

5    SITUATION RIGHT NOW.  AGENT MARCEAU IS OUT OF TOWN ON A

6    PERSONAL FAMILY TRAGEDY, SO THAT'S PART OF THE REASON THAT I'M

7    REQUESTING THE TIME TO MAKE CERTAIN THAT HE WILL BE BACK, IF

8    THE COURT WISHES TO HEAR DIRECTLY FROM HIM AS PART OF ITS

9    RULINGS.

10            THE COURT:  LET ME HEAR FROM MS. KEITH, YOU ARE NOT

11   ASKING FOR AN EVIDENTIARY HEARING, CORRECT?  BECAUSE THE LAST

12   MOTION TO SUPPRESS FILED BY MR. ARCHER, HE HAD REQUESTED AN

13   EVIDENTIARY HEARING.  BUT I DON'T SEE YOU REQUESTING ONE.  I

14   THINK YOU ARE SAYING THIS CAN BE DECIDED BASED ON THE PAPERS.

15       SO WE HAVE THE RECORDING, WE HAVE THE WAIVER FORM, WE HAVE

16   THE DECLARATIONS OF BOTH MR. WOLFENBARGER AND THE AGENT FROM

17   THE LAST TIME THE MOTION TO SUPPRESS WAS FULLY BRIEFED.

18       IS THAT CORRECT?  YOU ARE NOT ASKING FOR AN EVIDENTIARY

19   HEARING.

20            MS. KEITH:  NOT AT THIS POINT, YOUR HONOR.

21       IF THERE BECOMES ISSUES, THE ONLY THING I COULD THINK OF

22   IS I DO BELIEVE THAT, BASED ON THOSE DECLARATIONS, THAT I DON'T

23   KNOW IF ANY -- I WOULD HAVE ANY FURTHER QUESTIONS FROM AGENT

24   MARCEAU AT THIS POINT.  IF SO, PERHAPS IF HE'S NOT AVAILABLE AT

25   THAT POINT, WE MIGHT, IF IT'S SOMETHING THAT'S UNDISPUTED, WE

1       COULD GET A STIPULATION.

2              BUT NO, AT THIS POINT, I DON'T THINK THAT A HEARING IS

3       NECESSARY.

4              THE COURT:  I SO WISH YOU ALL HAD NOT WITHDRAWN THAT

5       MOTION IN 2018 AND WE HAD JUST WENT THROUGH WITH IT.  I HAVE

6       ANOTHER TRIAL STARTING MARCH 2ND, SO WHEN ARE SQUEEZING ALL

7       THIS IN?  I HAVE TONS OF OTHER MOTIONS THAT ARE ALREADY SET

8       BETWEEN NOW AND THEN.

9              YOU'VE GOT RULINGS ON ABOUT, WHAT, 18 MOTIONS IN LIMINE

10      BETWEEN YESTERDAY AND MONDAY?  I'M JUST REALLY FRUSTRATED THIS

11      IS HAPPENING WAY TOO LATE.  ARE YOU GOING TO REQUEST A REPLY?

12             MS. HARRIS:  YOUR HONOR, I DON'T THINK A REPLY IS

13      APPROPRIATE HERE.

14             AGAIN, THE DEFENSE IS BEING GIVEN AN OPPORTUNITY TO AMEND

15      THEIR INITIAL MOTION TO ADD SUPPLEMENTAL AUTHORITY.  THE

16      GOVERNMENT -- MOST OF THE SUBSTANCE OF THE GOVERNMENT'S

17      RESPONSE CAN PROBABLY BE GLEANED FROM OUR PREVIOUS FILINGS ON

18      THIS ISSUE AND THE STATEMENTS THAT I'VE GIVEN IN COURT TODAY.

19             I JUST -- THERE'S NO REASON, AT THIS POINT, TO BELABOR

20      THIS ANY FURTHER THAN IT NEEDS TO GO.  AND AT THE POINT OF THE

21      19TH, WE ARE GOING TO BE, DEPENDING ON WHEN THE ACTUAL TRIAL

22      DATE -- THE TRIAL STARTS -- LESS THAN A MONTH AWAY FROM TRIAL.

23      I MEAN, THIS ISSUE COULD HAVE BEEN RAISED MONTHS AND MONTHS

24      AGO.

25             THE COURT:  OH, YEARS, YEARS.

1          THIS SHOULD HAVE BEEN IN THEIR ORIGINAL MOTION TO SUPPRESS

2     THAT WAS FULLY BRIEFED.  TRUST ME, NO ONE IS MORE FRUSTRATED

3     THAN I AM ON HOW THIS WAS PLAYED OUT BY THE PUBLIC DEFENDER'S

4     OFFICE.

5          SO IF WE NEED AN EVIDENTIARY HEARING, THE ONLY TIME IT

6     COULD BE WOULD BE MARCH 24TH, BECAUSE I'M IN TRIAL MARCH 2ND

7     AND 9TH AND WE ARE GOING TO START THIS TRIAL THAT WEEK.  SO

8     THAT'S THE ONLY WEEK IT COULD BE BECAUSE I NEED TO HAVE THE

9     OPPOSITION BEFORE THE HEARING.

10          MR. NEDROW:  MAY I MAKE A SUGGESTION ON THAT,

11     YOUR HONOR?

12          THE COURT:  YES.

13          MR. NEDROW:  I'M SORRY, YOU SAID MARCH 24TH.  DID YOU

14     MEAN MARCH 24TH OR FEBRUARY?

15          THE COURT:  FEBRUARY 24TH.  I MISSPOKE IF I SAID

16     SOMETHING ELSE, SORRY.

17          IT WOULD HAVE TO BE THAT WEEK BECAUSE I'M IN TRIAL THE

18     WEEK OF MARCH 2ND THROUGH THE 9TH AND 10TH, THEN WE WERE HOPING

19     TO START THIS TRIAL RIGHT AWAY ON THE 12TH AND 13TH.

20          MS. HARRIS:  IF THAT'S WHAT NEEDS TO HAPPEN, THAT'S

21     WHAT NEEDS TO HAPPEN.  WE JUST NEED TO RESOLVE THIS.

22          SO THE 24TH IS FINE FOR THE GOVERNMENT.  AND MY HOPE IS

23     THAT AGENT MARCEAU WILL BE BACK BY THEN AND ABLE, AND WE WILL

24     CHECK WITH HIM AND MAKE CERTAIN THAT --

25          THE COURT:  WELL, NOT THAT I -- LET ME SEE MY OWN

1    CALENDAR.  THAT'S WHY I'M DEEPLY FRUSTRATED.

2        (OFF-THE-RECORD DISCUSSION.)

