UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOHNNY RAY WOLFENBARGER,<br>Defendant. | Case No. 16-CR-00519-LHK-1<br>**ORDER DENYING MOTION TO SUPPRESS STATEMENTS**<br>Re: Dkt. No. 265 |

Defendant Johnny Ray Wolfenbarger ("Defendant") moves to suppress statements made during interviews with Special Agent Christopher Marceau on August 2, 2016 and August 31, 2016. ECF No. 265. Having considered the filings of the parties, the relevant law, and the record in this case, the Court DENIES Defendant's motion to suppress.

## I. BACKGROUND

### A. Factual Background

In the instant case, Defendant is charged with three counts: Count One, Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a); Count Two, Attempted Coercion and Enticement of Minors in violation of 18 U.S.C. § 2422(b); and Count Three, Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2). ECF No. 268 (the "Superseding

Indictment").

In the instant motion, Defendant seeks to suppress statements made by Defendant during the course of two interviews with FBI Special Agent Christopher Marceau ("Special Agent Marceau") on August 2, 2016, and August 31, 2016, respectively.

On August 2, 2016, Defendant arrived at San Francisco International Airport following a flight from the Philippines (the "August 2, 2016 interview"). Mot. at 1–2. Defendant was referred for a customs inspection, which began at approximately 6:45 p.m. and lasted until approximately 8:10 p.m, at which point Defendant met Special Agent Marceau. ECF No. 286-1 ("Marceau Decl.") at ¶ 3. Prior to engaging in any substantive questioning, Special Agent Marceau advised Defendant verbally and in writing of Defendant's *Miranda* rights, which Defendant expressly waived by signing the *Miranda* waiver form. *See* ECF No. 286-3. The interview lasted until approximately 9:20 p.m. *Id.* at ¶ 6.

On August 31, 2016, Defendant and Special Agent Marceau met again in a public parking lot (the "August 31, 2016 interview"), following an arrangement to do so via text messages. *Id.* ¶ 8. The parties dispute who instigated the meeting. *See* Reply at 6. During this meeting, Defendant provided "additional information about his Yahoo accounts, disclosed his passwords, and signed a second form authorizing agents to assume his online identity." *Id.* at ¶ 9.

**B. Procedural History**

The evidentiary issues in this case have been extensively litigated. For example, Defendant has previously filed four motions to compel discovery, ECF Nos. 28, 85, 143, 186, which the Court largely denied. Moreover, in addition to the instant motion to suppress, ECF No. 265, Defendant has also filed three prior motions to suppress. ECF Nos. 49, 183, 184. Two of those motions sought suppression of evidence unrelated to the instant motion, *see* ECF Nos. 183, 184, and the Court also denied those motions, ECF No. 220.

However, Defendant's first motion to suppress sought suppression of the very same statements at issue in the instant motion: namely, the statements Defendant made during the August 6, 2016 and August 31, 2016 interview. Specifically, on February 28, 2018, Defendant

2

filed a motion to suppress Defendant's statements as involuntarily made.  ECF No. 49.  Specifically, Defendant stated under penalty of perjury that he had affirmatively requested an attorney but that Special Agent Marceau ignored his request.  ECF No. 49-1 at ¶ 27.  In opposition to the motion to suppress, the government denied that Defendant requested counsel during the August 2, 2016 interview, ECF No. 60 at 6, and filed an audio recording of the August 2, 2016 interview during which Defendant did not request counsel, ECF No. 60-2.  On reply, Defendant acknowledged that the recording does not substantiate his claim that he requested counsel and instead argued that Defendant requested counsel in an unrecorded portion of the August 2, 2016 interview.  ECF No. 71 at 2.  As a result of Defendant's representations, the Court set an evidentiary hearing to allow Special Agent Marceau and Defendant to testify about whether Defendant had in fact requested counsel.  Less than 24 hours before the evidentiary hearing, Defendant withdrew his motion to suppress with no explanation.  ECF No. 73

Two years later, shortly before trial was set to begin,[1] Defendant renewed his motion to suppress.  Specifically, on January 29, 2020, in response to a government motion in limine seeking to admit Defendant's statements into evidence at trial, Defendant requested that the Court "make a pretrial determination of admissibility and voluntariness of" Defendants' statements during questioning on August 2, 2016 as required by 18 U.S.C. § 3501(a)."  ECF No. 245 at 1–2.  The Court explained that the issue would be inappropriate to resolve in a motion in limine and ordered Defendant to clarify his position with respect to the arguments that he originally made in his February 28, 2018 motion to suppress.  ECF No. 258.