3        ON WEDNESDAY THE 26TH, I HAVE A SENTENCING AND I HAVE A

4    RESTITUTION HEARING.  IT'S A PRETTY PACKED WEEK.

5        I'M LOOKING AT MARCH 5TH, I HAVE CLASS CERTIFICATION WHICH

6    IS LOTS OF WORK.  AND I HAVE CROSS SUMMARY JUDGEMENT MOTIONS.

7    I HAVE A MOTION TO STRIKE, I HAVE A SENTENCING.  THEN WE HAVE

8    ALL THAT MOTION TO DISQUALIFY, MOTION FOR COURT INQUIRY AND

9    THAT HEALTH CARE FRAUD CASE ON THE 4TH.

10       AND I'M GOING TO BE IN TRIAL.  SO THE LATER THIS GOES,

11   IT'S REALLY SQUEEZING, ALTHOUGH YOU KNOW WHAT, MAYBE I'M JUST

12   GOING TO -- YOU DO A GOOD JOB ON THE OPPOSITION, I WILL JUST

13   ISSUE A RULING THAT'S JUST UP OR DOWN, GRANTED OR DENIED.

14       MS. HARRIS:  OKAY.

15       THE COURT:  THAT'S THE OTHER THING I COULD DO, JUST

16   BECAUSE YOU ALL HAVE REALLY SQUEEZED ME IN TERMS OF TIME, I

17   HAVE A LOT SET.

18       MS. HARRIS:  AND I WILL NOTE, YOUR HONOR, THAT AGAIN,

19   WE HAVE NOTICED AGENT MARCEAU ON OUR WITNESS LIST.  WE DO

20   INTEND TO CALL HIM AT THE TRIAL.  SO IF THE DEFENSE HAS

21   QUESTIONS FOR HIM AND WE ARE GOING TO BE PLAYING THE RECORDINGS

22   AT THAT TIME, THEY CAN ADDRESS THOSE THROUGH CROSS-EXAMINATION

23   SO THAT THE JURY CAN HEAR.

24       THE COURT:  RIGHT.

25       WELL, I MAY NOT ALLOW ANY EVIDENTIARY HEARING, FRANKLY.  I

 1    MEAN, THEY WITHDREW THEIR MOTION LESS THAN 24 HOURS, PROBABLY

 2    ABOUT 15 HOURS BEFORE THE EVIDENTIARY HEARING, SO THEY HAVE

 3    ALREADY FOREGONE THEIR OPPORTUNITY TO GET AN EVIDENTIARY

 4    HEARING ONCE.  SO I MAY NOT EVEN ALLOW IT.

 5         BUT I'M JUST SAYING IN TERMS OF MY OWN WORK LOAD,

 6    MARCH 11TH WE HAVE A HEARING ON MULTIPLE RULE 15 MOTIONS.  WE

 7    HAVE TWO SENTENCINGS.  THE 12TH WE HAVE A MOTION TO QUASH,

 8    CROSS SUMMARY JUDGEMENT MOTIONS, A MOTION TO DISMISS, MOTION

 9    FOR JUDGMENT ON THE PLEADINGS, MOTION TO STAY, AND MOTION TO

10    DISMISS.

11         AND THAT'S ALSO WHEN WE ARE STARTING THIS TRIAL AND STILL

12    GOING TO BE FINISHING UP THE MERCADO TRIAL.  SO THE LATER THIS

13    KEEPS GETTING PUSHED, YOU ALL ARE GOING TO KILL ME BECAUSE, I

14    MEAN, THERE'S JUST A HUMAN LIMIT TO WHAT CAN BE DONE.

15              MS. KEITH:  YOUR HONOR --

16              THE COURT:  IF YOU WERE GOING TO FILE A MOTION TO

17    SUPPRESS, I JUST WISH IT HAD BEEN DONE SOONER VERSUS THE DAY

18    BEFORE THE PRETRIAL CONFERENCE, AND ONLY IN RESPONSE TO A COURT

19    ORDER.  BUT ANYWAY, IT IS WHAT IT IS.  THERE WILL BE NO REPLY.

20    AND THE DEFENSE MOTION SAYS NO EVIDENTIARY HEARING IS

21    NECESSARY, SO WE ARE NOT GOING TO HAVE AN EVIDENTIARY HEARING.

22         THIS MOTION THAT WAS FILED LAST NIGHT ECF 265, SAYS THE

23    MOTION CAN BE RESOLVED ON THE PRESENT FACTUAL RECORD WITHOUT

24    HEARING TESTIMONY FROM MR. WOLFENBARGER.  HIS PRESENT CHALLENGE

25    IS BASED ON THE AUDIO RECORDINGS OF HIS INTERROGATIONS AND THE

1   FACTUAL CIRCUMSTANCES OF THE INTERROGATIONS, TOGETHER WITH THE

2   LEGAL CONCLUSIONS TO BE DRAWN FROM THOSE RECORDINGS.

3           MS. KEITH:  YES.  AND I THINK THAT THAT'S FINE THAT

4   WE PROCEED THAT WAY, YOUR HONOR.  I THINK THERE'S ENOUGH FOR

5   THE 3501 WITH WHAT WE HAVE DISCUSSED.

6           THE COURT:  OKAY.  SO YOU AGREE THERE SHOULDN'T BE AN

7   EVIDENTIARY HEARING?

8           MS. KEITH:  I THINK, PARTICULARLY IN LIGHT OF THE

9   IMPENDING TRIAL.

10          THE COURT:  OKAY.

11      OKAY.  SO THEN WE WILL JUST HAVE A THREE-PAGE SUPPLEMENTAL

12  MOTION FEBRUARY 6TH, OPPOSITION FEBRUARY 19TH.  SO REPLY, NO

13  HEARING.  ALL RIGHT.  SO THAT'S THE MOTION TO SUPPRESS.

14      NOW, LET'S TALK ABOUT THE TRIAL DATE.  I WAS HOLDING THAT

15  FOR THE END BECAUSE I WASN'T SURE HOW THE SUPERSEDING

16  INDICTMENT AND THE SUPPRESSION MOTION WERE GOING TO AFFECT IT,

17  BUT IT SOUNDS LIKE WE COULD STILL DO THAT.

18      I REALLY AM SORRY TO ASK YOU TO ADVANCE THE TRIAL DATE.

19  MY ONLY CONCERN IS TRYING NOT TO EXTEND IT SO LONG THAT WE LOSE

20  JURORS.  BUT IF IT CAN'T BE ADVANCED BEYOND THE 13TH, I THINK

21  THAT'S FINE.  BUT WHAT'S YOUR THINKING?  AND I'M TOTALLY FINE

22  WITH HAVING THE FIRST DAY BE SOLELY JURY SELECTION AND JUST

23  OPENING STATEMENTS.  I WILL READ ALSO PRELIMINARY JURY

24  INSTRUCTIONS BUT NOT HAVE ANY WITNESSES.

25          TO BE HONEST, BECAUSE I'M GOING TO HAVE TO VOIR DIRE ON

1    CHILD ABUSE, SEXUAL ASSAULT, CHILD PORNOGRAPHY, I THINK THIS

2    JURY SELECTION MAY TAKE A FULL DAY BECAUSE I WOULD LIKE TO GIVE

3    THE JURORS PRIVACY.

4         AND SO THERE'S GOING TO BE A LOT OF LOGISTICS OF MOVING

5    PEOPLE IN AND OUT OF THE COURTROOM, AND I'M GOING TO HAVE TO

6    FIGURE OUT WHERE TO HOUSE PEOPLE WHILE WE ARE HAVING PRIVATE

7    VOIR DIRE ON VERY, VERY SENSITIVE AND EMOTIONAL TOPICS.  SO I

8    WOULDN'T BE SURPRISE IF THE JURY SELECTION TAKES MOST OF THAT

9    FIRST DAY ANYWAY.

10        SO WHAT IS YOUR THINKING?  WOULD YOU LIKE TO KEEP IT ON

11   THE 13TH?

12            MR. NEDROW:  YOUR HONOR, THANKS SO MUCH FOR YOUR

13   UNDERSTANDING.

14        IT'S DIFFICULT.  WE HAVE BEEN TRYING TO REACH WITNESSES,

15   AND AS IT HAPPENS, IT'S TOUGH FOR THE GOVERNMENT IN THAT THERE

16   WERE TWO PRIMARY CASE AGENTS, AGENT MARCEAU AND AGENT TROMBETTA

17   AND AS MS. HARRIS SAID, AGENT MARCEAU IS OUT OF TOWN BECAUSE