On February 4, 2020, Defendant responded to the Court's inquiry by filing the instant motion to suppress.  ECF No. 265 ("Mot.").  Defendant explained that the "present challenge is not based on his prior declaration, and he is not submitting a declaration with this motion.  Accordingly, the motion can be resolved on the present factual record, without hearing testimony

---

[1] The jury trial was continued first because of the government's superseding of the indictment then later because of COVID-19.  The jury trial is currently scheduled for August 6, 2021.  ECF No. 319.

from Mr. Wolfenbarger." *Id.* at 2.  Defendant further explained that the "present challenge rests on the content of the interrogations which the government now seeks to introduce at trial.  This content is reflected in audio recordings of the interrogations previously submitted by the government, as well as undisputed surrounding facts.  Mr. Wolfenbarger does not seek to resubmit his withdrawn declaration."  Mot. at 2.

The Court allowed Defendant to file a supplemental brief in support of his motion, which Defendant filed on February 6, 2020.  ECF No. 270 ("Supp. Br.").  On March 13, 2020, the government filed an opposition, ECF No. 286 ("Opp'n"), and on April 1, 2020, Defendant filed a reply, ECF No. 295 ("Reply").

The parties agreed that no evidentiary hearing would be necessary.  ECF No. 266 at 2.  Although the government filed a preliminary transcript of the August 2, 2016 and August 31, 2016 interviews, the parties dispute the accuracy of the transcript at certain portions.  *Compare* ECF No. 286-9 ("Aug. 2 Tr."), *with* ECF No. 295-1 (Defendant's list of discrepancies).  Having listened to the audio recordings, the Court finds that they are at times faint and difficult to hear.  Because the burden is on the government to prove voluntariness, the Court will assume that Defendant's transcription of the disputed portions is accurate and will note those discrepancies where applicable in the instant order.

## II.    LEGAL STANDARD

### A.  *Miranda* Warnings

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that certain warnings must be given before a suspect's statements made during a custodial interrogation can be admitted into evidence.  *Miranda* protections are triggered "only where there has been such a restriction on a person's freedom as to render him 'in custody.'"  *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)).  "[I]n custody" means "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam).  It requires that "a reasonable person have felt he or she was not at liberty to terminate the

interrogation and leave," as judged by the totality of the circumstances. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995), *superseded on other grounds by statute*, 28 U.S.C. § 2254(d).

### B. Fifth Amendment Voluntariness

"The Constitution demands that confessions be made voluntarily." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003) (citing *Lego v. Twomey*, 404 U.S. 477, 483–85 (1972)). "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988). "Involuntary or coerced confessions are inadmissible at trial because their admission is a violation of a defendant's right to due process . . . ." *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011) (citations omitted).

"The due process test takes into consideration 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" *Dickerson v. United States*, 530 U.S. 428, 4334 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "Courts must weigh . . . the relevant circumstances, and weigh them not in the abstract but against the power of resistance of the person confessing." *United States v. Preston*, 751 F.3d 1008, 1017 (9th Cir. 2014) (en banc) (quotation marks omitted). "The factors to be considered include the degree of police coercion; the length, location and continuity of the interrogation; and the defendant's maturity, education, physical condition, mental health, and age." *Brown*, 644 F.3d at 979. Courts also consider "whether the defendant was properly advised of his *Miranda* rights." *Hall v. Scribner*, 619 F. Supp. 2d 823, 846 (N.D. Cal. 2008); *DeWeaver v. Runnels*, 556 F.3d 995, 1003 (9th Cir. 2009) (considering the effect of *Miranda* warnings and a valid waiver on the voluntariness of a confession). There is "no talismanic definition of 'voluntariness,' mechanically applicable to the host of situations where the question has arisen." *Schneckloth*, 412 U.S. at 224. Rather, the "pivotal question" is whether, considering the totality of circumstances, "the defendant's will was overborne when the defendant confessed." *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993); *Mickey v. Ayers*, 606 F.3d 1223, 1233 (9th Cir.