18   HIS FATHER PASSED AWAY.  AND AGENT TROMBETTA IS TESTIFYING IN A

19   TRIAL IN THE EASTERN DISTRICT OF CALIFORNIA TOMORROW MORNING.

20            THE COURT:  OH.

21            MR. NEDROW:  SO WE HAVE BEEN HAMPERED A LITTLE BIT ON

22   THE QUICK RESPONSE AND TRACKING DOWN WITNESS AVAILABILITY.  BUT

23   WE DO FEEL CONFIDENT, AND ESPECIALLY GIVEN THE COURTS'S

24   REMARKS, THAT WE CAN START WITH AN OPENING -- EXCUSE ME -- WITH

25   JURY SELECTION, AS LONG AS IT TAKES, AND THEN EVEN OPENINGS, IF

1    WE HAVE THE TIME, ON THE 13TH.

2         AND WE DO THINK THE WITNESSES WILL BE AVAILABLE, OF COURSE

3    ALL WEEK THE 16TH.  AND TO REASSURE THE COURT ON ONE CONCERN

4    THE COURT HAD, WE ARE APPRECIATIVE OF THE TIME THAT'S BEEN

5    BRACKETED, BUT MS. HARRIS AND I HAVE BEEN DISCUSSING IT AND WE

6    THINK THE CASE IN CHIEF SHOULD NOT TAKE LONGER THAN, IF WE ARE

7    STARTING A FULL COURT DAY, WHICH THE COURT ALWAYS RUNS, THREE

8    TO FOUR COURT DAYS, AND FOUR IS ON THE OUTSIDE, AND THREE I

9    THINK, MAY BE PLAUSIBLE, AND MS. HARRIS CAN CORRECT ME.

10         THE COURT:  OKAY.

11    I WAS WONDERING, YOU HAVE -- AND I'M HOPING, MS. KEITH,

12    THAT YOU ALL COULD REACH AN AGREEMENT ON CUSTODIANS OF RECORD,

13    I DON'T THINK I'VE HAD A CUSTODIAN OF RECORD TESTIFY VERY

14    OFTEN, AND IF IT'S SOMETHING SIMPLE, I MEAN OBVIOUSLY IF YOU

15    NEED IT TO ESTABLISH YOUR DEFENSE, THAT'S FINE.  BUT IF IT'S

16    SOMETHING JUST SIMPLE AS, THESE ARE HOW OUR RECORDS ARE KEPT

17    AND THOSE ARE KEPT IN THE ORDINARY COURSE, THEY ARE CREATED BY

18    SOMEBODY WITH KNOWLEDGE AROUND THE TIME THEY ARE KEPT, I'M

19    REALLY HOPING WE CAN REACH A STIPULATION AND NOT HAVE CUSTODIAN

20    OF RECORD TESTIMONY, IF POSSIBLE.

21         MS. KEITH:  AND YOUR HONOR, THAT'S EXACTLY WHAT WE

22    ARE LOOKING INTO TO DETERMINE HOW CRUCIAL THESE ISSUES ARE FOR

23    OUR DEFENSE.

24         AND I WOULD SAY AT A MINIMUM, PERHAPS IN THE INTEREST OF

25    TIME, WE COULD STIPULATE TO THE FOUNDATIONAL, BUT PERHAPS ALLOW

1    EXAMINATION ON THE ISSUES, WE MIGHT BE ABLE TO DRAFT A

2    STIPULATION THAT WOULD BOTH SHORTEN THE TIME AND JUST HAVE A

3    SHORTER -- VERY SHORT QUESTIONING ON THE STAND, IF NECESSARY.

4              THE COURT:  OKAY.

5              MS. KEITH:  BUT I TYPICALLY HAVE BEEN ABLE TO

6    STIPULATE ON SUCH ITEMS IN THE PAST.

7              THE COURT:  ON CUSTODIANS OF RECORD.  OKAY.  THANK

8    YOU.

9         IF YOU TAKE OUT THE CUSTODIANS OF RECORD, THE GOVERNMENT

10   HAS NINE WITNESSES, SO I WAS WONDERING WHERE YOU ARE GETTING

11   YOUR ESTIMATE, BECAUSE THAT SEEMS UNLIKELY THAT EACH OF THOSE

12   WITNESSES WILL BE TESTIFYING ALMOST A FULL DAY.

13        SO IF YOU ARE GOING TO GO THREE TO FOUR DAYS, LET ME ASK

14   MS. KEITH, HOW LONG DO YOU THINK THE DEFENSE CASE MIGHT BE?

15             MS. KEITH:  IF WE PUT ON A CASE, I THINK AT THE

16   OUTSIDE, ONE-AND-A-HALF DAYS.

17             THE COURT:  OKAY.

18             MS. KEITH:  AND PROBABLY ONE.  BUT AT THE OUTSIDE,

19   ONE-AND-A-HALF.

20             THE COURT:  OKAY.

21        WOULD THE PARTIES BE AMENABLE TO ME SHAVING THIS DOWN TO

22   FIVE DAYS, OR SIX DAYS?  WELL, IF WE KEEP -- SO THIS IS MY

23   ISSUE.  I WOULD LOVE TO BUILD AS MUCH TIME ON THE BACK END FOR

24   THE JURY TO DELIBERATE SO THAT THEY DON'T HAVE TO COME BACK THE

25   WEEK OF APRIL 6TH.

1       AND, YOU KNOW, TO BE HONEST, WE HAVE A LITTLE BIT OF TIME

2    TO WORK THIS OUT.  IF YOU ARE -- I'M SORRY TO HEAR ABOUT YOUR

3    AGENT'S FATHER PASSING AWAY, BUT WHEN HE COMES BACK OR WHEN THE

4    OTHER AGENT IS FINISHED WITH THEIR TESTIMONY IN THAT OTHER

5    CASE, IF THEY COULD START CONTACTING WITNESSES AND SEE IF

6    THERE'S ANY FLEXIBILITY TO MOVE UP, I WOULD LOVE TO START ON

7    THE 12TH, IF AT ALL POSSIBLE, AND I WOULD WORK WITH YOU

8    LIMITING THAT DAY TO JUST JURY SELECTION OR JUST JURY SELECTION

9    AND PRELIMINARY JURY INSTRUCTIONS, OR JUST JURY SELECTION,

10    PRELIMINARY JURY INSTRUCTIONS AND OPENING, BUT WE DO NOT HAVE

11    TO HAVE WITNESSES THE FIRST DAY AT ALL.

12       SO I WOULD LIKE YOU TO STILL EXPLORE IF YOU COULD START ON

13    THE 12TH.  AND I WILL GIVE YOU TIME TO GET BACK TO ME.  I'VE

14    ALREADY MOVED THE MERCADO TRIAL THAT'S HAPPENING MARCH 2ND.  SO

15    I THINK WE WILL DEFINITELY, I SUSPECT, BE DONE ON THE 9TH.  I

16    MIGHT HAVE A JURY DELIBERATING LATER INTO THAT WEEK, BUT MY

17    EVIDENCE, I THINK AT MOST, WE WILL HAVE ONE WITNESS ON MONDAY

18    MORNING THE 9TH.

19       SO I EXPECT TO BE OPEN ON THE 12TH AND WOULD LOVE TO START

20    ON THE 12TH IF WE CAN.  SO THEN IF WE SCHEDULE IT FOR, WHAT

21    ABOUT FIVE DAYS, DOES FIVE DAYS SOUNDS REALISTIC, WHAT DO YOU

22    THINK?

23            MS. HARRIS:  SO WE WOULD START ACTUAL TESTIMONY?

24            THE COURT:  I GUESS IT WOULD BE A TOTAL OF SIX DAYS.

25    IF YOU COUNT THE JURY SELECTION DAY, IT WOULD STILL BE SIX

1    DAYS.  IT WOULD BE FIVE DAYS FOR EVIDENCE AND THE ONE DAY FOR

2    JURY SELECTION AND OPENING STATEMENTS AND PRELIMINARY JURY

3    INSTRUCTIONS.

4              MS. HARRIS:  SO THE COURT IS ANTICIPATING THAT WE

5    WOULD START ON THE 12TH, WE WOULD HAVE THE 13TH STARTING WITH

6    TESTIMONY, OPENINGS AND/OR TESTIMONY.