2010) ("We look to see whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." (quotation marks omitted)).

In this way, the voluntariness test serves two values. On the one hand, the voluntariness test accords with "the set of values reflecting society's deeply felt belief that the criminal law cannot be used as an instrument of unfairness." *Schneckloth*, 412 U.S. at 225. At the same time, however, the test serves "the acknowledged need for police questioning as a tool for the effective enforcement of criminal laws." *Id.* In this regard, the Ninth Circuit has held "deception does not render confession involuntary." *Miller*, 984 F.2d at 1031 (citing *Frazier v. Cupp*, 394 U.S. 731, 737-39 (1969)); *United States v. Booker*, 2019 WL 2717275, at *10 (S.D. Cal. June 28, 2019) ("Interrogation of a suspect will necessarily involve some pressure because its purpose is to elicit a confession. . . . Cases analyzing police deception universally observe that deception alone does not render a confession involuntary."). "As long as the decision is a product of the suspect's own balancing of competing considerations, the confession is voluntary." *Miller*, 984 F.2d at 1031 (internal alterations and quotation marks omitted).

Indeed, "[a]n interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988). "[I]n most circumstances, speculation that cooperation will benefit the defendant or even promises to recommend leniency are not sufficiently compelling to overbear a defendant's will." *United States v. Harrison*, 34 F.3d 886, 891 (9th Cir. 1994). Furthermore, "[c]ommon sense may indicate that a suspect's recognition of the potential consequences of his or her crime may create incentives for cooperation. But there is nothing wrong with that. . . . Those who do a crime may have to pay in time; and we do not hesitate to say that law enforcement may bring this to the suspect's attention." *United States v. Okafor*, 285 F.3d 842, 847 (9th Cir. 2002); *see also United States v. Brandon*, 633 F.2d 773, 777 (9th Cir. 1980) ("Nor do we agree that a realistic description of an accused's predicament created by his violation of the criminal law, called to his attention to obtain

his cooperation with Government agents, will vitiate his consent."); *United States v. Bautista-Avila*, 6 F.3d 1360, 1365 (9th Cir. 1993) ("[A] recitation of the potential sentence a defendant might receive does not render a statement involuntary." (citation and internal quotation marks omitted)); *United States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003) ("Reciting potential penalties or sentences does not constitute coercion."); *Platas v. Scribner*, 713 Fed. App'x 727, 728 (9th Cir. 2018) (holding confession voluntary even though officers "promised to request that murder charges not be brought against" the defendant if the defendant cooperated and stated that otherwise, absent cooperation, defendant "could get the death penalty").

On the other hand, while "an agent's promise to communicate a suspect's cooperation to the prosecutor does not render a subsequent confession involuntary, a suspect's will may be overborne if this promise is accompanied by threats or other coercive practices." *Guerrero*, 847 F.2d at 1366 n.2. "Also, threatening to inform the prosecutor of a suspect's refusal to cooperate violates her fifth amendment right to remain silent." *Id.*

"Ultimately, 'the admissibility of a confession turns as much on whether the techniques for extracting the statements, as applied to *this* suspect, are compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means as on whether the defendant's will was in fact overborne.'" *Preston*, 751 F.3d at 1020 (quoting *Miller v. Fenton*, 474 U.S. 104, 116 (1985)). "The [G]overnment must prove that a confession [was] voluntary by a preponderance of the evidence." *United States v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004) (quotation marks omitted).

### III. DISCUSSION

Defendant moves to suppress statements from an interview conducted on August 2, 2016 with FBI Special Agent Chris Marceau. Mot. at 1. Defendant also moves to suppress his statements from an interview conducted on August 31, 2016 with Special Agent Marceau as tainted fruit of the August 2, 2016 interview. *See* Supp. Br. at 3.

As explained above, Defendant explained that the "present challenge is not based on his prior declaration, and he is not submitting a declaration with this motion. Accordingly, the motion

can be resolved on the present factual record, without hearing testimony from Mr. Wolfenbarger." *Id.* at 2. Defendant further explains that the "present challenge rests on the content of the interrogations which the government now seeks to introduce at trial. This content is reflected in audio recordings of the interrogations previously submitted by the government, as well as undisputed surrounding facts. Mr. Wolfenbarger does not seek to resubmit his withdrawn declaration." Mot. at 2. The parties further agreed that no evidentiary hearing is necessary. ECF No. 266 at 2. Thus, the Court has only the Government's evidence to consider, and the Court has no factual submission from Defendant other than Defendant's disputes about the accuracy of the transcript of the interviews. *See* ECF No. 295-1.