7              THE COURT:  YES.

8              MS. HARRIS:  AND THEN WE WOULD ALSO HAVE THE 16TH BUT

9    NOT THE 17TH.

10             THE COURT:  UNFORTUNATELY.  I APOLOGIZE.  THAT'S

11   CORRECT.

12             MS. HARRIS:  16TH, NOT THE 17TH.  THE 18TH?

13             THE COURT:  NO, I HAVE COURT.  18TH WOULDN'T WORK.

14   BUT THE 19TH WOULD WORK, THE 20TH WOULD WORK, 23RD, 24TH WOULD

15   WORK, AND THEN THE 27TH.

16             MR. NEDROW:  I HAVE TO THINK IF THAT'S ENOUGH TIME.

17   WITH EVERYTHING THE COURT JUST SAID, I THINK THAT'S ENOUGH TIME

18   TO FINISH THE CASE.

19        AND YOUR HONOR, WE REALLY APPRECIATE THE COURT'S

20   UNDERSTANDING.  WE WILL EXPLORE, ONCE WE CAN KIND OF HAVE MORE

21   CONVERSATIONS WITH THE AGENTS AFTER THEIR CIRCUMSTANCES HAVE

22   ALLEVIATED, WHETHER OR NOT LINING UP THE WITNESSES FOR THE

23   13TH, BUT WE WILL DO EVERYTHING WE CAN TO DO THAT AND LET THE

24   COURT KNOW AS SOON AS WE CAN.

25             THE COURT:  OKAY.  THANK YOU.

```
 1        SO IF YOU CAN MOVE TO THE 12TH, WITH THE DATES I HAVE

 2   GIVEN YOU, THAT WOULD BE NINE DAYS TOTAL, WHICH I THINK WE

 3   WOULD NOT ONLY GET THE EVIDENCE AND THE TRIAL IN, BUT I THINK

 4   WE WOULD GET DELIBERATIONS DONE.  AND I THINK I WILL HAVE A

 5   MUCH EASIER TIME FINDING JURORS WHO ARE WILLING TO SERVE IF IT

 6   DOESN'T SPAN OVER FIVE WEEKS.

 7        MS. HARRIS:  YES.

 8        MR. NEDROW:  AGREED.

 9        THE COURT:  SO AS IT IS, I THINK WE ARE GOING TO HAVE

10   SOME DIFFICULTY BECAUSE IT IS SPRING BREAK.  SO ANY JUROR

11   THAT'S GOT PEOPLE AFFECTED BY SPRING BREAK, THEY ARE NOT GOING

12   TO SERVE.

13        SO WE ARE GOING TO HAVE DIFFICULTY BASED ON THE CONTENT

14   AND THE SUBJECT MATTER AND THEN THE LENGTH OF THE TRIAL, AND

15   THEN MY SWISS CHEESE CALENDAR, WHICH I APOLOGIZE, THOSE ARE

16   GOING TO PRESENT ENOUGH CHALLENGES THAT I DO NOT WANT TO ADD IN

17   A FIVE-WEEK COMMITMENT ON TOP.

18        SO WHY DON'T WE DO THIS, RIGHT NOW WE WILL ASSUME IT IS A

19   TOTAL SIX-DAY TRIAL, INCLUDING THE DAY FOR JURY SELECTION.  THE

20   WHOLE THING WILL BE SIX DAYS.

21        AND WE WILL KEEP IT AT THIS TIME, MARCH 13TH AND WE WILL

22   HAVE, AS DELIBERATION DAYS, THE 27TH AND THE 30TH, OKAY.

23        NOW IF YOU ARE ABLE TO ADVANCE IT ONE MORE DAY TO THURSDAY

24   THE 12TH, THEN THAT WILL JUST -- ACTUALLY, THEN I SUSPECT IF

25   YOU FINISH ON THE -- ACTUALLY, YEAH.  I THINK WE MAY HAVE TO
```

1    STILL KEEP THIS SCHEDULE, BUT AT LEAST THEY COULD START

2    DELIBERATING ON THE 24TH.  I HAVE THEM DELIBERATE -- NO, I

3    THINK THE 25TH AND 26TH ARE NOT GOING TO WORK.

4         SO OKAY.  THAT'S GOOD.  WHEN DO YOU THINK YOU MIGHT HAVE

5    MORE INFORMATION ON THAT?  A WEEK?

6              MR. NEDROW: YES, YOUR HONOR.

7         I THINK NEXT WEEK, FOR THE REASONS WE HAVE AGAIN

8    REFERENCED, BOTH AGENTS WILL BE IN A MORE CONTACTABLE

9    SITUATION.  SO I DON'T KNOW IF IT'S EARLY OR MID -- AND THEN WE

10   WILL HAVE THEM REACH OUT TO ALL THE WITNESSES.

11             THE COURT:  WELL, WE ARE HAVING A STATUS CONFERENCE

12   ON THE 12TH, SO MAYBE AT THAT TIME, WE CAN TALK ABOUT THE TRIAL

13   DATE.  SO LET'S TRY TO RESOLVE IT.  THAT WILL GIVE YOU ANOTHER

14   WEEK TO HOPEFULLY CONTACT WITNESSES.

15             MR. NEDROW:  THANK YOU.

16             MS. KEITH:  AND YOUR HONOR, COULD YOU PLEASE READ THE

17   DATES AGAIN, I WAS TAKING TOO MANY NOTES AND LOST YOUR

18   AVAILABLE DATES.

19             THE COURT:  YEAH, I CAN DO THAT BUT THEY WERE IN MY

20   ORDER THAT I FILED YESTERDAY, I'M NOT SAYING ANYTHING DIFFERENT

21   THAN WHAT WAS ALREADY FILED.  WE WOULD HAVE FRIDAY THE 13TH,

22   MONDAY THE 16TH, THURSDAY THE 19TH, FRIDAY THE 20TH, MONDAY

23   THE 23RD, TUESDAY THE 24TH, FRIDAY THE 27TH AND MONDAY

24   MARCH 30TH.  THOSE ARE IN MY ORDER ECF NUMBER 263.

25             MS. KEITH:  THANK YOU.

```
1              THE COURT:  BUT I'M ALSO ASKING IF WE COULD ADD
2     THURSDAY MARCH 12TH, THAT WOULD JUST GIVE US A MORE CLEAR SHOT
3     AT HAVING THE DELIBERATIONS CONCLUDED BY THE END OF MARCH.
4         OKAY.  SO THAT'S THAT.  ALL RIGHT.
5         NOW, UNDERSTANDING THAT WE MAY HAVE, EVEN WITH THE
6     ADVANCED TRIAL, IT'S STILL SPANNING LIKE THREE TO FOUR WEEKS.
7     HOW MANY THE ALTERNATES SHOULD WE SELECT?
8              MS. HARRIS:  CAN WE HAVE FOUR?
9              THE COURT:  YOU THINK WE NEED FOUR?
10             MS. HARRIS:  I HAVE JUST BEEN BURNED BY THIS BEFORE
11    IN A TRIAL BEFORE JUDGE DAVILA.  WE HAD TWO, AND THEN THERE WAS
12    JUST A SERIES OF EVENTS WHERE PLENTY OF PEOPLE WHO DID NOT
13    STATE THAT THEY HAD ANY UNAVAILABILITY BECAME UNAVAILABLE
14    BECAUSE THERE WERE DELAYS IN THE TRIAL, OUTSIDE OF THE
15    GOVERNMENT'S CONTROL.
16        SO I JUST REALLY WOULD LIKE TO AVOID THAT SITUATION.  WE
17    ENDED UP HAVING A HEARING AT THE END OF THIS OF WHETHER OR NOT
18    THERE HAD TO BE A MISTRIAL.  IF WE COULD HAVE FOUR, THAT WOULD
19    BE GREAT.
20             THE COURT:  WHAT ABOUT THREE?
21             MS. HARRIS:  ALSO FINE.
22             MR. NEDROW:  PLEASE.
23             MS. HARRIS:  JUST NOT TWO, MORE THAN TWO.
24             THE COURT:  DOES THIS SUBJECT MATTER AFFECT PEOPLE
25    SUCH THAT THEY WANT TO GET OFF THE TRIAL OR NOT?  I DON'T KNOW.
```