Having reviewed the audio recordings, Defendant's signed *Miranda* waiver form, and the other evidence submitted in connection with the instant motion, the Court finds that the government has met its burden of proof in establishing that Defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights prior to participating in the August 2, 2016 interview, and that his statements thereafter were made voluntarily. As a result, the Court finds that the statements are admissible, and that the subsequent statements made by Defendant on August 31, 2016 need not be suppressed as tainted fruit. Below, the Court first considers the August 2, 2016 interview before turning to the August 31, 2016 interview.

### A. August 2, 2016 Interview

Defendant argues that his statements from the August 2, 2016 interview are inadmissible because Defendant did not voluntarily waive his *Miranda* rights. Mot. at 3–6. In view of the evidence submitted by the Government, the Court disagrees.

As an initial matter, Defendant mainly argues that Special Agent Marceau's questioning was so coercive as to render Defendant's earlier express waiver of his rights invalid. *See* Supp. Br. at 1. Specifically, as discussed above, prior to engaging in any substantive questioning, Special Agent Marceau advised Defendant verbally and in writing of Defendant's *Miranda* rights, which Defendant waived by signing the *Miranda* waiver form. *See* ECF No. 286-3. Yet, even if Defendant were correct that Special Agent Marceau's questioning tactics were so coercive that

they eventually overcame Defendant's will, Defendant does not identify any such tactics until after 12 minutes into the recording of the August 2, 2016 interview.  *See id.*  By this point, Special Agent Marceau had already confronted Defendant about "trading some online videos of underage children," Aug. 2 Tr. at 10:16–15, Defendant had already admitted to receiving those videos in his email, *id.* at 11:10–11, and Defendant had begun describing how he used Yahoo! Messenger to initiate sexually explicit video chats, *id.* at 15:23–18:17.  Defendant fails to explain why suppression of the full interview, including these statements made before any "coercive" questioning had begun, would be appropriate in light of Defendant's express waiver of his *Miranda* rights.  Thus, even if Defendant's arguments had merit, the Court finds that Defendant's request to suppress is plainly overbroad.

In any event, the Court disagrees with Defendant that any of his statements from the August 2, 2016 interview are inadmissible.  The Court first sets forth the personal characteristics of Wolfenbarger that it considers with respect to voluntariness.  The Court then turns to Defendant's *Miranda* voluntariness challenge followed by Defendant's due process voluntariness challenge.

### 1. Personal Characteristics

Although the parties chose to forgo an evidentiary hearing and instead submitted the instant motion on the papers, the Court can glean the following facts about Defendant from the record before the Court.

In August 2016, at the time of the two interviews in question, Defendant was an adult male of 59 years old.  *See* ECF No. 317 at 4:4–5.  Defendant does not argue that he has any particular vulnerabilities or sensitives—for example, Defendant does not argue that he has any reduced mental capacity or language difficulties.  Indeed, the video and audio recordings and transcript of the August 2016 interviews suggest the opposite.  Throughout the interview, Defendant demonstrated that he understood Special Agent Marceau's statements and questions, and Defendant spoke in clear, fluent English.  The audio recordings and transcript of the August 2, 2016 and August 31, 2016 interviews do not suggest that Defendant's physical condition was

compromised. In sum, the Court has not identified personal characteristics of Defendant that would render him particularly susceptible to police interrogation methods or coercive tactics.

### 2. Voluntariness of *Miranda* Waiver

Defendant first argues that, despite having signed an express waiver of his *Miranda* rights, Special Agent Marceau's conduct during the investigation rendered his waiver involuntary. The Court disagrees.