1             MR. NEDROW:  I THINK THAT'S THE CONCERN, YOUR HONOR.

2         AND NOT TO ECHO MS. HARRIS'S EXPERIENCE IN A DIFFERENT

3    CASE WHERE PEOPLE, A DAY OR TWO IN, ALL THE SUDDEN SAY, I DON'T

4    THINK I CAN DELIBERATE AFTER ALL.  AND THAT REALLY IS KIND OF

5    THE CONCERN.  WE WOULD BE GRATEFUL FOR THREE.

6         THOUGH THE COURT IS COMPLETELY RIGHT IT SPANS INTO THAT, I

7    GUESS FOURTH WEEK, THE ACTUAL LENGTH OF IT IS ACTUALLY

8    RELATIVELY MID-RANGE.  IT'S THREE WEEKS, IF YOU START ON THE

9    12TH OR 13TH AND GO TO -- TWO-AND-A-HALF TO THREE WEEKS, AND I

10   THINK WE APPRECIATE CONSIDERING FOUR, BUT WE CAN LIVE WITH

11   THREE.

12            THE COURT:  I COULD DO FOUR.  I'M NOT SURE WHERE WE

13   ARE GOING TO HOUSE THEM.

14            MS. HARRIS:  MAYBE WE COULD PUT SOME CHAIRS IN FRONT

15   OF THE JURY BOX.

16            MR. NEDROW:  THAT'S HOW JUDGE DAVILA HAS DONE IT,

17   THEY PUT A CHAIR IN FRONT.

18            THE COURT:  I HAVE TO PUT THREE CHAIRS IN FRONT.  OH,

19   NO, I WOULD HAVE TO PUT TWO CHAIRS IN FRONT.  YOU KNOW, I HAVE

20   DONE THAT BEFORE, AND PUT A LITTLE TABLE OF TWO CHAIRS IN

21   FRONT.

22        OKAY.  I COULD DO THAT.  ALL RIGHT.  WE CAN DO FOUR

23   ALTERNATES.  DO YOU AGREE WITH THAT, MS. KEITH?  DO YOU THINK

24   BELTS AND SUSPENDERS, WE SHOULD JUST BE EXTRA CAUTIOUS?

25            MS. KEITH:  I THINK WITH WHAT THE GOVERNMENT HAS

```
1      REPRESENTED, ABSOLUTELY.

2              THE COURT:  OKAY.  ALL RIGHT.  OKAY.

3          SO WE WILL HAVE FOUR ALTERNATES AND SO YOU NORMALLY GET 6

4      AND 11; IS THAT CORRECT?

5              MR. NEDROW:  6 AND 10, I BELIEVE.

6              THE COURT:  6 AND 10.  6 AND 10, THAT'S CORRECT.  SO

7      YOU WOULD GET TWO MORE, SO WE WOULD BE AT 8 AND 12.  SO YOU

8      WILL HAVE 8 AND 12.

9          SO YOU WOULD HAVE 20 PEREMPTORIES, AND YOU WOULD NEED 16,

10     SO WE WOULD NEED 36.  THAT WILL BE A VERY TIGHT VENEER IN HERE,

11     BUT WE WILL MAKE THAT HAPPEN.

12         OKAY.  SO THAT'S FINE.  WE ARE GOING WITH FOUR ALTERNATES.

13         OKAY.  CAN I SET A DEADLINE FOR YOU ALL TO SUBMIT ANY

14     STIPULATIONS, FOR EXAMPLE, ON THE CUSTODIANS OF RECORD,

15     PERHAPS?  AND IT CAN BE CLOSE TO THE TRIAL DATE IF YOU WANT TO

16     SET, FOR EXAMPLE, MAYBE MARCH 9TH, WOULD THAT BE ACCEPTABLE FOR

17     FILING ANY STIPS?

18             MR. NEDROW:  YES.  THANK YOU, YOUR HONOR.

19         AND I APPRECIATE THE ISSUE COMING BACK UP, BECAUSE THERE'S

20     ANOTHER WRINKLE ON THAT WHICH IS, OF COURSE IT'S THE DEFENSE'S

21     DECISION WHETHER THEY CAN STIPULATE AND IF THEY ARE NOT ABLE TO

22     FOR WHATEVER REASON, THE GOVERNMENT MAY ACTUALLY WANT TO FILE,

23     WE DON'T WANT TO CATCH THE COURT TOO SHORT ON THIS, AND I'M

24     JUST OFFERING THIS, IF I MAY, BUT NOT TO INTRODUCE INTO

25     EVIDENCE, BUT JUST SO THE COURT UNDERSTANDS, THESE ARE 902(11)
```