In *Miranda*, the United States Supreme Court held that a suspect must be warned of his right to remain silent, his right to an attorney, and that any statement he makes may be used against him before the suspect's statements during a custodial interrogation can be admitted into evidence. 386 U.S. at 444. However, a suspect may waive his rights. *Id.* at 475. "To admit an inculpatory statement made by a defendant during custodial interrogation, the defendant's waiver of Miranda rights must be voluntary, knowing, and intelligent." *United States v. Shi*, 525 F.3d 709, 727 (9th Cir. 2008) (citing *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998)) (internal quotation marks omitted). Thus, "[t]he waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Berghuis v. Thompkins*, 560 U.S. 370, 382–83 (2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Whether a defendant's waiver was knowing and intelligent depends on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *North Carolina v. Butler*, 441 U.S. 369, 374 (1979); *accord Edwards v. Arizona*, 451 U.S. 477, 482 (1981).

"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). Once an individual has either expressly or impliedly invoked his *Miranda* rights, such waiver "may be contradicted by an invocation at any time. If the right to counsel or the right to remain silent is invoked at any point during questioning, further interrogation must

10

cease." *Thompkins*, 560 U.S. at 387–88.  A suspect wishing to invoke his right to remain silent or his right to counsel must do so "unambiguously." *Id.* at 381–82.

Here, at the beginning of the August 2, 2016 interview, Special Agent Marceau advised Defendant verbally and in writing of Defendant's Miranda rights, which Defendant waived by signing the *Miranda* waiver form.  *See* ECF No. 286-3 ("Advice of Rights"); Aug. 2 Tr. 3:20–5:15 ("You have the right to remain silent.  Anything you say can be used against you in court.").  The Court finds that Defendant's express waiver of his rights was sufficient because it was knowingly, intelligently, and voluntarily made, and that none of Special Agent Marceau's conduct thereafter sufficiently undermined that waiver.  Defendant did not subsequently attempt to invoke his right to silence or right to counsel.

In the instant motion, Defendant does not challenge the waiver on grounds that his waiver was not made knowingly and intelligently.  *See* Mot. at 1. ("[Defendant] respectfully submits the following motion challenging the voluntariness of his Miranda waiver on August 2, 2016 . . . .").  Considering Defendant's personal characteristics as set forth above, the Court finds that the totality of the circumstances demonstrated by the record shows that Defendant waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  Instead, Defendant challenges the *Miranda* waiver on voluntariness grounds by arguing that Special Agent Marceau's conduct was so "coercive" such that Defendant's "will was overborne." Mot. at 3 (quoting *United States v. Harrison*, 34 F.3d 886, 890 (9th Cir. 1994)).  The Court disagrees.

First, Defendant argues that he "was unexpectedly diverted to secondary inspection and questioned at the border when returning from an international flight." Mot. at 3.  Defendant's conclusory argument on this point is one sentence long.  Regardless, clearing customs and immigration, including secondary inspection, are a routine process when reentering the United States following international travel.  *Cf. United States v. Martinez-Fuerte*, 428 U.S. 543, 563 (1976) (holding that "routine stops" at the United States border and selective referrals to secondary inspection are inherently "reasonabl[e]").  Thus, given the routine nature of questioning at the

11

border, the Court does not find credible the characterization by Defendant's attorney that the questioning was "unexpected." This factor does not weigh against voluntariness.

Second, Defendant also argues that he was never advised of the charges against him either before or after the *Miranda* waiver was obtained. Mot. at 3–4. Yet, as the government points out, there were no charges pending against him at the time, as he was not criminally charged until December 15, 2016, which is over four months after the August 2, 2016 interview. Opp'n 4. "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *See Colorado v. Spring*, 479 U.S. 564, 574 (1987) (citing *Burbine*, 475 U.S. at 422). Instead, the nature of the activity with which he was suspected—conduct related to child pornography—was disclosed soon after the interview began. Aug. 2 Tr. at 10:16–18. Defendant was also advised that Special Agent Marceau had conducted "some lead investigation" and seen the types of "chats" and "videos" that form the basis of the instant criminal indictment. *See id.* at 12:11–16. Although Defendant protests that Special Agent Marceau attempted to "mislead[]" him that Defendant "was not under investigation, because [the] sole goal of interrogation was to help locate children," Defendant himself indicated that he was aware that he could "get in trouble for this, as I—as I could and probably should." Aug. 2 Tr. at 27:13–15. At the end of the interview, Defendant reaffirms that he was aware that he had committed a crime:

> [Marceau]: You understand it's illegal to do that stuff?
>
> [Defendant]: I understand.
>
> [Marceau]: Okay. You understand by downloading those things, looking at those things, all that stuff is illegal?
>
> [Defendant]: Not just illegal, it was immoral, it was—it was not who I want to be.
>
> [Marceau]: It's really good to hear you say that.