1    DECLARATIONS WE HAVE ACTUALLY GOTTEN FOR THE RECORD.  SO WE

2    APPROACHED THIS WITH THE INTEREST OF A STIPULATION, BUT WE

3    BELIEVE UNDER 902(11) WE PROVIDED NOTICE.  WE ACTUALLY CAN FILE

4    A MOTION WITH THE COURT, AND THE COURT UNDER THE LAW, CAN ORDER

5    THE ADMISSIBILITY OF THE RECORDS, FRANKLY, ABSENT A

6    STIPULATION.

7        SO WHAT I'M SUGGESTING IS IF WE CAN'T WORK OUT A

8    STIPULATION, WE MAY ASK THE COURT THE OPPORTUNITY TO FILE THAT

9    MOTION AND HAVE THAT CONSIDERED BEFORE TRIAL.  AND WE DON'T

10   WANT TO PUT THE COURT TOO SHORT AT TRIAL, IN TERMS OF THAT.

11           THE COURT:  RIGHT.  OKAY.

12       SO THEN LET'S ADVANCE, DO YOU WANT TO TAKE THESE BACK AND

13   INCLUDE THEM WITH YOUR MOTION IF YOU END UP NEEDING THAT.  I

14   HOPE YOU CAN REACH A STIPULATION AND NOT HAVE TO BURN THE COURT

15   WITH MORE UNNECESSARY OR LESS NECESSARY MOTIONS.

16           MR. NEDROW:  SO IF WE COULD MAYBE HAVE A DATE, AS THE

17   COURT SUGGESTED, FOR THE STIP, MAYBE A WEEK EARLIER.

18           THE COURT:  NO, EVEN EARLIER THAN THAT.  I'M GOING TO

19   BE IN THE MIDDLE OF TRIAL MARCH 2ND THROUGH THE 10TH.

20           MR. NEDROW:  OH, I'M SORRY, I MEANT A WEEK EARLIER

21   THAN THE COURT HAD INDICATED.  AND THEN IF WE DON'T HAVE A

22   STIP, WE WILL FILE THE MOTION WITH THE DECLARATIONS AND THEN

23   THE COURT CAN EVALUATE THAT PRIOR TO TRIAL, SO WE KNOW IF WE

24   NEED TO HAVE THE CUSTODIANS PRESENT OR NOT.

25           THE COURT:  OKAY.  WHAT IF WE HAD THE DEADLINE FOR

```
1         STIPULATIONS BE FEBRUARY 19TH?

2              MR. NEDROW:  YES, THAT'S FINE.

3         THANK YOU, YOUR HONOR.

4              THE COURT:  OKAY.  AND THEN IF YOU CAN'T GET A

5    STIPULATION, THEN YOU WILL FILE A MOTION ON THAT DATE, OR WHEN?

6              MR. NEDROW:  IF WE AT LEAST HAVE A COUPLE DAYS AFTER,

7    BUT I THINK WE COULD FILE IT BY THE 21ST OR THE 24TH, OR ANY OF

8    THOSE DATES IS FINE.

9              THE COURT:  LET'S SAY THE 21ST.

10             MR. NEDROW:  THANK YOU.  THAT WOULD BE FINE.

11             THE COURT:  AND GIVE ME THAT STATUTE NUMBER AGAIN,

12   PLEASE.

13             MR. NEDROW:  I BELIEVE IT'S FEDERAL RULE OF EVIDENCE

14   902(11).

15             THE COURT:  OKAY.  ALL RIGHT.  JUST SO I KNOW TO KEEP

16   THAT ON TRACK AS POTENTIALLY COMING.  BUT I HOPE NOT,

17   MS. KEITH.

18        SO ATTORNEY VOIR DIRE, CAN I LIMIT YOU ALL TO 15 MINUTES

19   PER SIDE?

20             MS. HARRIS:  UMM --

21             MR. NEDROW:  YES, YOUR HONOR.

22             MS. HARRIS:  YES.

23             THE COURT:  WHAT ABOUT MS. KEITH?

24             MS. KEITH:  SUBMITTED.

25             THE COURT:  OKAY.  ALL RIGHT.
```

1          AND I TRY TO INCORPORATE AS MUCH OF YOUR VOIR DIRE

2     QUESTIONS AS I CAN, OR AT LEAST THE TOPICS, EVEN IF IT'S NOT

3     THE SPECIFICALLY WORDED QUESTION.

4          OKAY.  LIST OF ENTITIES AND INDIVIDUALS.  THIS SHOULD

5     INCLUDE ALL OF THE DEFENDANTS -- ACTUALLY THERE AREN'T --

6     THERE'S ONLY ONE DEFENDANT IN THIS CASE, SO LET ME TAKE THAT

7     OUT, BUT ALL COUNSEL WHO WORKED ON THE CASE.

8          AND THEN IF THERE ARE ANY PARTICULAR DATES OR LOCATIONS

9     THAT I SHOULD HIGHLIGHT TO THE JURY DURING JURY SELECTION, I

10    WOULD LIKE TO KNOW THAT AS WELL.

11         AND I WOULD LIKE YOU TO INCLUDE IN YOUR JOINT LIST, A

12    GRAPHIC CALENDAR THAT SHOWS THE DATES OF TRIAL.  I THINK THAT

13    HELPS THE JURORS TO BE ABLE TO ASSESS WHETHER THEY ARE

14    AVAILABLE DURING JURY SELECTION.

15         SO WHEN CAN YOU DO THAT?  IT SHOULD BE ALL COUNSEL,

16    INVESTIGATORS, PARALEGALS, WHOEVER HAS WORKED AND TOUCHED THIS

17    CASE, ALL POTENTIAL WITNESSES, ET CETERA, ANY ENTITIES, NCMEC,

18    YOU WOULD HAVE TO INCLUDE ALL RELEVANT ENTITIES, YAHOO.  WHEN

19    CAN YOU FILE THAT?  I WOULD LIKE YOU TO FILE IT, AND I WOULD

20    ALSO LIKE YOU TO E-MAIL A MICROSOFT WORD VERSION TO MS. DIBBLE.

21              MR. NEDROW:  YES.  THANK YOU, YOUR HONOR.

22         AND IF I UNDERSTAND THE COURT CORRECTLY, THIS WOULD BE A

23    JOINT SUBMISSION BY THE PARTIES, CORRECT?

24              THE COURT:  YES.

25              MR. NEDROW:  SO WE WILL CONFER WITH MS. KEITH ON

1       THAT.

2              JUST TO MAKE SURE I'VE GOT IT STRAIGHT, WE WILL HAVE A

3       CALENDAR AT THE TOP OF THE DOCUMENT?

4                     THE COURT:  YOU CAN DO IT AT THE END.

5                     MR. NEDROW:  JUST LIST THE ENTITIES AND INSERT THE

6       CALENDAR.

7                     THE COURT:  JUST SAY JOINT LIST OF INDIVIDUALS AND

8       ENTITIES.  AND, YOU KNOW, AT THE TOP, YOU WILL JUST SAY,

9       INDIVIDUALS, AND YOU JUST LIST THEM ALPHABETICALLY BY LAST

10      NAME.  I DON'T WANT THEM IDENTIFIED BY WHERE THEY WORK.

11                    MR. NEDROW:  RIGHT.

12                    THE COURT:  AND THEN JUST, YOU KNOW, ENTITIES, AND

13      LIST THEM ALPHABETICALLY.  AND THEN AT THE END, HOPEFULLY JUST

14      A MARCH CALENDAR THAT MARKS THE DAYS OF TRIAL.

15                    MR. NEDROW:  OKAY.

16                    THE COURT:  AND WHAT WE DO IS WE PLACE THEM ON

17      EVERYONE'S CHAIRS FOR THE JURORS THAT ARE CALLED INTO THE JURY

18      BOX SO THAT THEY CAN -- IT TAKES ME TOO LONG TO READ EVERYONE'S

19      NAME, SO THEY CAN JUST READ THE LIST AND DETERMINE IF THEY KNOW

20      ANYONE.

21             SO IF THEY DO, THEN THEY LET YOU KNOW, I KNOW SO-AND-SO.

22      AND IF IT'S A VERY COMMON NAME, I WILL ASK YOU, IS THIS THE

23      SAME PERSON?  USUALLY IT'S NOT, BUT THEN THEY CAN LET YOU KNOW

24      WHAT THEIR RELATIONSHIP IS, HOW OFTEN THEY SEE THEM AND WHAT

25      NOT.

```
 1              MR. NEDROW:  THANK YOU, YOUR HONOR.

 2         WE WILL CONFER WITH COUNSEL ON THAT.  AND I WAS GOING TO

 3    SUGGEST THE 19TH.

 4              THE COURT:  OF FEBRUARY?  THAT'S FINE.

 5              MR. NEDROW:  YES, IF THAT WORKS FOR EVERYBODY.

 6              THE COURT:  MS. KEITH, DOES THAT WORK FOR YOU?

 7              MS. KEITH:  THAT'S FINE.

 8              THE COURT:  ALL RIGHT.  MICROSOFT WORD VERSION,

 9     PLEASE.

10         OKAY.  I'M GOING TO SAVE ANY SUBSTANTIVE INSTRUCTIONS FOR

11    LATER BECAUSE WE HAVE THIS ISSUE OF COUNTS 1 AND 2 BEING

12    SUPERSEDED.

13         DO YOU WANT ME TO INCLUDE THE STIPULATED TESTIMONY AS

14    STIPULATIONS OF FACT INSTRUCTIONS IN THE PRELIMINARIES, OR NOT?

15              MR. NEDROW:  YES, YOUR HONOR.

16         WELL, ACTUALLY, IF YOU MAYBE PUT IT IN AS A PLACEHOLDER

17    DEPENDING ON WHETHER OR NOT WE'VE REACHED A STIPULATION.  I

18    SUPPOSE IF THERE'S NO STIPULATION, THEN THERE'S NO NEED AS A

19    PRELIMINARY MATTER.  BUT IF WE HAVE REACHED ONE, IT WOULD MAKE

20    SENSE TO INCLUDE IN THE PRELIMINARIES.

21              MS. KEITH:  I WOULD AGREE WITH THAT.

22              THE COURT:  ALL RIGHT.

23         WELL, IT SOUNDS LIKE IT WOULD THEN MAKE SENSE FOR US TO

24    WAIT AT LEAST PAST THE FEBRUARY 19TH STIPULATION DEADLINE TO

25    FIGURE OUT WHETHER I NEED TO GIVE THOSE.
```