*Id.* at 72:1–10. The Court finds that Special Agent Marceau's emphasis on protecting victims and not on Defendant's conduct itself did not overcome Defendant's will and retroactively render his *Miranda* waiver involuntary.

Third, Defendant argues that Special Agent Marceau's "repeated promises of confidentiality" undermined the statement of *Miranda* rights to him. For example, Defendant points to a portion of the interview when Special Agent Marceau states, "What, what we talk about I'll keep between us." ECF No. 295-1 at 2. Critically, the government disputes this transcription of the interview based on the unclear recording. *See* Aug. 2 Tr. 18:19–20 ("What – what we talk about, please (indiscernible)."). Yet, even assuming that Defendant's transcription is correct, Defendant's later statements shows that he did not believe that their conversation would remain confidential, despite any such representations by Special Agent Marceau. For example, Defendant states, "I love my wife and – of course after this comes out, then I'm not going to be married again." Aug. 2 Tr. at 27:1–3. Taking into account Defendant's statements throughout the course of the interview, the Court has no reason to believe that Defendant expected that the entire conversation would be kept confidential in light of Special Agent Marceau's alleged suggestion. The Court again finds that these aspects of the interview did not overcome Defendant's will and render his *Miranda* waiver involuntary.

Fourth, Defendant also argues that Special Agent Marceau engaged in "[c]oercive normalizing of behavior." Mot. at 4. For example, Defendant cites Special Agent Marceau's suggestion that Special Agent Marceau had also had engaged in cyber sex when he was in the army, Aug. 2 Tr. 15:20–21, elaborating, "I would do the same thing," and "[S]ometimes I really liked the way they rubbed themselves," Mot. at 4 (citing Aug. 2. Tr. at 19:4, 6–8). As above, the record belies any argument that such "normalizing" of Defendant's conduct overcame Defendant's will. Defendant repeatedly emphasized that he was aware that his conduct was wrong and illegal. *See, e.g.*, Aug. 2 Tr. at 28:2–4 ("I should have figured out a way to stop, but . . . I didn't. So for that, you know, I . . . myself responsible."); *Id.* at 72:7–8 ("[That stuff was] [n]ot just illegal, it was immoral, it was—it was not who I want to be.").

Finally, Defendant also claims that Special Agent Marceau made coercive promises that there would be no "adverse consequences" if he came clean during the interview. But nothing in the interview suggests that any such promises were made. Instead, Special Agent Marceau used

13

vague language suggesting that the best way forward would be to be upfront during the interview. For example, Defendant cites the following exchange:

> [Marceau]: It makes me feel better because I had an idea of who you are before I knew you. . . .
>
> [Defendant]: I have no—no desire to go back to that person.
>
> [Marceau]: (inaudible) To get away from that person, we first have to put **him** to bed. **Mom won't be happy if she learned about this.**
>
> [Defendant]: **Mmh**
>
> [Marceau]: Your wife won't be happy if she learned about this. The way to put this behind you is to tell me everything now.
>
> [Defendant]: I'll tell you everything I remember, to the best (inaudible).

Reply at 3 (quoting ECF No. 295-1 at 4); Aug. 2 Tr. at 29:6–30:3. Similarly, Defendant also quotes Special Agent Marceau: "I would view anything you do after this moment as a violation of the trust that we built. (inaudible) this situation. **Rather than putting it behind us**, I would view it as a personal issue that we need to work **out with you and that you are basically at fault here**." *Id.* (quoting ECF No. 295-1 at 8). The Court cannot agree that these vague statements can be read as promises that there would be no "adverse consequences," and thus these statements are thus distinguishable from cases in which the government explicitly promised various forms of immunity. *Compare id., with Henry v. Kernan*, 197 F.3d 1021, 1027 (9th Cir. 1999) (finding unduly coercive detective's statement, after the defendant requested an attorney, "Listen, what you tell us we can't use against you right now.")