1           MR. NEDROW:  YES.

2           THE COURT:  SO I WILL WAIT UNTIL AFTER FEBRUARY 19TH

3      TO FILE THEM, AND THEN YOU ALL CAN OBJECT IF YOU HAVE ANY

4      OBJECTIONS.

5           OKAY.  SO MY LAST ISSUE, AND THEN WE ARE DONE, IS I

6      THOUGHT THE GOVERNMENT'S MOTION IN LIMINE NUMBER 2 AND THE

7      DEFENDANT'S OPPOSITION TO THAT, RAISED SOME ISSUES THAT I WOULD

8      LIKE TO HEAR FROM THE GOVERNMENT ON.

9           MS. HARRIS:  YES, YOUR HONOR.

10          THE COURT:  THAT WAS CO-CONSPIRATOR STATEMENTS.  I

11     WOULD LIKE TO KNOW, CONSPIRACY HAS NOT BEEN CHARGED, ALTHOUGH

12     THAT WASN'T THE ISSUE THAT THE DEFENSE RAISED, BUT THE DEFENSE

13     RAISED THE FACT THAT WE DON'T KNOW THE IDENTITIES OF THESE

14     CO-CONSPIRATORS AND SO THEY CAN'T BE CROSS-EXAMINED, ET CETERA.

15          I WOULD LIKE YOU TO RESPOND TO THE DEFENDANT'S OPPOSITION

16     ON THAT POINT.  I DENIED THAT MOTION IN LIMINE WITHOUT

17     PREJUDICE, BUT I JUST WANT TO HAVE THE LAW SO THAT I CAN ISSUE

18     RULINGS DURING TRIAL IN AN INFORMED WAY.

19          SO WHAT'S YOUR RESPONSE TO THAT?  BECAUSE I DON'T THINK

20     I'VE HAD A TRIAL WHERE -- I MEAN, OBVIOUSLY THERE ARE ALWAYS

21     SOME UNINDICTED CO-CONSPIRATORS THAT WE DON'T KNOW.  BUT WE'VE

22     GENERALLY HAD A CONSPIRACY CHARGE AND WE'VE GENERALLY HAD THE

23     CO-CONSPIRATORS INDICTED ALONG WITH THE DEFENDANT, SO IT'S BEEN

24     A LITTLE BIT MORE CLEAR.

25          AND SO I WOULD LIKE YOU TO JUST RESPOND TO THEIR ISSUES.

1           MS. HARRIS:  YES, YOUR HONOR.

2           THE COURT:  WHEN CAN YOU DO THAT?

3           MS. HARRIS:  SO I CAN, AGAIN, WITH THE STATEMENTS

4    THING, I CAN SORT OF GIVE A BRIEF OVERVIEW OF WHAT OUR SORT OF

5    THEORY IS, AND THEN ALSO I CAN RESPOND IN WRITING.

6        SO MY RESPONSE ON THE -- I'M HESITANT TO PUT THEM ON THE

7    SAME DAY, YOUR HONOR.

8           THE COURT:  OKAY.  THAT'S FINE.

9        AND I'M NOT ACTUALLY GOING TO ISSUE A RULING IN ADVANCE OF

10   TRIAL.  THIS IS JUST SO THAT I HAVE THE TOOLS.

11          MS. HARRIS:  RIGHT.

12          THE COURT:  SO THAT I CAN RULE DURING TRIAL IF

13   THERE'S AN OBJECTION, OKAY.

14       SO I'M NOT GOING TO ISSUE A WRITTEN RULING BEFORE THE

15   TRIAL.

16          MS. HARRIS:  COULD WE HAVE UNTIL THE 21ST?

17          THE COURT:  THAT'S FINE.

18          MS. HARRIS:  YEAH.

19          THE COURT:  I MEAN, IF YOU EVEN WANTED UNTIL THE 24TH

20   OR.

21          MS. HARRIS:  THAT'S FINE.

22          THE COURT:  26TH, THAT WOULD PROBABLY BE FINE.  BUT

23   THE 21ST WOULD BE GREAT, OR YOU WANT TO DO THE 24TH?

24          MS. HARRIS:  THE 24TH IS FINE.

25       AND TO BE CLEAR, SO I WAS IN COURT EARLIER THIS MORNING

1   WHEN YOU MENTIONED THAT, YES, IT WOULD HAVE BEEN HELPFUL TO

2   HAVE THE EXHIBIT LIST BEFORE THE MOTIONS IN LIMINE SO THAT WE

3   COULD HAVE DETERMINED WHO WERE THE SPEAKERS WERE, WHAT THE

4   DATES OF THE CHATS WERE, AND EVERYTHING.

5          BECAUSE I JUST WANT TO MAKE CLEAR, THE GOVERNMENT HAS PUT

6   TOGETHER THE CHATS IN CHRONOLOGICAL ORDER.  WE HAVE RE-BATES

7   THEM SO THEY NOW HAVE SEQUENTIAL BATES NUMBERS AND WE PRODUCED

8   THOSE CHATS TO THE DEFENSE.

9          SO THE CHATS IDENTIFY, WITHIN THEMSELVES, ESPECIALLY THE

10  ONES THAT INVOLVE WESTERN UNION TRANSACTIONS, WHO THOSE PEOPLE

11  ARE, THE CONFIRMATION NUMBERS THAT THEY USED TO PICK UP THE

12  MONEY.  THE WESTERN UNION RECORDS ALSO IDENTIFIED THEM BY NAME,

13  BY CITY THAT THEY LIVE IN, BY THE AMOUNTS OF MONEY PICKED UP BY

14  THE DATE THEY PICKED UP, AND IN SOME CASES, BY THEIR DATE OF

15  BIRTH.

16         SO THERE IS, FIRST OF ALL, A BASIS TO SAY THERE ARE ACTUAL

17  INDIVIDUALS HE ATTEMPTED TO CONSPIRE WITH TO PRODUCE THESE

18  LIVE-STREAMED WEB ABUSE SHOWS.

19         BUT ONE THING THAT I WANTED TO MAKE CLEAR IS THAT'S NOT

20  THE ONLY THEORY UPON WHICH THE ADMISSIBILITY OF THESE CHATS

21  COULD BE ARTICULATED.  CO-CONSPIRATOR STATEMENTS AND THE

22  DEFENDANT'S OWN STATEMENTS IS ONE THEORY, BUT I'VE HAD THE

23  OPPORTUNITY NOW TO LOOK AT OTHER SIMILAR CASES THAT HAVE

24  CHARGED ATTEMPTS TO PRODUCE CHILD PORNOGRAPHY, SPECIFICALLY BY

25  WEB CAM, AND YOU KNOW, THERE'S A VERY GOOD ARGUMENT THAT THESE

1    STATEMENTS OF THESE OTHER PEOPLE DON'T NECESSARILY EVEN NEED TO

2    BE ADMITTED FOR THEIR TRUTH, THEY ARE DIRECT EVIDENCE OF THE

3    DEFENDANT'S INTENT AND BELIEF, WHICH IS WHAT WE NEED TO PROVE

4    HERE AS AN ELEMENT OF BOTH THE OFFENSES CHARGED IN COUNT 1 AND

5    COUNT 2.

6            THE COURT:  SO YOU ARE SAYING IT'S LIKE STATE OF

7    MIND.

8            MS. HARRIS:  EXACTLY.

9        AS THE COURT IS AWARE FROM THE -- LET'S SEE, MEEK, WAS A

10   BIG CASE, UNITED STATES V. MEEK, THAT'S A NINTH CIRCUIT --

11           THE COURT:  WE DON'T HAVE TO HAVE ORAL ARGUMENT.