In sum, the Court cannot agree that any of Special Agent Marceau's questioning was so coercive, even when considered in their totality, to have overcome Defendant's will and to render his express waiver of his *Miranda* rights invalid. Although Special Agent Marceau's statements may have applied pressure on Defendant to speak truthfully, Defendant's statements throughout the interrogation suggest that he maintained a realistic understanding of his predicament: that he had done something "illegal and immoral," Aug. 2 Tr. at 72:7–8; that it was likely to not be kept solely between himself and Special Agent Marceau, *id.* at 27:1–3; and that he [should] get in

14
Case No. 16-CR-00519-LHK-1
ORDER DENYING RENEWED MOTION TO SUPPRESS

trouble for it," *id.* at 27:13–15.  Despite this lucid understanding, Defendant never invoked his *Miranda* rights after having signed a waiver.  Accordingly, the Court finds that no *Miranda* violation occurred, and that Defendant was thus properly advised of his rights but voluntarily chose to waive them.

### 3. Fifth Amendment Voluntariness

Defendant also offers the overlapping argument that his statements were involuntarily made, such that their introduction at trial would violate his Fifth Amendment due process rights. To assess the voluntariness of Defendant's August 2, 2016 interview, the Court first considers the statutory factors set forth at 18 U.S.C. § 3501(b), then turns to the other factors raised by Defendant.

#### a. 18 U.S.C. § 3501 Factors

Under 18 U.S.C. § 3501, courts may admit a confession into evidence "if it is voluntarily given."[2]  The statute requires that the Court determine voluntariness by "tak[ing] into consideration all the circumstances surrounding the giving of the confession." *Id.* § 3501(b). Such factors include:

> (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

*Id.*  However, "[t]he presence or absence of any of the above-mentioned factors . . . need not be conclusive on the issue of voluntariness of the confession."  *Id.*  The Court considers each of the factors in turn with respect to the August 2, 2016 interview.

The first factor, "the time elapsing between arrest and arraignment of the defendant making

---

[2] The United States Supreme Court has clarified that, despite the permissive language of 18 U.S.C. § 3501, confessions are still subject to constitutional requirements other than voluntariness before they may be admitted into evidence, such as compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966).  *See Dickerson v. United States*, 530 U.S. 428, 443–44 (2000).

1  the confession," is not relevant. Both parties agree that the first factor does not apply because
2  Defendant was not arrested during the interview. Opp'n at 4; Reply at 1.

3  The second factor, "whether such defendant knew the nature of the offense with which he
4  was charged or of which he was suspected at the time of making the confession," weighs in favor
5  of voluntariness. Defendant argues that this factor weighs against voluntariness because
6  Defendant "was affirmatively misled regarding the seriousness and purpose of the questioning."
7  Reply at 1–2. Defendant argues that Special Agent Marceau instead "stated that the goals of
8  discussing the webcam activity were to (a) 'move on' to a discussion of treatment, (b) persuade
9  Agent Marceau that Mr. Wolfenbarger had not molested children, and (c) locate children at risk."
10 Reply at 5. However, the Court does not agree with Defendant that emphasizing those goals
11 means that defendant did not know the nature of the offense with which he was suspected. After
12 exchanging pleasantries, Special Agent Marceau immediately gets into the crux of the interview:
13 "So that would be you. That was about the time you started trading some online videos of
14 underage children; is that correct?" Aug. 2 Tr. at 10:16–18. After some denials by Defendant,
15 Special Agent Marceau elaborated that "I've done some lead investigation on you. I know
16 probably more about you than you think I do. I've seen all the chats; I've seen all the videos. I've
17 seen everything you have requested. I've seen things you like." *Id.* at 12:11–16. The Court finds
18 that that information sufficiently put Defendant on notice of "the nature of the offense," to wit, his
19 receipt of child pornography.

20 The third factor, "whether or not such defendant was advised or knew that he was not
21 required to make any statement and that any such statement could be used against him," weighs in
22 favor of voluntariness. Prior to engaging in any substantive questioning, Special Agent Marceau
23 advised Defendant verbally and in writing of Defendant's right to remain silent, which Defendant
24 waived by signing the *Miranda* waiver form. *See* Aug. 2 Tr. 5:3–5 ("You have the right to remain
25 silent. Anything you say can be used against you in court."); ECF No. 286-3 ("Advice of
26 Rights"). As the Court found above, his waiver of those rights was validly made in an express
27 writing.