12           MS. HARRIS:  SURE.

13           THE COURT:  WHY DON'T YOU PUT IT IN WRITING, OKAY.  I

14   WANT YOU TO ESTABLISH IT IN WRITING BECAUSE, YOU KNOW, I

15   HAVEN'T DONE A CHILD PORN TRIAL BEFORE, SO I HAVEN'T SEEN THAT

16   ISSUE BEFORE, SO IF YOU CAN POINT ME TO THE CASES WHERE THIS

17   HAS BEEN BROUGHT UP.

18           MS. HARRIS:  YES, YOUR HONOR.  WE WILL, IN OUR

19   BRIEFING.

20           THE COURT:  I ALSO WONDER WHETHER IT WAS HEARSAY OR

21   NOT.  BUT I WOULD LOVE TO KNOW A DEFINITIVE ANSWER SO I CAN

22   MAKE A CLEAN RECORD.

23           MS. HARRIS:  YES, YOUR HONOR.

24       AND IN OUR BRIEFING, WE WILL SPECIFY OUR THEORIES FOR

25   ADMISSION.  CHATS EITHER AS CONSPIRATOR STATEMENTS OR AS NON

1      HEARSAY STATEMENTS SUPPORTING AS DIRECT EVIDENCE OF THE

2      DEFENDANT'S BELIEF AND INTENT.

3              THE COURT:  AND YOU KNOW, IT WOULD HELP IF YOU COULD

4      FOR THE -- YOU DON'T HAVE A BIG EXHIBIT LIST.

5              MS. HARRIS:  YEAH.

6              THE COURT:  IF YOU COULD, FOR EACH CHAT, SAY THIS ONE

7      WE WILL INTRODUCE FOR THIS, AND THIS ONE WE WILL INTRODUCE FOR

8      THAT.

9              MS. HARRIS:  WOULD THE COURT LIKE TO HAVE COPIES OF

10     THE CHATS TO REVIEW IN ADVANCE?

11             THE COURT:  YEAH, I DON'T HAVE YOUR EXHIBIT BINDERS,

12     ARE YOU -- DO YOU WANT TO GIVE THEM TO ME SOONER SO I CAN HAVE

13     ACCESS TO IT, OR DO YOU JUST WANT TO PRODUCE THE CHATS EARLY?

14             MS. HARRIS:  SO THAT THE COURT CAN BE INFORMED ABOUT

15     THE CONTENT OF THE CHATS.  SOME OF THEM ARE SHORT, BUT OTHERS

16     OF THEM ARE ACTUALLY QUITE LONG.

17         IF THE COURT WISHES TO FAMILIARIZE ITSELF WITH THE NATURE

18     OF THOSE CHATS AND STATEMENTS MADE IN THE CHATS, THAT MIGHT

19     HELP TO SPEED THINGS ALONG DURING THE TRIAL.

20             THE COURT:  WELL, UNDER MY STANDING ORDER, YOU ARE

21     SUPPOSED TO GIVE ME YOUR EXHIBIT BINDERS, I CAN'T REMEMBER WHAT

22     THE DEADLINE IS.  I THINK IT'S FINE.  GIVE ME YOUR EXHIBIT

23     BINDERS ACCORDING TO MY STANDING ORDER ON JURY TRIALS, BUT GO

24     AHEAD AND GIVE ME AT LEAST YOUR DOCUMENTS, SO I CAN AT LEAST

25     LOOK AT THE CASES IN ADVANCE.

```
 1              MS. HARRIS:  YES, YOUR HONOR.

 2              THE COURT:  THAT YOU CITE.

 3         OKAY.  I DIDN'T HAVE ANYTHING ELSE.  DID ANYONE HAVE

 4    ANYTHING ELSE?

 5              MR. NEDROW:  NO, YOUR HONOR, EXCEPT FOR THE VERY LAST

 6    POINT OF, I THINK THE EXHIBIT BINDERS MIGHT BE DUE AFTER THE

 7    24TH, AND IF THEY ARE, I MIGHT BE WRONG ON THAT, BUT IF THEY

 8    ARE, IS IT OKAY IF WE ATTACH SOME OF THE CHATS FOR THE COURT TO

 9    CONSIDER?

10              THE COURT:  YEAH, BUT HOW BIG IS THIS?

11              MR. NEDROW:  WELL, SOME OF THEM ARE SHORT AND SOME OF

12    THEM ARE A LITTLE BIT LONG.

13              MS. HARRIS:  WE CAN, THE SAME WAY WE HAVE DONE BEFORE

14    WITH THE RECORDINGS THAT YOU HAVE, IS WE JUST PUT THEM ON A

15    DISK AND SEND THEM TO THE COURT FOR THE COURT TO CONSIDER --

16              THE COURT:  NO, I DON'T THINK THAT'S NECESSARY.

17         I MEAN, I'M HOPING THAT YOU WILL MORE POINT ME TO LEGAL

18    THEORIES THAT WOULD ADDRESS THE OBJECTION.  AND IF YOU CAN DO

19    THAT, THEN I CAN GO LOOK AT THOSE CASES THAT YOU CITE.  AND IF

20    THAT GIVES ME THE FRAMEWORK, THEN I WILL KNOW HOW TO RULE ON

21    ANY SPECIFIC OBJECTION.  AND I'M HAPPY TO WAIT UNTIL I ACTUALLY

22    GET THE EXHIBIT BINDERS TO ACTUALLY READ THEM.

23         OKAY.  ALL RIGHT.  I DIDN'T HAVE ANYTHING ELSE.  DOES

24    ANYONE ELSE HAVE ANYTHING ELSE?

25              MS. KEITH:  I'M SORRY, DOES THE COURT WISH FOR
```

1    OBJECTIONS TO BE LODGED AFTER THAT DOCUMENT IS FILED?

2              THE COURT:  NO, NO.  YOU WILL HAVE TO LODGE

3    OBJECTIONS AT TRIAL.

4              MS. KEITH:  OKAY.

5              THE COURT:  YEAH.  TO SPECIFIC --

6              MS. KEITH:  NO, NO, AS FAR AS ANTICIPATED.  ANYWAY,

7    THAT'S FINE, YOUR HONOR.

8              THE COURT:  NO, NO.  YOU ALL HAVE GOTTEN SO MANY

9    RULINGS ALREADY, I THINK YOU ARE GETTING GREEDY HERE.  ANY

10   OTHER OBJECTION WILL HAVE TO BE MADE TO A SPECIFIC EXAMINATION

11   QUESTION OR A SPECIFIC DOCUMENT AND I WILL RULE ON IT AT THAT

12   TIME.

13             MR. NEDROW:  GREAT.  ALL RIGHT.

14             THE COURT:  ALL RIGHT.  WHAT ELSE?  ANYTHING ELSE?

15             MR. NEDROW:  I BELIEVE WE ARE GOOD.

16             THE COURT:  ALL RIGHT.  THANK YOU.

17          (THE PROCEEDINGS WERE CONCLUDED AT 1:27 P.M.)

18

19

20

21

22

23

24

25

1

2

3

4                       **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24    _____
      SUMMER A. FISHER, CSR, CRR
25    CERTIFICATE NUMBER 13185          DATED: 4/3/20