28

The fourth factor, "whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel," also weighs in favor of voluntariness. Prior to engaging in any substantive questioning, Special Agent Marceau advised Defendant verbally and in writing of his right to remain silent, which Defendant voluntarily waived. *See* Aug. 2 Tr. 5:5–11 ("You have the right to have a lawyer with you during any questioning. If you can't afford a lawyer, one will be appointed for you before any questioning, if you wish. If you decide to answer any questions now without a lawyer present, you have the right to stop answering at any time."); ECF No. 286-3 ("Advice of Rights").

The fifth factor, "whether or not such defendant was without the assistance of counsel when questioned and when giving such confession," weighs against voluntariness. Defendant did not have counsel during the interview, but instead waived his rights to counsel at the beginning of the interview. *See id.*

In sum, the Court finds that, on balance, the 18 U.S.C. § 3501(b) factors weigh in favor of voluntariness.

b. Other Factors

In addition to the above factors, Defendant argues that several aspects of the interview weigh against voluntariness of the statements. Specifically, Defendant argues that Special Agent Marceau "employed numerous coercive tactics that violated *Miranda*," including (1) making "promises of confidentiality" that directly contradicted the *Miranda* advisement; (2) stating that Defendant's conduct would be "behind us" if Defendant was truthful; (3) "minimizing the seriousness of the conduct"; and (4) affirmatively misleading Defendant about the "purpose of the interrogation." Reply at 1.

However, the Court already considered these factors above in the context of *Miranda* voluntariness, and explained why Defendant's own statements during the interview undermined any likelihood that these tactics were so "coercive" as to overcome Defendant's will. Specifically, Defendant's statements, when considered in light of his personal characteristics above, suggest that he understood that he had done something "illegal and immoral," Aug. 2 Tr. at 72:7–8; that it

1  was likely to not be kept solely between himself and Special Agent Marceau, *id.* at 27:1–3; and
2  that he [should] get in trouble for it," *id.* at 27:13–15.

3        Accordingly, as with the *Miranda* voluntariness analysis, the Court finds that the above
4  interviewing tactics were not so coercive as to overcome Defendant's will and render his
5  statements involuntary.  "[C]ases in which a defendant can make a colorable argument that a self-
6  incriminating statement was 'compelled' despite the fact that the law enforcement authorities
7  adhered to the dictates of *Miranda* are rare," *Dickerson v. United States*, 530 U.S. 428, 444 (2000)
8  (quoting *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984)), and the Court finds that this is not
9  one such "rare" case.  Accordingly, the Court DENIES Defendant's motion to suppress statements
10 from the August 2, 2016 interview.

11       **B.   August 31, 2016 Interview**

12       Defendant also moves to suppress the statements made during his August 31, 2016
13 interview with Special Agent Marceau as "tainted fruit" of the August 2, 2016.  However, "[a]
14 confession cannot be 'fruit of the poisonous tree' if the tree itself is not poisonous.  *Colorado v.*
15 *Spring*, 479 U.S. 564, 571–72 (1987).  The Court already held above that the August 2, 2016
16 interview was not involuntary but was instead freely given after proper *Miranda* warnings.

17       On reply, Defendant also flags additional factual disputes with the government's account
18 of the August 31, 2016 interview.  *See* Reply at 6–7.  The Court finds that these disputes are
19 immaterial to resolve because they do not raise any independent grounds for suppression, and
20 Defendant expressly limited their motion to suppress the August 31, 2016 interview to the ground
21 that the August 31, 2016 is tainted fruit of the August 2, 2016 interview.  *See, e.g.*, Mot. at 2 ("The
22 defense . . . challenges the voluntariness of [Defendant's] August 31 statements as tainted fruit.").
23 To the extent that Defendant is instead attempting to assert new arguments for suppression of the
24 August 31, 2016 interview on reply, those arguments have been waived.  *See, e.g., Pham v. Fin.*
25 *Indus. Regulatory Auth. Inc.*, No. 12–6374 EMC, 2013 WL 1320635, at *1 (N.D. Cal. Apr. 1,
26 2013) ("[T]hese arguments—raised for the first time on reply—have been waived.").

27       Accordingly, the Court also DENIES Defendant's motion to suppress statements from the

August 31, 2016 interview.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to suppress is DENIED.

**IT IS SO ORDERED.**

Dated: September 19, 2020

*Lucy H. Koh*
LUCY H. KOH
United States District Judge